UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARSH & McLENNAN AGENCY, LLC,<br><br>Plaintiff,<br><br>v.<br><br>ALLIANT INSURANCE SERVICES, INC.,<br>TRAVIS DAVIS, KEEGAN RICHARDSON,<br>SUSAN COETZEE, RAIZA ROBLES, and<br>AMANDA GUNN,<br><br>Defendants. | Case No.: 1:25-cv-01260-JAV<br><br>**MEMO ENDORSED** |

**PROTOCOL FOR THE SEARCH AND PRODUCTION**
**OF ELECTRONICALLY STORED INFORMATION**

Plaintiff Marsh & McLennan Agency, LLC ("Plaintiff" or "MMA") and Defendants Alliant Insurance Services, Inc. ("Alliant"), Travis Davis, Keegan Richardson, Susan Coetzee, Raiza Robles, and Amanda Gunn (Davis, Richardson, Coetzee, Robles, and Gunn together, "Individual Defendants") (Plaintiff together with Defendants, the "Parties"), by and through their counsel, hereby agree to the following protocol for the production of electronically stored information ("ESI"). This protocol has the objective of promoting, whenever possible, the early resolution of disputes regarding the discovery of ESI without the Court's intervention. Nothing in this protocol shall limit a party's right to seek or object to discovery as set out in applicable rules or to object to the authenticity or admissibility of any ESI produced in accordance with this protocol.

I. <u>GENERAL AGREEMENTS</u>

1. <u>Scope Of Discovery:</u> The standards, limits, and scope of discovery shall be governed by the Federal Rules of Civil Procedure ("FRCP"). The Parties agree to meet and confer

1

in good faith with regard to any discovery disputes, and any dispute the Parties cannot resolve amicably shall be resolved by the Court. Nothing in this protocol shall be deemed as a waiver of the right of any party to object to any Request for Production, Interrogatory, or other discovery request.

2. **No Designation of Discovery Requests:** Productions of ESI in the reasonably usable form set out in this protocol, including Attachment A, need not include any reference to the requests to which a document or ESI may be responsive.

3. **Production of Privileged Material:** The production of any material constituting or containing attorney-client privileged information or work product, or constituting or containing information protected by applicable privacy laws or regulations ("Privileged Material"), whether inadvertent or otherwise, shall be governed by provisions contained in the FRCP 26(b)(5)(B) and/or any stipulation entered into by the Parties and So-Ordered by the Court. The production of Privileged Material shall not be a waiver of the privilege or protection from discovery in this case or in any other federal or state proceeding and shall not by itself constitute a waiver by the producing party of any claims of privilege or work-product immunity, either as to the specific information disclosed or as to any other information disclosed or as to any other information relating thereto on the same or related subject matter.

Upon written notification from the party producing the material ("Producing Party") to the receiving party ("Receiving Party") identifying disclosed Privileged Material, the Receiving Party shall not review the disclosed Privileged Material in any respect; shall within seven days return, sequester, delete or destroy all copies of the disclosed Privileged Material (including any and all work product containing such Privileged Material, including but not limited to all notes and other materials referring to the Privileged Material); shall take reasonable steps to retrieve such

Privileged Material if the Receiving Party disclosed it before being notified; and shall make no further use of such Privileged Material (or work product containing such Privileged Material). The Producing Party must promptly provide a privilege log for the claimed Privileged Material consistent with Local Civil Rule 26.2.

The Receiving Party may object to the Producing Party's designation of disclosed information as Privileged Material by providing written notice of such objection within seven days of its receipt of a written demand for the return of the disclosed Privileged Material and provision a privilege log. The Parties must meet and confer in good faith in an attempt to resolve any dispute regarding the designation of information as Privileged Material. If the Parties are unable to resolve any such dispute, the issue shall be resolved by the Court after an in-camera review of the disclosed Privileged Material. Pending resolution of any such dispute by the Court, the Receiving Party shall not review and shall not use the disclosed Privileged Material in any respect.

