UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X
                                                         :

MARSH & MCLENNAN AGENCY, LLC,         :

                                                  :

                       Plaintiff,          :             25-CV-1260 (JAV)

                                                  :

                -v-                    :         <u>OPINION AND ORDER</u>

                                                    :

ALLIANT INSURANCE SERVICES, INC.,    :
TRAVIS DAVIS, KEEGAN RICHARDSON,   :
SUSAN COETZEE, RAIZA ROBLES, and    :
AMANDA GUNN,                            :

                                                  :

                       Defendants.     :
-------------------------------------------------------------------X

JEANNETTE A. VARGAS, United States District Judge:

Plaintiff Marsh & McLennan Agency, LLC ("MMA" or "Plaintiff") brings this action against Alliant Insurance Services, Inc. ("Alliant"), as well as against former MMA employees Travis Davis ("Davis"), Keegan Richardson ("Richardson"), Susan Coetzee ("Coetzee"), Raiza Robles ("Robles"), and Amanda Gunn ("Gunn") (collectively the "Individual Defendants"), for claims arising from Alliant's alleged corporate raiding of the MMA office in Bend, Oregon. Plaintiff filed suit in the United States District Court for the Southern District of New York pursuant to the forum selection clauses in the non-solicitation agreements signed by the Individual Defendants.

On March 20, 2025, Alliant moved to dismiss all claims against it for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. ECF No. 30. Alliant moves in the alternative pursuant to Rule 12(b)(6).

Davis moved to dismiss Plaintiff's breach of fiduciary duty and tortious interference with contract and business relations claims for failure to state a claim. *Id.* All Defendants move pursuant to Rule 12(f) to strike language "about other litigation involving Alliant on the grounds that these averments are irrelevant, misleading, immaterial." ECF No. 31 ("Defs. Mem.") at 1-2. For the reasons that follow, Alliant's motion to dismiss for lack of personal jurisdiction is GRANTED and Davis's motion to dismiss is DENIED. Defendants' motion to strike is GRANTED IN PART AND DENIED IN PART.

## BACKGROUND

As set forth in its Complaint, "MMA is an insurance brokerage and risk management firm that provides risk management, insurance, and employee benefit support services to its clients" across the United States. ECF No. 1 ("Compl."), ¶ 22. Alliant is a corporation organized and existing under California law, with its principal place of business in California. *Id.*, ¶ 28. "Alliant does business and maintains offices throughout the United States, including in New York, where it is registered to do business and maintains six offices." *Id.* MMA alleges that Alliant is one of MMA's direct competitors. *Id.*

The Individual Defendants were employees in MMA's Oregon offices.[1] They are all domiciled in Oregon and currently work as employees for Alliant. *Id.*, ¶¶ 23-27.

---

[1] Davis, Richardson, Robles and Coetzee were employees in the Bend, Oregon office, Compl., ¶¶ 38, 64, while Gunn was employed in the Madras, Oregon office,

Davis joined MMA in 2021 after MMA purchased the insurance brokerage firm PayneWest Insurance, Inc. ("PayneWest"), where he was part-owner and Sales Executive.  Compl., ¶¶ 5, 39.  As part of the purchase agreement, Davis entered into an Acknowledgement and Restrictive Covenant Agreement (the "RCA") with MMA.  *Id.*, Ex. A.  The RCA provided, *inter alia*, that for a five year period following the sale of PayneWest, Davis would 1) keep confidential all proprietary information of PayneWest and MMA; 2) would not solicit or take away any active clients of PayneWest; 3) would not service or accept insurance brokerage business from any client account or active client of PayneWest; and 4) solicit, influence, hire, or induce any PayneWest employees to leave the employ of MMA.  *Id.* at § 3.

Once acquired, Davis and "members of his client service team at PayneWest (Richardson, Robles, and Gunn)" became employees of MMA and each executed a Non-Solicitation and Confidentiality Agreement (the "NSA")" and restrictive covenants with MMA.  *Id.*, ¶¶ 6, 52; Exs. B-E.  Defendant Coetzee was hired shortly after as Client Manager on Davis's client service team in the Bend, Oregon office, and likewise executed an NSA.  *Id.*, ¶¶ 64-65; Ex. F.

Section 15 of the Individual Defendants' NSAs contained a forum-selection clause which specified that the "NSAs shall be governed by New York law, and that 'any action or proceeding with respect to the [NSAs] and Employee's employment shall be brought exclusively in the Civil Court of the City of New York, New York

---

*id.*, ¶ 38.  For the purposes of this Opinion, references to the Bend, Oregon office encompass the Madras, Oregon office.

County, or in the Supreme Court of the State of New York, New York County, or in the United States District Court for the Southern District of New York, or in any other court of competent jurisdiction in or for the State and County of New York.'" *Id.*, ¶¶ 61, 72.  The NSAs provide that the signatories have consented to "'personal jurisdiction' and 'irrevocably waive[d] any objection . . . to the laying of venue of any such action in the said court(s)' or that 'any such action brought in said court(s) has been brought in an inconvenient forum.'"  *Id.*, ¶¶ 61, 72.