1. **Reservation of Rights:** Nothing contained herein is intended to create a precedent for, or to constitute a waiver or relinquishment of, any party's objections or arguments pertaining to any potential future ESI production(s). Nothing contained herein constitutes a waiver of any party's rights or obligations under any laws or doctrines, including but not limited to laws or doctrines regarding any matter or information that is or may be claimed to be privileged, confidential, proprietary, or otherwise personal or private. Nothing in this protocol shall constitute a waiver of any objection that any party has asserted or may assert in their written responses and objections to requests for documents, and nothing herein shall be construed as requiring any party to search for and produce any document that they did not agree to search for and produce by way of their written responses and objections to requests for documents.

## II. FORM OF ESI PRODUCTION

1. **Production in Reasonably Usable Form:** The Parties shall produce ESI in connection with this protocol in reasonably usable form. Except as stated in paragraph II.2 below or as agreed hereafter by the Parties, such reasonably usable form in connection with this protocol shall be the single-page, PDF format with extracted or OCR text and associated metadata as set out in Attachment A, which is incorporated in full in this protocol. If the receiving party seeks production in native format of specifically identified ESI produced originally in PDF form, the producing party shall respond reasonably and in good faith to any such request. The Parties may produce documents in native format in lieu of producing documents pursuant to the format set forth in Attachment A.

2. **Documents Subject to Production in Native Format:** Electronic spreadsheets (e.g., Excel), electronic presentations (e.g., PowerPoint), desktop databases (e.g., Access), and audio/video multimedia files that have been identified as responsive shall be produced in native format as well as other documents that cannot be rendered as PDFs.

3. **Deduplication:** A party is only required to produce a single copy of a responsive document, and a party should de-duplicate responsive ESI across custodians provided, however, all custodians who sent, received, or were copied (including blind copied) on such email exchange are identifiable. Each party should also de-duplicate emails in such a way as to eliminate earlier or incomplete chains of emails and produce only the most complete iteration of an email chain. Any de-duplication tool used by a party must ensure that an email will be suppressed only if its recipients (including cc and bcc recipients), subject, body text (excluding specified automatic

4

footers and normalized to consolidate white space), and attachments are wholly included in another more complete email.

### III. SEARCH OF CORPORATE ESI SYSTEMS

2. The Parties shall meet and confer to discuss the use of reasonable search terms, custodians, file types, and date ranges ("Search Protocol"), which will apply to the following:

i. MMA's ESI systems, including but not limited to its (1) corporate email systems including all files and folders contained therein, including, without limitation, inbox, outbox, deleted, trash, and draft folders; (2) corporate messaging systems (Microsoft Teams, Slack, etc.) including all files and folders contained therein; and (3) corporate calendars.

ii. Alliant's ESI systems, including but not limited to its (1) corporate email systems including all files and folders contained therein, including, without limitation, inbox, outbox, deleted, trash and draft folders, and the fields "TO", "FROM", "CC", "RE" and the body; (2) corporate messaging systems (Microsoft Teams, Slack, etc.) including all files and folders contained therein; and (3) corporate calendars.

3. To the extent the search terms the Parties agree to result in excessive and/or overly burdensome results, the Parties will meet and confer in good faith to discuss potential any revisions to the search terms. The Search Protocol shall not affect either party's right to seek Court relief regarding any disagreements regarding the initial search terms, custodians, or other parameters of the Search Protocol or revisions to the search terms that cannot be resolved between the Parties.

4. MMA and Alliant shall retain the sole right and responsibility to conduct the searches of their respective data files. The fact that any electronic file has been identified as being "hit" by a search term shall not prevent either MMA or Alliant from withholding such file from production on the grounds that the file is not responsive to any discovery request or is protected

from disclosure by an applicable privilege. However, to the extent any document responsive to a discovery request is withheld on grounds of any applicable privilege or any other objection, such document must be identified in a privilege log, except the Parties need not log any documents that post-date the filing date of the instant lawsuit.