As part of MMA's purchase of PayneWest, MMA acquired Davis's substantial book of business which allegedly made Davis a "prime target for Alliant."  Compl., ¶¶ 6-8, 84-85.  MMA alleges that on or about March 14, 2024, Davis was contacted by Alliant to recruit him for a "Senior Producer" role.  *Id.*, ¶¶ 8, 85.  MMA alleges that Alliant further sought to hire Davis's client service team at MMA.  *Id.*, ¶¶ 8, 88.  As a tool to recruit Davis and his team members, Alliant allegedly extended above-market compensation packages.  *Id.*, ¶¶ 8-9, 90.

MMA claims that by June 20, 2024, "Coetzee had agreed to join Davis at Alliant and to assist him and Alliant in the solicitation and servicing of MMA clients, despite her own restrictive covenant agreement with MMA prohibiting such conduct."  *Id.*, ¶ 13.  MMA contends that Davis "not only solicited the MMA employees who comprised his client service team at MMA while he was still employed at MMA, but also he began soliciting MMA clients."  *Id.*, ¶ 15.

Davis formally resigned from MMA on Monday, June 24, 2024.  *Id.*, ¶ 17. One day later, on June 25, 2024, Defendant Richardson resigned, and "within three

weeks, all other members of Davis's client service team joined them at Alliant." *Id.*, ¶18. Also one day after Davis's resignation, "multiple MMA clients for whom Davis had been responsible executed Broker of Record letters appointing Alliant as their new Broker of Record." *Id.*, ¶ 20. At the time of the Complaint's filing, more than 30 MMA clients had already left MMA for Alliant. *Id.* Accordingly, "Davis and his former MMA client service team have continued to service these clients at Alliant, despite being contractually prohibited from doing so." *Id.*

MMA filed suit against Alliant and the Individual Defendants in February 2025. The claims against Davis include breach of the RCA and the NSA's provisions regarding non-solicitation of clients, non-solicitation of employees, and confidentiality. MMA also brings claims against Davis for a breach of his fiduciary duty to MMA, tortious interference with contract, tortious interference with business relations, and misappropriation of trade secrets. With respect to Alliant, MMA brings claims for misappropriation of trade secrets, tortious interference with contract, tortious interference with business relations, and aiding and abetting Davis's breach of fiduciary duty.

## LEGAL STANDARDS

### A.    Motion to Dismiss Under 12(b)(2)

On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure, a plaintiff bears the burden of demonstrating the court's personal jurisdiction over the defendants. *See Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34-35 (2d Cir. 2010). "In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie

showing that jurisdiction exists." *Thomas v. Ashcroft,* 470 F.3d 491, 495 (2d Cir. 2006). As such, a plaintiff must show "legally sufficient allegations of jurisdiction," including "an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant." *In re Magnetic Audiotape*, 334 F.3d 204, 206 (2d Cir. 2003) (cleaned up). To make a *prima facie* showing of personal jurisdiction, "three requirements must be met: (1) the plaintiff's service of process upon the defendant must have been procedurally proper; (2) there must be a statutory basis for personal jurisdiction that renders such service of process effective; and (3) the exercise of personal jurisdiction must comport with constitutional due process principles." *Schwab Short-Term Bond Mkt. Fund v. Lloyds Banking Grp. PLC*, 22 F.4th 103, 121 (2d Cir. 2021) (cleaned up).

"The court construes any pleadings and affidavits in the light most favorable to the plaintiff and resolve all doubts in plaintiff's favor." *Struna v. Leonardi*, 626 F. Supp. 3d 657, 665-66 (S.D.N.Y. 2022) (citation omitted). However, courts should "not draw argumentative inferences in the plaintiff's favor" or "accept as true a legal conclusion couched as a factual allegation." *Id.* "A court has 'considerable procedural leeway' on a Rule 12(b)(2) motion and may decide it on the basis of affidavits alone, permit discovery in aid of the motion, or conduct an evidentiary hearing." *Id.* (citation omitted).

**B.    Motion to Dismiss Under Rule 12(b)(6)**

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court accepts as true all well-pleaded allegations and draws all reasonable

inferences in favor of the non-moving party. *Romanova v. Amilus Inc*, 138 F.4th 104, 108 (2d Cir. 2025). The court, however, does not consider "conclusory allegations or legal conclusions couched as factual allegations." *Dixon v. von Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021) (cleaned up). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge[] [plaintiff's] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Bensch v. Est. of Umar*, 2 F.4th 70, 80 (2d Cir. 2021).

In deciding a motion to dismiss, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010). The Court may also consider a document not incorporated by reference if the complaint "'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." *Id.* (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)).

## C.    Motion to Strike

Pursuant to Rule 12(f), a court "may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). However, whether to grant such a motion is within the district court's discretion.

*See E.E.O.C. v. Bay Ridge Toyota, Inc.,* 327 F. Supp. 2d 167, 170 (E.D.N.Y. 2004). "'Immaterial' matter is that which has no essential or important relationship to the claim for relief, and 'impertinent' material consists of statements that do not pertain to, and are not necessary to resolve, the disputed issues." *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.,* 402 F. Supp. 2d 434, 437 (S.D.N.Y. 2005) (citation omitted).