5. Nothing in this protocol shall limit any party's right to seek additional custodians and/or keywords to be applied to the Search Protocol at any point during discovery. The Parties shall meet and confer in good faith on any such requests before seeking the Court's intervention.

### IV. OBLIGATIONS OF THE INDIVIDUAL DEFENDANTS

1. The Individual Defendants will conduct a thorough and diligent search of sources as to which there is a reasonable basis to believe that such sources may contain ESI that the Individual Defendants have agreed to search for and produce pursuant to their written responses and objections to Plaintiff's document requests. Such sources may include, without limitation, the Individual Defendants' personal email accounts (including all folders), personal workstations or other computers, personal cellular phones, and social media accounts. The Individual Defendants shall retain the sole right and responsibility to conduct the searches of their data files. The Individual Defendants may produce ESI in word searchable PDF format (subject to a potential request for native production as outlined in paragraph II.1 above). This paragraph is not intended to limit the obligations or expand the obligations of the Individual Defendants to search for and produce documents pursuant to the FRCP.

Dated: August 1, 2025
      New York, New York

| EPSTEIN, BECKER & GREEN, P.C. | MORGAN LEWIS & BOCKIUS LLP |
|---|---|
| By: _____ <br> DAVID W. GARLAND <br> A. MILLIE WARNER <br> 875 Third Avenue <br> New York, New York 10022 <br> dgarland@ebglaw.com <br> mwarner@ebglaw.com <br><br> *Attorneys for Plaintiff Marsh & McLennan Agency, LLC* | By: /s/ Timothy J. Stephens <br> TIMOTHY JOHN STEPHENS <br> 101 Park Avenue <br> New York, NY 10178-0060 <br> 212.309.6000 <br> timothy.stephens@morganlewis.com <br><br> Laura Hughes McNally <br> Cassidy Duckett Britt <br> 1201 N. Market Street, Suite 2201 <br> Wilmington, DE 19801 <br> 215.963.5000 <br> laura.mcnally@morganlewis.com <br> cassidy.britt@morganlewis.com <br> *Attorney for Defendants* |

**SO ORDERED:**

/s/ Jeannette Vargas
_____
The Honorable Jeannette A. Vargas
United States District Judge

Dated: August 13, 2025

# ATTACHMENT A

A.1.   <u>Image Files</u>. Files produced in *.tif image format will be a single page black and white *.tif files at 300 DPI, Group IV compression. To the extent possible, original orientation will be maintained (*i.e.*, portrait-to-portrait and landscape-to-landscape). Each *.tif file will be assigned a unique name matching the production number of the corresponding page. Such files will be grouped in folders of no more than 1,000 *.tif files each unless necessary to prevent a file from splitting across folders. Files will not be split across folders and separate folders will not be created for each file. Production ("Bates") numbers shall be endorsed on the lower right corner of all images. This number shall bear a unique, consistently formatted identifier that will:

> i.   *be consistent across the production;*
>
> ii.  *contain no special characters; and*
>
> iii. *be numerically sequential within a given file.*

Bates numbers should be a combination of an alpha prefix along with an 8-digit number (*e.g.*, ABC00000001). The number of digits in the numeric portion of the Bates number should not change in subsequent productions. Confidentiality designations, if any, will be endorsed on the lower left corner of all images and shall not obscure any portion of the original file.

A.2.   <u>File Text</u>. Except where ESI contains text that has been redacted under assertion of privilege or other protection from disclosure, full extracted text will be provided in the format of a single *.txt file for each file (*i.e.*, not one *.txt file per *.tif image). Where ESI contains text that has been redacted under assertion of privilege or other protection from disclosure, the redacted *.tif image will be OCR'd and file-level OCR text will be provided in lieu of extracted text. Searchable text will be produced as file-level multi-page UTF-8 text files with the text file named to match the beginning production number of the file. The full path of the text file must be provided in the *.dat data load file.

A.3.   <u>Word Processing Files</u>. Word processing files, including without limitation Microsoft Word files (*.doc and *.docx), will be produced in the above format with tracked changes and comments showing.