A Rule 12(f) motion to strike a matter as impertinent or immaterial "will be denied, unless it can be shown that no evidence in support of the allegation would be admissible." *Lipsky v. Commonwealth United Corp.,* 551 F.2d 887, 893 (2d Cir. 1976). To prevail on a Rule 12(f) motion, the movant must show "(1) no evidence in support of the allegations would be admissible; (2) that the allegations have no bearing on the issues in the case; and (3) that to permit the allegations to stand would result in prejudice to the movant." *Roe v. City of New York,* 151 F. Supp. 2d 495, 510 (S.D.N.Y. 2001) (cleaned up).

## DISCUSSION

Alliant moves to dismiss all claims asserted against it for lack of personal jurisdiction, arguing that the exercise of personal jurisdiction in this matter does not comport with due process. Davis seeks dismissal of the breach of fiduciary duty claim and tortious interference claims for failure to state a claim. Defendants also move to strike the language in the Complaint relating to alleged conduct by Alliant from other litigation. The Court will consider each of these motions in turn.

## I.  The Exercise of Personal Jurisdiction Over Alliant Does Not Comport With Constitutional Due Process Principles

The Court's exercise of personal jurisdiction is constrained by constitutional due process considerations.  *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945).  Courts may only exercise personal jurisdiction over an out-of-state defendant if the defendant has "certain minimum contacts with the State such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014) (cleaned up). Following *International Shoe*, the Supreme Court has recognized two categories of personal jurisdiction as consistent with these due process concerns—specific and general.  571 U.S. at 126-27.  "Specific jurisdiction is available when the cause of action sued upon arises out of the defendant's activities in a state, while general jurisdiction permits a court to adjudicate any cause of action against the corporate defendant, wherever arising, and whoever the plaintiff."  *Anderjaska v. Bank of Am., N.A.*, No. 1:19-CV-3057-LTS-GWG, 2021 WL 877558, at *1 (S.D.N.Y. Mar. 9, 2021) (cleaned up); *see also Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016).  Additionally, because personal jurisdiction is an individual right that can be waived, courts can exercise personal jurisdiction over an out-of-state defendant on consent.  *See TAGC Mgmt., LLC v. Lehman*, 842 F. Supp. 2d 575, 583 (S.D.N.Y. 2012) ("The requirement of personal jurisdiction is a waivable right, and a litigant can use a variety of legal arrangements to give express or implied consent to the personal jurisdiction of the court." (cleaned up)).

9

Because both general and specific jurisdiction are lacking, and because Alliant has not consented to the Court's exercise of personal jurisdiction, Alliant's motion to dismiss under Rule 12(b)(2) is granted.

## A. General Jurisdiction

To have general jurisdiction over a corporation, courts look to where the corporation is "at home." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). A corporation is "at home" in the forum where it is incorporated and where it has its principal place of business—typically its headquarters. *Daimler*, 571 U.S. at 137. General jurisdiction "permits a court to adjudicate any cause of action against the corporate defendant, wherever arising, and whoever the plaintiff." *Brown*, 814 F.3d at 624-25.

Alliant is a California corporation with its principal place of business in Newport Beach, California. Compl., ¶ 28. While MMA points out that Alliant "operates six offices in New York, including two in Manhattan[, i]s licensed to do business here, has appointed a New York agent for service of process, and has repeatedly availed itself of this Court's jurisdiction—both as a plaintiff and as a defendant," ECF No. 36 ("Opp'n Br.") at 4, this is not enough to deem Alliant "at home" in this forum.[2] To the contrary, it is well-established that maintaining

---

[2] Despite these arguments in their opposition papers, during oral argument, Plaintiff explicitly disavowed reliance on a theory of general jurisdiction. *See* Hr'g Tr. at 19:1-2 (THE COURT: Are you relying on general jurisdiction? [PLAINTIFF]: No, we are not.).

offices in a state is not enough to purposely avail itself to the jurisdiction of this Court. *Anderjaska,* 2021 WL 877558, at *3 (granting motions to dismiss for lack of personal jurisdiction in cases involving Wells Fargo, Bank of America and Capital One, despite the fact "that each bank has a substantial number of physical banking locations and ATMs, a large office space, and a large workforce in New York").

### B. Specific Jurisdiction

Specific jurisdiction is available when the "cause of action sued upon arises out of the defendant's activities in a state." *Brown*, 814 F.3d at 624. "The inquiry . . . 'focuses on the relationship among the defendant, the forum, and the litigation.'" *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (citation omitted). The relevant test is whether "the defendant's 'suit-related conduct' creates a 'substantial connection with the forum [s]tate.'" *Starostenko v. UBS AG (A Swiss Bank*), No. 19 CIV. 9993 (KPF), 2023 WL 34947, at *7 (S.D.N.Y. Jan. 4, 2023) (quoting *Walden*, 571 U.S. at 284). "The relationship must arise out of contacts that the defendant *himself* creates with the forum State," and not a plaintiff's contacts or a third party's. *Walden*, 571 U.S. at 284 (emphasis in original). "In other words, the Court must determine whether there was some act by which the defendants purposefully availed themselves of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Starostenko,* 2023 WL 34947, at *7. (cleaned up). Additionally, "[t]he corporate defendant's in-state acts must further make it reasonably foreseeable that it would be subject to suit in courts sitting in that State." *Lelchook v. Societe Generale de Banque au Liban S.A.L.*, 147 F.4th 226, 239 (2d Cir. 2025).