A.4.   <u>Presentation Files</u>. To the extent that presentation files, including without limitation Microsoft PowerPoint files (*.ppt or *.pptx), are produced in *.tif image format, such *.tif images will display comments, hidden slides, speakers' notes, and similar data in such files.

A.5.   <u>Parent-Child Relationships</u>. Parent-child relationships (*e.g.*, the associations between emails and their attachments) will be preserved. Email and other ESI attachments will be produced as independent files immediately following the parent email or ESI record. Parent-child relationships will be identified in the data load file pursuant to paragraph A.14 below.

A.6.   <u>Dynamic Fields</u>. Files containing dynamic fields such as file names, dates and times will be produced showing the field code (*e.g.*, "[FILENAME]" or "[AUTODATE]"), rather than the values for such fields existing at the time the file is processed.

A.7. <u>English Language</u>. To the extent any data exists in more than one language, the data will be produced in English, if available. If no English version of a file is available, then the Producing Party shall not have an obligation to produce an English translation of the data.

A.8. <u>Embedded Objects</u>. Some Microsoft Office and .RTF files may contain embedded objects. Such objects typically are the following file types: Microsoft Excel, Word, PowerPoint, Project, Outlook, and Access; and PDF. Subject to claims of privilege and immunity, as applicable, objects with those identified file types shall be extracted as separate files and shall be produced as attachments to the file in which they were embedded.

A.9. <u>Compressed Files</u>. Compressed file types (*i.e.*, .CAB, .GZ, .TAR. .Z, .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual files.

A.10. <u>Encrypted Files</u>. The Producing Party will take reasonable steps, prior to production, to unencrypt any discoverable ESI that exists in encrypted format (*e.g.*, because password-protected) and that can be reasonably unencrypted using passwords or decryption keys.

A.11. <u>Scanned Hardcopy Documents</u>.

- In scanning hardcopy documents, multiple distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., hard copy documents should be logically unitized).

- If a Producing Party is requested, and agrees, to provide OCR text for scanned images of hard copy documents, OCR should be performed on a document level and provided in document-level *.txt files named to match the production number of the first page of the document to which the OCR text corresponds. OCR text should not be delivered in the data load file or any other delimited text file.

- In the case of an organized compilation of separate hardcopy documents—for example, a binder containing several separate documents behind numbered tabs—the document behind each tab should be scanned separately, but the relationship among the documents in the binder should be reflected in proper coding of the family fields set out below.

A.12. <u>Production Numbering</u>.

In following the requirements of Paragraph A.1, the Producing Party shall take reasonable steps to ensure that attachments to documents or electronic files are assigned production numbers that directly follow the production numbers on the documents or files to which they were attached. If a production number or set of production numbers is skipped, the skipped number or set of numbers will be noted. In addition, wherever possible, each *.tif image will have its assigned production number electronically "burned" onto the image.

A.13. <u>Data and Image Load Files</u>.

9

<u>Load Files Required</u>. Unless otherwise agreed, each production will include a data load file in Concordance (*.dat) format and an image load file in Opticon (*.opt) format.

<u>Load File Formats</u>.

i. Load file names should contain the volume name of the production media. Additional descriptive information may be provided after the volume name. For example, ABC001.dat or ABC001_metadata.dat would be acceptable.

ii. Unless other delimiters are specified, any fielded data provided in a load file should use Concordance default delimiters. Semicolon (;) should be used as multi-entry separator.

iii. Any delimited text file containing fielded data should contain in the first line a list of the fields provided in the order in which they are organized in the file.