The Second Circuit looks to the overall nature of a defendant's contacts with the forum state in determining how strong the linkage must be between the in-forum conduct and the claimed injury. "Where the defendant has had only limited contacts with the state it may be appropriate to say that he will be subject to suit in that state only if the plaintiff's injury was proximately caused by those contacts." *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 344 (2d Cir. 2018) (citation omitted). "Where the defendant's contacts with the jurisdiction that relate to the cause of action are more substantial, however, it is not unreasonable to say that the defendant is subject to personal jurisdiction even though the acts within the state are not the proximate cause of the plaintiff's injury." *Id.*

MMA's conclusory and threadbare assertion that Alliant "directed its tortious conduct toward the state of New York," *see* Compl., ¶ 31, does not meet the necessary threshold for specific jurisdiction. The Complaint is devoid of any allegations of conduct Alliant directed towards New York that caused Plaintiff's injury, either under a "but for" or proximate cause standard. All of the alleged conduct, as it pertains to Alliant, took place in Oregon. The alleged corporate raid took place in Bend, Oregon, not New York. The employees at issue were employees at MMA's Oregon offices. Nothing in this instant case, beyond the forum selection clauses in the MMA employee's NSA,[3] anchors this matter to New York. Specific

---

[3] MMA's reliance on a decision from a Missouri district court, which enforced similar forum-selection clauses against Alliant, is unavailing. Opp'n Br. at 2-3 (citing *Lockton Companies, LLC - Pac. Series v. Alliant Ins. Servs., Inc.*, No. 23-cv-00705 (SRB), 2024 WL 5265394, at *2–3 (W.D. Mo. Jan. 19, 2024)). This Court is not bound by case law in a different district that falls outside of the Second

jurisdiction is therefore lacking. *Bohn v. Bartels*, 620 F. Supp. 2d 418, 427 (S.D.N.Y. 2007).

## C. Consent

Where a party has consented to the Court's exercise of personal jurisdiction, the Court may dispense with the general and specific jurisdiction inquiry. Parties can constructively consent to personal jurisdiction through their participation in litigation. *Corporacion Mexicana De Mantenimiento Integral, S. De R.L. De C.V. v. Pemex-Exploracion Y Produccion*, 832 F.3d 92, 101 (2d Cir. 2016). Parties can also "consent to personal jurisdiction through forum-selection clauses in contractual agreements." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006). MMA primarily argues that Alliant has consented to this Court's exercise of jurisdiction, both explicitly and implicitly.

MMA suggests that because Alliant has litigated, and is currently litigating, other cases in this District without raising any objections based on personal jurisdiction, it is foreclosed from raising a personal jurisdiction objection in this case. Opp'n Br. at 2-3. This argument lacks merit. Personal jurisdiction is waivable. But, with a few exceptions not implicated here, "[a] party's consent to jurisdiction in one case extends to that case alone." *V&A Collection, LLC v. Guzzini Props. Ltd.*, 46 F.4th 127, 132 (2d Cir. 2022). "It in no way opens that party up to

---

Circuit. *Cf. Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.").

other lawsuits in the same jurisdiction in which consent was given, where the party does not consent and no other jurisdictional basis is available." *Id*.

MMA argues in the alternative that Alliant is bound by the forum selection clause in the NSAs signed by MMA's former employees, invoking the "closely related doctrine." Opp'n Br. at 5-6. Under that doctrine, the Second Circuit has "permitted non–signatories to an agreement to be bound by, and to enforce, forum selection clauses where, under the circumstances, the non–signatories enjoyed a sufficiently close nexus to the dispute or to another signatory such that it was foreseeable that they would be bound." *Fasano v. Li*, 47 F.4th 91, 103 (2d Cir. 2022) (citing *Aguas Lenders Recovery Group v. Suez, S.A.*, 585 F.3d 696, 701 (2d Cir. 2009)).

The Second Circuit has declined to adopt a standard governing precisely "'when a signatory may enforce a forum selection clause against a non-signatory.'" *Fasano*, 47 F.4th at 103. Yet some boundaries to this doctrine can be gleaned from prior precedent. For example, in *Aguas*, the Second Circuit held that a successor in interest to a contract was bound to the terms of a forum selection clause and could not raise a *forum non conviens* defense. The *Aguas* Court concluded that the "forum selection clause is integral to the obligations of the overall contract, and a successor in interest should no more be able to evade it than any other obligation under the agreement." *Aguas*, 585 F.3d at 701.

In *Magi XXI, Inc. v. Stato della Città del Vaticano*, 714 F.3d 714 (2d Cir. 2013), the Second Circuit was faced with the question of whether the non-signatory

defendant could enforce a forum selection clause that the signatory plaintiff had contractually agreed to in a sub-licensing agreement. The Second Circuit concluded that it could, provided that "the relationship between the non-signatory and that (latter) signatory [was] sufficiently close that the non-signatory's enforcement of the forum selection clause is 'foreseeable' to the signatory against whom the non-signatory wishes to enforce the forum selection clause." *Id.* at 723. The Second Circuit found that this test was met where the non-signatory defendant was the original licensor of the artwork, the sub-licensing agreement at issue was derivative of a master licensing agreement to which the non-signatory defendant was a party and which contained the same forum selection clause, and the sub-licensing agreement provided that if there was any conflict between the two contracts, the terms of the master licensing agreement would prevail. *Id.*

Additionally, in *Fasano*, the Second Circuit found that a non-signatory's explicit consent to engage in a private merger "subject to the terms and conditions" of the underlying deposit agreement bound them to the terms of that agreement's forum selection clause. 47 F.4th at 104.