<u>Fields to be Included in Data Load File</u>. For all documents or electronic files produced, the following metadata fields for each document or electronic file, if available at the time of collection and processing and unless such metadata fields are protected from disclosure by attorney-client privilege or work-product immunity or otherwise prohibited from disclosure by law or regulation, including the European Data Privacy Regulation, will be provided in the data load file pursuant to subparagraph (a), above, except to the extent that a document or electronic file has been produced with redactions. The term "Scanned Docs" refers to documents that are in hard copy form at the time of collection and have been scanned into *.tif images. The term "Email and E-Docs" refers to files that are in electronic form at the time of their collection.

| Field | Sample Data | Scanned Docs | Email and E-Docs | Comment |
|---|---|---|---|---|
| PRODBEG [Key Value] | ABC00000001 | Yes | Yes | Beginning production number |
| PRODEND | ABC00000008 | Yes | Yes | Ending production number |
| PRODBEGATT | ABC00000009 | Yes | Yes | Beginning production number of parent in a family |
| PRODENDATT | ABC00001005 | Yes | Yes | Ending production number of last page of the last attachment in a family |

| CUSTODIAN(S) | Smith, John | Yes | Yes | Custodian(s) that possessed the document or electronic file—multiple custodians separated by semicolon |
|---|---|---|---|---|
| NATIVEFILE | Natives\001\001\ABC00000001.xls | N/A | Yes | Path and file name for native file on production media |
| FILEDESC | Microsoft Office 2007 Document | N/A | Yes | Description of the type file for the produced record. |
| FOLDER | \My Documents\Document1.doc | N/A | Yes | Original source folder for the record produced. |
| FILENAME | Document1.doc | N/A | Yes | Name of original electronic file as collected. |
| DOCEXT | DOC | N/A | Yes | File extension for email or e-doc |
| PAGES | 2 | Yes | Yes | Number of pages in the produced document or electronic file (not applicable to native file productions). |
| AUTHOR | John Smith | N/A | Yes | Author information as derived from the properties of the document. |
| DATECREATED | 10/09/2005 | N/A | Yes | Date that non-email file was created as extracted from file system metadata |
| DATELASTMOD | 10/09/2005 | N/A | Yes | Date that non-email file was modified as extracted from file system metadata |
| SUBJECT | Changes to Access Database | N/A | Yes | "Subject" field extracted from email message or metadata properties of the document |
| FROM | John Beech | N/A | Yes | "From" field extracted from email message |

| TO | Janice Birch | N/A | Yes | "To" field extracted from email message |
| CC | Frank Maple | N/A | Yes | "Cc" or "carbon copy" field extracted from email message |
| BCC | John Oakwood | N/A | Yes | "Bcc" or "blind carbon copy" field extracted from email message |
| DATESENT | 10/10/2005 | N/A | Yes | Sent date of email message (mm/dd/yyyy format) |
| TIMESENT | 10:33 am | N/A | Yes | Sent time of email message, time zone set to GMT |
| DATERCVD | 10/10/2005 | N/A | Yes | Received date of email message (mm/dd/yyyy format) |
| TIMERCVD | 10:33 am | N/A | Yes | Received time of email message, time zone set to GMT |
| CONFIDENTIALITY | HIGHLY CONFIDENTIAL | Yes | Yes | Text of confidentiality designation, if any |
| TEXTPATH | Text\001\001\ABC00000001.txt | Yes | Yes | Path to *.txt file containing extracted or OCR text |
| PRODVOL | VOL001 | Yes | Yes | Name of the Production Volume |

A.14. <u>Files Produced in Native Format</u>. Any electronic file produced in native file format shall be given a file name consisting of a unique Bates number and, as applicable, a confidentiality designation; for example, "ABC00000002_Confidential." For each native file produced, the production will include a *.tif image slipsheet indicating the production number of the native file and the confidentiality designation and stating, "File Provided Natively." To the extent that it is available, the original file text shall be provided in a file-level multi-page UTF-8 text file with a text path provided in the *.dat file; otherwise the text contained on the slipsheet shall be provided in the *.txt file with the text path provided in the *.dat file.

<u>Production Media</u>. Unless otherwise agreed, documents and ESI will be produced on optical media (CD/DVD), external hard drive, secure FTP site, or similar electronic format. Each piece of Production Media shall be assigned a reference number or other unique identifying label corresponding to the date of the productions of documents on the Production Media as well as the sequence of the material in that production. Production Media shall include text referencing the case name and number.