In assessing whether the standard for binding a non-signatory to a forum selection clause has been met, the relevant question "is whether it was reasonably foreseeable that the non-signatory would be bound by the forum selection clause, *not* whether a contractual dispute with a signatory was reasonably foreseeable." *Yeda Rsch. & Dev. Co. Ltd. v. iCAD, Inc.*, No. 18-CV-8083 (GBD), 2019 WL 4562409, at *6 (S.D.N.Y. Sept. 5, 2019) (cleaned up). Courts have generally limited the

15

doctrine to situations in which the non-signatory interests "are completely derivative of and directly related to, if not predicated upon the signatory party's interests or conduct." *Id.* (cleaned up). The requisite relationship has also been found where the non-signatory played an active role in the creation of the contract in which the forum selection clause is found, or an active role in a company that was a signatory. *Colony Ins. Co. v. Hudson Excess Ins. Co.*, No. 23-CV-8750 (JGK), 2025 WL 622648, at *6 (S.D.N.Y. Feb. 25, 2025).

Alliant was not a successor-in interest or alter ego to a signatory. It played no part in the transactions that led to the executions of the NSAs. It has not otherwise indicated an intent to be bound by the terms of the NSAs. Alliant does not stand in privity with the Individual Defendants merely because it now employees them. It thus would not have been reasonably foreseeable to Alliant that it would have been subject to the forum selection clauses contained in the NSAs. MMA's invocation of the closely related doctrine is thus unavailing.

Indeed, MMA's own pleadings contradict its position that Alliant is bound by the forum selection clauses of the NSAs. Count I of the Complaint pleads a tortious interference with contract claim. Yet one element of such a claim is that "the defendant was not a party to the contract with which he allegedly interfered. In other words, a defendant cannot tortiously interfere with an agreement by which it is bound. Therefore, Plaintiff cannot allege both that [Alliant] is bound by the [NSAs] and that it tortiously interfered with [them]." *Yeda Rsch. & Dev. Co.*, 2019 WL 4562409, at *7 (cleaned up).

There is another issue with Plaintiff's attempt to rely on the closely related doctrine in this context. The Second Circuit precedents upon which Plaintiff relies arise in the context of *forum non conveniens* and venue challenges. The Second Circuit has never extended the closely related doctrine to overcome a defense of personal jurisdiction, with the attendant constitutional due process concerns.

The courts in this District have diverged on whether the closely related doctrine can serve to bind an out-of-state defendant to litigate in a forum where personal jurisdiction would otherwise not exist. For example, in *Seagrape Investors, LLC v. Tuzman*, the court applied the closely related doctrine to hold that a non-signatory defendant was bound by a forum selection clause and therefore had implicitly consented to the court's exercise of personal jurisdiction. No. 21-CV-7517 (RA), 2024 WL 4337448, at *6-7 (S.D.N.Y. Sept. 26, 2024).

In contrast, a number of recent cases have called into question whether implying an out-of-state defendant's consent to personal jurisdiction based upon a contract to which it is not a party comports with due process. As Judge Jed Rakoff explained in *Arcadia Biosciences, Inc. v. Vilmorin & Cie*:

> *Aguas* . . . and the cases cited therein involved motions to dismiss based on grounds of improper venue and *forum non conveniens*, not motions to dismiss for lack of personal jurisdiction. The rules governing the former class of motions are driven primarily by concerns for the convenience of litigants and witnesses, as well as by a range of private and public interests. Accordingly, these motions require courts to weigh multiple factors and—particularly in the case of the doctrine of *forum non conveniens*—"retain flexibility."

The rules governing personal jurisdiction, by contrast, are driven by constitutional concerns over the court's power to exercise control over the parties. Although the personal jurisdiction inquiry is not mechanical, it is constrained in ways that the venue inquiry is not. Most notably, a plaintiff must make a baseline showing that the defendant has certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. Regardless of the convenience to the parties or the private and public interests at stake, a court cannot exercise personal jurisdiction unless the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

These constitutional requirements caution against a liberal application of forum selection clauses to non-signatory defendants. In cases following *Aguas*, the application of forum selection clauses to non-signatories has been justified by various policy benefits, including "the contribution that such clauses have been praised for making to certainty in commercial transactions," "the salutary effect of dispelling any confusion about where suits arising from the contract must be brought and defended," the promotion of "vital interests of the justice system, including judicial economy and efficiency," and the guarantee "that parties will not be required to defend lawsuits in far-flung fora." *Magi*, 714 F.3d at 722. But although these benefits may be salutary, a court cannot consider them without first determining whether the exercise of jurisdiction over the defendant comports with due process.

356 F. Supp. 3d 379, 394–95 (S.D.N.Y. 2019) (cleaned up).

Judge Lewis Liman, adopting Judge Rakoff's analysis, elaborated that when personal jurisdiction is at issue, "a court should first analyze whether the non-party is otherwise bound to the agreement, as for example under the ordinary law of successor liability and alter ego applicable to all other contractual provisions. If the

non-party would be bound to the contract either as a successor or as an alter ego, he

or she ordinarily would also be bound to the forum selection clause." *HSM*

*Holdings, LLC v. Mantu I.M. Mobile Ltd.*, No. 20-CV-00967 (LJL), 2021 WL 918556,

at *9 (S.D.N.Y. Mar. 10, 2021).  If the party is not so bound, however, then there is

no consent, and the Court must ensure that the exercise of personal jurisdiction is

"consistent with federal due process principles." *Id.*  Recent cases in this District

have followed this approach.  *See, e.g.*, *Zama Cap. Advisors LP v. Universal Ent.*

*Corp.*, No. 24-CV-01577-MKV, 2025 WL 968783, at *16 (S.D.N.Y. Mar. 31, 2025)

("This Court agrees that constitutional concerns prohibit the application of the

'closely related' doctrine in this case."); *Villalobos v. Telemundo Network Grp. LLC*,

No. 22-CV-7665 (JPC), 2024 WL 5008980, at *6 (S.D.N.Y. Dec. 6, 2024) ("In

situations in which an ordinary agency or contract law analysis does not already

attribute the consent of a signatory to a non-signatory, the Court is skeptical that

the 'closely related' test can operate to extend the Court's personal jurisdiction over

the non-signatory in question without regard to the limits imposed by state law or

federal due process protections."); *Koh v. Koo*, No. 22-CV-6639 (JMF), 2023 WL

5352786, at *3 (S.D.N.Y. Aug. 21, 2023); *Spectrum Dynamics Med. Ltd. v. Gen. Elec.*

*Co.*, No. 18-CV-11386 (VSB), 2023 WL 4159358, at *7 (S.D.N.Y. June 2, 2023).

    The Court agrees with the analysis in *Arcadia Biosciences* and *HSM*

*Holdings*.  It is not contended that Alliant is bound by the NSAs under either

ordinary contract or agency law principles.  Accordingly, Alliant has not consented,

either explicitly or implicitly, to the Court's exercise of personal jurisdiction.  The

motion to dismiss Alliant under Rule 12(b)(2) is granted. Because the claims against Alliant are dismissed for lack of personal jurisdiction, the Court does not reach Alliant's Rule 12(b)(6) arguments.

## II. Davis's Partial Motion to Dismiss under Rule 12(b)(6)

Davis seeks to dismiss the claim of breach of fiduciary duty on the grounds that, as a matter of law, he owed no duty to MMA. He argues in the alternative that the breach of fiduciary duty claim duplicates the breach of contract claim and therefore cannot be independently maintained. Davis similarly seeks to dismiss the tortious interference with contract and tortious interference with business relations claims as duplicative of the breach of contract claims. The motion to dismiss the claims against Davis is denied.

### A. The Complaint States a Claim Against Davis for Breach of Fiduciary Duty

Under Delaware law,[4] "[a] claim for breach of fiduciary duty requires proof of two elements: (1) that a fiduciary duty existed and (2) that the defendant breached that duty." *McKenna v. Singer*, No. 11371-VCMR, 2017 WL 3500241, at *15 (Del. Ch. July 31, 2017). "The individuals who owe fiduciary duties to a corporation and its stockholders are the corporation's directors and, to a similar extent, officers." *Frank v. Elgamal*, C.A. No. 6120-VCN, 2014 WL 957550, at *20 (Del. Ch. Mar. 10, 2014). "Whether or not an individual qualifies as a key managerial employee

---

[4] The parties agree that Delaware law controls the Court's analysis of the fiduciary duty claims for purposes of this motion. *See, e.g.*, Defs. Mem. at 14; Hr'g Tr. at 24:2-6.

depends on whether he exhibits any of the hallmarks of such a crucial employee." *Mitchell Lane Publishers, Inc. v. Rasemas*, C.A. No. 9144-VCN, 2014 WL 4925150, at *4 (Del. Ch. Sept. 30, 2014) (cleaned up). "Such hallmarks include running a division of a company or supervising tiers of employees." *Id.*

### 1. The Complaint Plausibly Alleges Davis Owed Fiduciary Duties to MMA

The parties agree that Davis does not qualify as an officer or director of MMA under Delaware law. The Complaint classifies Davis as an "employee" of MMA, with a "Sales Executive" role. Compl., ¶¶ 38, 62-64. In light of his status, Davis argues that he did not owe a fiduciary duty to MMA and cannot be held liable for a breach of such duty. Defs. Mem at 14-15.

Davis's status as an employee does not end this inquiry, however. While the employer-employee relationship does not automatically give rise to a fiduciary duty, "where an agent represents a principal in a matter where the agent is provided with confidential information to be used for the purposes of the principal, a fiduciary relationship may arise." *Wayman Fire Prot., Inc. v. Premium Fire & Sec., LLC*, No. CIV.A. 7866-VCP, 2014 WL 897223, at *20 (Del. Ch. Mar. 5, 2014); *see also Rasemas*, 2014 WL 4925150, at *6 (where employee is entrusted with "secret information relating to his employer's business, he occupies a position of trust and confidence toward it, and must govern his actions accordingly"). "Such information need not rise to the level of a trade secret, but may instead be valuable and confidential employer information the employee received while occupying a position of trust." *Alsco, Inc. v. Premier Outsourcing Plus, LLC*, No. CV 19-1631-CFC, 2020

21

WL 4209192, at *4 (D. Del. July 22, 2020), *report and recommendation adopted*, No. CV 19-1631-CFC, 2020 WL 4501921 (D. Del. Aug. 5, 2020). "An employee has a fiduciary duty to safeguard that information, or at least, not disclose it to a competitor, if the information is secret and the employee has acquired it in the course of his employment." *Triton Const. Co. v. E. Shore Elec. Servs., Inc.*, No. CIV.A. 3290-VCP, 2009 WL 1387115, at *11 (Del. Ch. May 18, 2009), *aff'd*, 988 A.2d 938 (Del. 2010). Additionally, the duty of loyalty would potentially prevent an employee from "misappropriating trade secrets, misusing confidential information, soliciting the employer's customers before cessation of employment, conspiring to effectuate mass resignation of key employees, or usurping a business opportunity of the employer." *Wayman Fire*, 2014 WL 897223, at *20 (cleaned up).

The allegations in the Complaint plausibly make out a claim for breach of fiduciary duty under Delaware law. The Complaint alleges that, while employed with MMA, Davis shared confidential information with Alliant regarding company compensation, in order to allow Alliant to craft above-market compensation packages to entice members of his team to accept Alliant's offer of employment. Compl., ¶ 90. The Complaint further alleges that Davis solicited Coetzee to forward a Microsoft Word document titled "CHEAT SHEET" from her MMA email account to her personal email. *Id.*, ¶ 93. This 40-page document contained confidential and proprietary information essential for servicing MMA clients, including details about the relationships and account histories of MMA's clients, insights into individual clients' needs, preferences, and operational nuances; non-public details about the

insurance carriers with whom MMA conducts business, including the specific

underwriting preferences and guidelines that reflect the carrier's internal risk

management policies and specialized coverage details unique to particular

underwriters; and insights into MMA's internal processes for client service,

including the specific wording crafted by Davis and Richardson for Certificates of

Insurance and insurance proposals. *Id.*, ¶¶ 93-94. The Complaint therefore

adequately alleges that Davis was provided with confidential information in the

course of his employment at MMA, thereby creating a duty of loyalty, and that he

shared that information with a competitor, and otherwise breached his duty of

loyalty in violation of his fiduciary duties. *See id.*, ¶¶ 195-96.

### 2. The Complaint Plausibly Alleges a Breach of Fiduciary Claim That is Not Duplicative of the Breach of Contract Claims

Davis argues that the fiduciary duty claim should be dismissed for the

additional reason that it is duplicative of the breach of contract claim. "The general

rule under Delaware law, subject to only narrow exceptions, is that a plaintiff may

not 'bootstrap' a breach of fiduciary duty claim into a breach of contract claim

merely by restating the breach of contract claim as a breach of fiduciary

duty. Courts will dismiss the breach of fiduciary [duty] claim where the two claims

overlap completely and arise from the same underlying conduct or nucleus of

operative facts." *Backer v. Palisades Growth Cap. II, L.P.*, 246 A.3d 81, 109 (Del.

2021). Dismissal is required where a fiduciary duty claim "*wholly overlaps* with a

concurrent breach of contract claim." *Id.* (emphasis added).

In determining if a breach of fiduciary duty claim is duplicative, courts will consider if "the fiduciary duty in the complaint arises from general fiduciary principles or from specific contractual obligations agreed upon by the parties." *Grunstein v. Silva*, No. CIV.A. 3932-VCN, 2009 WL 4698541, at *6 (Del. Ch. Dec. 8, 2009). "A breach of fiduciary duty claim generally only survives where it may be maintained independently of the breach of contract claim. Where those rights arise from a contract that specifically addresses the matter at issue, the court evaluates the parties' conduct within the framework they themselves crafted, instead of imposing more broadly defined equitable duties." *Id.* If, however, the breach of fiduciary duty claim would result in a different remedy than the breach of contract claim, *see e.g.*, *In re Mobilactive Media, LLC*, No. CIV.A. 5725-VCP, 2013 WL 297950, at *20 n.219 (Del. Ch. Jan. 25, 2013), or is based on different facts or different scope, *see e.g.*, *Schuss v. Penfield Partners, L.P.*, No. CIV.A. 3132-VCP, 2008 WL 2433842, at *10 (Del. Ch. June 13, 2008), then the claim survives.

As discussed above, Plaintiff's fiduciary duty claim does not arise from the NSA or the RCA. The NSA and the RCA did not create the fiduciary relationship. Rather, under Delaware law, the fiduciary duty was created when MMA reposed trust in Davis by sharing with him its confidential and proprietary information. Nor does the fiduciary duty claim "wholly overlap" with the breach of contract claim. The two claims are temporally distinct. The Complaint alleges that Davis breached his fiduciary duty by actions he took while still employed at MMA. Compl., ¶¶ 93-94. The breach of contract claims are not so limited in scope.

Accordingly, at this pleading stage of the litigation, the breach of fiduciary duty claim can proceed.

### B.  The Complaint States Claims for Tortious Interference Against Davis

Davis does not argue that MMA failed to plead the elements of its tortious interference claims.  Rather, Davis argues that the tortious interference claims are likewise duplicative of the breach of contract claims.

While Davis points to *B&M Linen Corp. v. Kannegiesser, USA, Corp.*, Defs. Mem. at 16, that case merely stands for the uncontroversial position that a tort claim "will not lie as a means to enforce a contractual bargain" and must instead "stem[] from a duty separate from a defendant's contractual duty to perform."  679 F. Supp. 2d 474, 487 (S.D.N.Y. 2010); *see also Generation Next Fashions Ltd. v. JP Morgan Chase Bank, NA.,* 698 F. Supp. 3d 663, 677 (S.D.N.Y. 2023) ("The independent legal duty giving rise to a tort claim must spring from circumstances extraneous to, and not constituting elements of, the contract, although it may be connected with and dependent upon the contract.  Where an independent tort duty is present, a plaintiff may maintain both tort and contract claims arising out of the same allegedly wrongful conduct." (cleaned up)).

In *B&M Linen*, the defendant's duty to exercise care in the design, manufacture, and testing of a commercial laundering machine arose from a contract.  In contrast, Davis's duty to refrain from tortiously interfering with MMA's contracts with its employees and its clients exists independent from any contractual duty.  Even if Davis had not entered into the CSA or RCA, MMA could still bring

such claims against him.  *See, e.g., Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2d Cir. 2006) ("[T]he elements of tortious interference with contract are (1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the third-party's breach of the contract without justification; (4) actual breach of the contract; and (5) damages resulting therefrom.")

That Plaintiff ultimately cannot achieve a "double recovery by claiming in tort what it has already claimed in contract," Defs. Mem. at 16, is not grounds to dismiss at the pleading stage.  MMA is entitled to plead its tortious interference and breach of contract claims against Davis in the alternative.  *See Henry v. Daytop Village*, 42 F.3d 89, 91 (2d Cir. 1994) ("[T]he Federal Rules of Civil Procedure explicitly authorize pleading in the alternative.").

## III. Defendants' Motion to Strike is Granted in Part

"A motion to strike on the ground that the matter is impertinent and immaterial should be denied unless it can be shown that no evidence in support of the allegation would be admissible.  Immaterial matter is that which has no essential or important relationship to the claim for relief, and impertinent material consists of statements that do not pertain to, and are not necessary to resolve, the disputed issues."  *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 402 F. Supp. 2d at 437 (cleaned up).

To prevail on a motion to strike, "defendants must demonstrate that (1) no evidence in support of the allegations would be admissible; (2) that the allegations

have no bearing on the issues in the case; and (3) that to permit the allegations to stand would result in prejudice to the movant." *Roe v. City of New York*, 151 F. Supp. 2d 495, 510 (S.D.N.Y. 2001) (quotation omitted).

Alliant seeks to strike the allegations and references made in the Complaint that pertain to allegations made against Alliant in other litigation. Specifically, it requests that Paragraphs 3, 4, 11, 77-81, and 83 be stricken in their entirety, including footnotes 1, 2, 5, and 7-10, as well as specific language found in Paragraphs 1, 2, 8, 9 (including footnote 3), 10 (including footnote 4), 85, 94 (including footnote 11), and 109. Defs. Mem at 9.

"Second Circuit case law is clear that paragraphs in a complaint that are either based on, or rely on, complaints in other actions that have been dismissed, settled, or otherwise not resolved, are, as a matter of law, immaterial within the meaning of Fed. R. Civ. P. 12(f)." *RSM Production Corp. v. Fridman*, 643 F. Supp. 2d 382, 403 (S.D.N.Y. 2009), *aff'd*, 387 F. App'x 72 (2d Cir. 2010). Paragraph 80 of the Complaint cites to numerous actions in which Alliant was or is a party. Compl., ¶ 80. However, all the matters cited in paragraph 80 were voluntarily dismissed, with the exception of five that are pending, and one which was dismissed for improper forum. ECF No. 31-2 ("Stephens Decl."), ¶ 3. The references to dismissed cases should be stricken from the record as immaterial.

In terms of the other portions of the Complaint, "motions to strike under Rule 12(f) are generally disfavored and granted only if there is a strong reason to do so." *Holland v. Chase Bank USA, N.A.*, 475 F. Supp. 3d 272, 275

(S.D.N.Y. 2020) (cleaned up). The allegations regarding public record court rulings against Alliant are "a far cry from the truly extraneous scandalous or inflammatory material that Rule 12(f) permits to be struck." *Gregory Wayne Designs, LLC v. Lowry*, No. 24 Civ. 2109 (PAE), 2024 WL 3518584, at *8 (S.D.N.Y. July 24, 2024) (citation omitted). These are nothing like the "scandalous allegation[s]" that this District commonly strikes, which "reflects unnecessarily on the defendant's moral character, or uses repulsive language that detracts from the dignity of the court." *Cabble v. Rollieson*, No. 04 Civ. 9413 (LTS) (FM), 2006 WL 464078, at *11 (S.D.N.Y. Feb. 27, 2006) (cleaned up). Accordingly, the Court denies the motion to strike other than respect to paragraph 80.

## CONCLUSION

Accordingly, Alliant's motion to dismiss the claims against it pursuant to Rule 12(b)(2) is granted. Davis's motion to dismiss pursuant to Rule 12(b)(6) is denied. Defendants' motion to strike is granted in part and denied in part. The Clerk of Court is directed to terminate ECF No. 30.

SO ORDERED.

Dated:  October 14, 2025
     New York, New York

_____
JEANNETTE A. VARGAS
United States District Judge

28