**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

MARSH & McLENNAN AGENCY, LLC,

        Plaintiff,

v.

ALLIANT INSURANCE SERVICES, INC.,
TRAVIS DAVIS, KEEGAN RICHARDSON,
SUSAN COETZEE, RAIZA ROBLES, and
AMANDA GUNN,

        Defendants.

Case No.: 1:25-cv-01260-JAV

**INDIVIDUAL DEFENDANTS'
ANSWER TO PLAINTIFF'S
COMPLAINT**

Defendants Travis Davis ("Davis"), Keegan Richardson ("Richardson"), Susan Coetzee ("Coetzee"), Raiza Robles ("Robles"), and Amanda Gunn ("Gunn") (the "Individual Defendants"), by and through their undersigned attorneys, answer the Complaint, dated February 12, 2025 (the "Complaint") of Plaintiff Marsh & McLennan Agency LLC ("MMA" or "Plaintiff"), upon information and belief, as follows:

## NATURE OF THE ACTION

1.    For the second time in a little under two months, MMA files suit against its direct competitor Alliant for unlawfully raiding another one of MMA's offices, this one in the Bend, Oregon region and carried out through Davis, then an MMA Sales Executive and key producer. While the locations may be different, Alliant followed the same corporate raiding playbook.

**1.    The Individual Defendants deny the allegations set forth in Paragraph 1 of the Complaint, except admit that Travis Davis was employed as a Sales Executive at MMA's office in Bend, Oregon and deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 1 of the Complaint regarding suits filed by MMA prior to this suit.**

2.    Like the raid in *Marsh & McLennan Agency, LLC v. Alliant Insurance Services, et al.*, No. 24-cv-00914 (MKV) (S.D.N.Y. Dec. 23, 2024), this action arises from a scheme orchestrated by Alliant and executed through Davis, aimed at pillaging the hard-earned client base

and proprietary knowledge of MMA for their own gain. In flagrant disregard of Davis's fiduciary duties to MMA and the restrictive covenants to which he had agreed, Alliant and Davis conspired to exploit his insider access to MMA's clients, employees, and confidential information to orchestrate a lift-out of his client service team and lure MMA's clients to Alliant, beginning while Davis was still employed at MMA and cloaked in the guise of loyalty. As intended, this betrayal culminated in a deliberate and unlawful exodus of MMA valued clients to Alliant—a strategic theft of a practice in which MMA had invested substantial resources over years to develop. MMA brings this action to enforce the contractual obligations of Davis and its other former employees, safeguard its confidential and trade secret information, protect its goodwill, redress the unlawful solicitation of its clients and interference with its business relationships, and put an end to the unfair competition perpetrated by Alliant and Davis.

**2.      The Individual Defendants deny the allegations set forth in Paragraph 2 of the Complaint, except deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 2 of the Complaint regarding suits filed by MMA prior to this suit.**

3.      While Alliant's and Davis's conduct is extraordinary considered in a vacuum, more extraordinary still is that for Alliant, such conduct is business as usual. Alliant has an established pattern of growing its business by targeting producers managing significant books of business at rival firms (to whom Alliant refers euphemistically as "leveraged hires"), [Footnote: *See Mt. W. Series of Lockton Cos., LLC v. Alliant Ins. Servs.*, No. 2019-0226-JTL, Exhibit 1 to Transmittal Affidavit and Corrected Transmittal Affidavit of Jarrett W. Horowitz in Support of Plaintiffs' Opening Brief in Support of Their Motion for a Preliminary Injunction (Del. Ch. July 21, 2022) (internal Alliant email referring to producers with existing books of business whom Alliant was recruiting from a competitor firm as "Leveraged Hires").] luring them to Alliant, and inducing them to transfer their former employer's clients, client service personnel, and confidential information to Alliant, in deliberate breach of their common law obligations and the restrictive covenants that are standard in the insurance brokerage industry. In other words, rather than investing the years of dedicated effort and skill to grow a client base from scratch or acquiring a practice lawfully, Alliant's growth strategy is to steal the investment and efforts of its competitors.

**3.      The Individual Defendants deny the allegations set forth in Paragraph 3 of the Complaint, except deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 3 of the Complaint regarding suits filed by MMA prior to this suit or hires made by Alliant other than the Individual Defendants.**

4.      Alliant knows that its *modus operandi* is unlawful. Not only is this the second lawsuit by MMA against Alliant in a little under two months, but this now marks the 68th lawsuit against Alliant for its practice of using intentionally tortious methods to grow its business by raiding its competitors. Indeed, at least 67 prior lawsuits have been brought against Alliant over

these very practices, resulting in multiple injunctions against it and other court rulings that have underscored Alliant's disregard for contractual obligations and fair competition. Notwithstanding this extraordinary legal history, Alliant has remained undeterred. Indeed, even after the Delaware Chancery Court delivered a particularly scathing rebuke to Alliant and its regular outside counsel for its role in advising Alliant on how to get away with knowingly tortious conduct—actions that the court found so far outside the bounds of appropriate legal advice that it might fall within "***the crime/fraud exception*** to the attorney-client privilege" [Footnote: *Mt. W. Series of Lockton Cos., LLC v. Alliant Ins. Servs.*, 2019 WL 2536104, at \*17-22 & n.6 (Del. Ch. June 20, 2019).] —Alliant did not reform its practices; rather, it left Delaware and reincorporated in California three weeks after the Delaware court entered a permanent injunction against it. From its new home, Alliant has continued to brazenly raid its competitors using the same playbook for unlawful conduct exposed in the Delaware litigation.

**4.    The Individual Defendants deny the allegations set forth in Paragraph 4 of the Complaint, except deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 4 of the Complaint regarding suits filed by MMA prior to this suit or hires made by Alliant other than the Individual Defendants.**

5.    Alliant's has now used this unlawful strategy against MMA's Northwest region, executing through Davis. Davis came to MMA in 2021 when MMA purchased the insurance brokerage firm in which Davis was a part-owner and Sales Executive (PayneWest Insurance, Inc. ("PayneWest")). In exchange for MMA's payment, Davis sold his shares in PayneWest to MMA and agreed to the terms of the purchase agreement, including specifically agreeing to restrictive covenants designed to allow MMA to protect the goodwill it had purchased.

**5.    Davis denies the allegations set forth in Paragraph 5 of the Complaint, except admits that he joined MMA as an employee after MMA's 2021 acquisition of PayneWest, where Davis had been a sales employee and had a small amount of equity, and admits that he signed MMA's restrictive covenants as a condition of his continued employment.  The remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 5 of the Complaint, except admit that MMA acquired PayneWest in 2021.  The Individual Defendants further aver that the purchase agreement is a written document, and respectfully refer the Court to the document for a full statement of its contents.**

6. Upon the closing of the acquisition, Davis and his team, who serviced the accounts he developed and managed, became employees of MMA. Davis and each member of the team entered into restrictive covenant agreements with MMA, receiving cash bonuses and employment in return.

**6. Davis denies the allegations set forth in Paragraph 6 of the Complaint, except admits that he joined MMA as an employee after MMA's 2021 acquisition of PayneWest, admits that he signed MMA's restrictive covenant agreements as a condition of his continued employment and that others he worked with at PayneWest, including those who serviced his clients, also became MMA employees at that time, and denies knowledge or information sufficient to form a belief as to the truth of the terms of the other employees' agreements. The remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 6 of the Complaint, except Richardson, Robles, and Gunn admit that they, as well as Davis and other PayneWest employees, joined MMA as employees after MMA's 2021 acquisition of PayneWest, where they had been employed, admit that they signed MMA's restrictive covenant agreements as a condition of their continued employment and admit that they serviced clients, including some of Davis's clients, at PayneWest.**

7. At MMA, Davis served as a Sales Executive based in MMA's Bend, Oregon office. During his tenure at PayneWest, Davis had developed a substantial book of business, which MMA purchased in its acquisition of PayneWest, and which Davis continued to expand at MMA by leveraging MMA's brand, goodwill, and significant investments in business development. By 2024, the book of business Davis managed generated well over one million dollars a year in annually recurring revenue.

**7. The Individual Defendants deny the allegations set forth in Paragraph 7 of the Complaint, except Davis admits, and the remaining Individual Defendants admit upon information and belief, that Davis was a Sales Executive at MMA's office in Bend, Oregon and had a book of business that generated in excess of one million dollars in revenue.**

8.    The book of business that Davis managed for MMA made him a prime target for Alliant. Having identified Davis as a producer responsible for a large book of business, Alliant deployed its playbook to take that book of business for itself. Accordingly, on or about March 14, 2024, a recruiter for Alliant, hoping to make Davis Alliant's next "leveraged hire," contacted him to recruit him to a "Senior Producer" role at Alliant. Alliant did not stop at recruiting Davis alone. It also recruited Davis's client service team at MMA, extending above-market compensation packages to Davis and his team members, which they all ultimately accepted.

**8.    Davis denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 8 of the Complaint, except admits that a recruiter contacted him while he was employed at MMA.  The remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 8 of the Complaint, except admit that they each accepted offers of employment from Alliant.**

9.    But rather than competing fairly by respecting the contractual obligations of Davis and his team, Alliant's offers hinged on Davis transferring MMA clients and their business to Alliant, leveraging the relationships that MMA had purchased when it bought Davis's shares in his prior agency and the additional relationships that Davis had built using MMA's brand and resources. Indeed, hiring the client service team and offering above-market compensation premised on the new hires soliciting and moving their former employer's customers to Alliant is a core component of Alliant's standard playbook. [Footnote: *See, e.g., Mt. W. Series of Lockton Cos., LLC*, 2019 WL 2536104, at *1, *3 (finding that "having the Former Employees solicit their Lockton customers was the reason Alliant engineered their mass resignations," and Alliant offered a "massive compensation package" "[t]o convince [the producer] to leave Lockton" and because "Alliant expected [him] to solicit his Lockton customers and bring them over to Alliant").]

**9.    Davis denies the allegations set forth in the first sentence of Paragraph 9 of the Complaint, avers that the footnote to Paragraph 9 purports to paraphrase and/or quote portions of written documents, respectfully refers the Court to the documents for a full statement of their contents and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in Paragraph 9 of the Complaint.  The remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 9 of the Complaint except aver that the footnote to Paragraph 9 purports to paraphrase and/or quote portions of written**

documents and respectfully refers the Court to the documents for a full statement of their contents.

10. Alliant was fully aware of the restrictive covenants binding Davis, both as a seller of a business and as an employee of MMA, which prohibited him from soliciting, accepting business from, or servicing MMA clients and from soliciting MMA employees. Nevertheless, Alliant hired Davis on the condition that he would breach those obligations. This too is part of Alliant's standard playbook. [Footnote: *See, e.g.*, *Mt. W. Series of Lockton Cos., LLC*, 2019 WL 2536104, at *1 (finding that Alliant was aware of producers' restrictive covenants, but "rather than respecting those covenants, Alliant induced the Producer Members to leave Lockton and breach them," as, indeed, "having the Former Employees solicit their Lockton customers was the reason that Alliant engineered their mass resignations" in the first place).]

**10. Davis denies the allegations set forth in Paragraph 10 of the Complaint, and avers that the footnote to Paragraph 10 purports to paraphrase and/or quote portions of written documents and respectfully refers the Court to the documents for a full statement of their contents. The remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 10 of the Complaint, except aver that the footnote to Paragraph 10 of the Complaint purports to paraphrase and/or quote portions of written documents, and respectfully refer the Court to the documents for a full statement of their contents.**

11. As exposed in the Delaware litigation against Alliant, once a producer at a competitor firm accepts an offer of employment from Alliant, Alliant seeks to transfer as many client relationships as possible before the competitor can take steps to retain them or seek injunctive relief in court. Understanding that advance notice of the producer's resignation would trigger client-retention efforts and allow the competitor a chance to seek immediate court intervention if it detected prohibited client solicitation, [Footnote: *Mt. W. Series of Lockton Cos., LLC v. Alliant Ins. Servs.*, No. 2019-0226-JTL, Exhibit 51 to Transmittal Affidavit and Corrected Transmittal Affidavit of Jarrett W. Horowitz in Support of Plaintiffs' Opening Brief in Support of Their Motion for a Preliminary Injunction at ALLIANT00090928-29 (Del. Ch. July 21, 2022) (memorandum from counsel for a Targeted Hire to Alliant noting that the Targeted Hire's agreement with his then-current employer "requires...30 days' prior written notice of [an] intention to terminate his employment, which will then give [the employer] a significant opportunity to reach out to [the Targeted Hire's] customers and encourage them to remain [with the Targeted Hire's employer].").] Alliant instructs new hires to withhold notice of their resignation, allowing them to covertly solicit clients, recruit key client service personnel, and gather critical confidential and trade secret information in the period between accepting Alliant's offer and announcing their departure, and then selects a resignation date (typically a Monday morning) strategically timed to

minimize the competitor's chance to respond. This calculated delay and strategically timed resignation announcement enables Alliant to quietly solicit clients, recruit key personnel, and capture confidential and trade secret information, all while keeping the producer's current employer in the dark until the damage is done.

**11.    The Individual Defendants deny the allegations set forth in Paragraph 11 of the Complaint, except deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 11 of the Complaint regarding hires other than the Individual Defendants and aver that Paragraph 11 of the Complaint purports to paraphrase and/or quote portions of written documents and respectfully refers the Court to the documents for a full statement of their contents.**

12.    Unsurprisingly, then, after accepting Alliant's offer, Davis concealed his intentions from MMA and used this time after he accepted Alliant's offer and before he informed MMA that he was resigning to exploit his continued access to MMA's employees, clients, and confidential and trade secret information – access that he continued to have solely because he was deceiving MMA into believing that he was still its loyal agent – to solicit MMA employees and clients to move to Alliant with him.

**12.    Davis denies the allegations set forth in Paragraph 12 of the Complaint.  The remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 12 of the Complaint.**

13.    Upon information and belief, by June 20, 2024, at least Coetzee had agreed to join Davis at Alliant and to assist him and Alliant in the solicitation and servicing of MMA clients, despite her own restrictive covenant agreement with MMA prohibiting such conduct.

**13.    Davis and Coetzee deny the allegations set forth in Paragraph 13 of the Complaint.  The remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 13 of the Complaint.**

14.    In furtherance of this scheme, on June 20, 2024, Coetzee forwarded from her MMA email account to her personal email a 40-page document entitled "CHEAT SHEET." True to its name, this document was a "how-to" guide for seamlessly transitioning MMA's clients to Alliant and replicating MMA's tailored service offerings. It contained critical, highly confidential, and proprietary information that MMA had spent years cultivating, including detailed instructions on servicing and managing MMA's clients according to MMA's customized approach, insights built on trusted relationships with clients and carriers, and precise strategies for interacting with carriers

to better serve MMA's specific clients. Armed with this "cheat sheet," Davis and his team had everything they needed to poach MMA's clients and recreate MMA's service model at Alliant. Through years of dedicated effort and cultivated relationships, MMA had painstakingly developed the insights and culled the information contained in this document—yet with a single email, Davis, his team, and Alliant were able to shortcut that process and capitalize on MMA's proprietary strategies and hard-earned trade secrets.

**14.    Coetzee denies the allegations set forth in Paragraph 14 of the Complaint, except admits she emailed a document titled "CHEAT SHEET" from her MMA email to her personal email.  The remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 14 of the Complaint. The document titled "CHEAT SHEET" is a written document, and the Individual Defendants respectfully refer the Court to the document for a full statement of its contents.**

15.    Davis not only solicited the MMA employees who comprised his client service team at MMA while he was still employed at MMA, but also he began soliciting MMA clients. This brazen conduct ultimately led to MMA discovering Davis's betrayal.

**15.    Davis denies the allegations set forth in Paragraph 15 of the Complaint.  The remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 15 of the Complaint.**

16.    On Sunday, June 23, 2024, a key principal at one of Davis's largest clients contacted MMA, asking about MMA's "plan" in light of Davis's resignation. This was the first MMA had heard of Davis's intention to resign—news delivered not by Davis himself, but by a client whom he had already solicited while still employed and masquerading as a loyal agent of MMA.

**16.    Davis denies the allegations set forth in Paragraph 16 of the Complaint.  The remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 16 of the Complaint.**

17.    First thing the next morning, on Monday, June 24, 2024, Davis submitted his resignation to MMA, effective immediately. This maneuver followed Alliant's well-rehearsed playbook for raids on competitors and client poaching.

**17.    Davis denies the allegations set forth in Paragraph 17 of the Complaint, except admits that he resigned from MMA on June 24, 2024.  The remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 17 of the Complaint.**

18.    On the following day, June 25, 2024, Richardson resigned, and within three weeks, all other members of Davis's client service team joined them at Alliant.

**18.    Richardson denies the allegations set forth in Paragraph 18 of the Complaint, except admits that he resigned from MMA on June 25, 2024.  The remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 18 of the Complaint, except admit that they now are each employed at Alliant.**

19.    Once at Alliant, Davis continued his efforts to solicit MMA clients, urging them to transfer their business to Alliant. A key part of his pitch was that his entire client service team from MMA had joined him at Alliant, allowing him to assure clients that they would receive the same personalized service from the same team, thus ensuring continuity and minimizing any disruption or risk in the transition. At the same time, Davis claimed that if the clients stayed with MMA, they would be assigned a new team unfamiliar with their needs and preferences. In essence, Davis leveraged his own misconduct—soliciting his entire team to leave MMA in violation of his fiduciary duties and employee non-solicitation covenant, along with promises of further misconduct (breaching his own and the team's client non-servicing restrictions to entice clients to move to Alliant).

**19.    Davis denies the allegations set forth in Paragraph 19 of the Complaint.  The remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 19 of the Complaint.**

20.    As a direct result of Davis's and Alliant's unlawful actions, on June 25, 2024—the day after Davis's resignation—multiple MMA clients for whom Davis had been responsible executed Broker of Record letters appointing Alliant as their new Broker of Record. To date, more than 30 MMA clients have made the switch. True to his illicit promises, Davis and his former MMA client service team have continued to service these clients at Alliant, despite being contractually prohibited from doing so.

**20.    The Individual Defendants deny the allegations set forth in Paragraph 20 of the Complaint, except admit that some former MMA clients have transitioned their business to Alliant since June 24, 2024. The Individual Defendants aver that Broker of Record letters are written documents and respectfully refers the Court to the documents for a full statement of their contents.**

21.    Because of Davis's repeated and deliberate breaches of his contractual and fiduciary duties at Alliant's inducement and direction—including Davis's obligations not to solicit or service MMA's clients, and to protect MMA's confidential and trade secret information—MMA brings this action to enforce its contractual rights, seek redress for the damage caused by Davis and Alliant, and prevent any further harm to its business.

**21.    The Individual Defendants deny the allegations set forth in Paragraph 21 of the Complaint.**

**THE PARTIES**

22.    MMA is an insurance brokerage and risk management firm that provides risk management, insurance, and employee benefit support services to its clients. MMA operates brokerage offices and businesses across the United States. MMA is a limited liability corporation organized and existing under the laws of the State of Delaware, with its principal place of business in White Plains, New York. MMA is an indirect subsidiary of Marsh & McLennan Companies, Inc. ("MMC"), a publicly held corporation traded on the New York Stock Exchange, which is incorporated in Delaware with its principal place of business in New York, New York.

**22.    The Individual Defendants admit the allegations in the first two sentences of Paragraph 22 of the Complaint. The Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in Paragraph 22 of the Complaint.**

23.    Davis is an individual who, upon information and belief, is a citizen and resident of the State of Oregon. Davis is a former employee of MMA and a current employee of Alliant.

**23.    Davis admits the allegations set forth in Paragraph 23 of the Complaint. The remaining Individual Defendants deny knowledge or information sufficient to form a belief**

as to the truth of the allegations set forth in Paragraph 23 of the Complaint, except admit that Davis is a former employee of MMA and a current employee of Alliant.

24.    Richardson is an individual who, upon information and belief, is a citizen and resident of the State of Oregon. Richardson is a former employee of MMA and a current employee of Alliant.

**24.    Richardson admits the allegations set forth in Paragraph 24 of the Complaint. The remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 24 of the Complaint, except admit that Richardson is a former employee of MMA and a current employee of Alliant.**

25.    Coetzee is an individual who, upon information and belief, is a citizen and resident of the State of Oregon. Coetzee is a former employee of MMA and a current employee of Alliant.

**25.    Coetzee admits the allegations set forth in Paragraph 25 of the Complaint. The remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 25 of the Complaint, except admit that Coetzee is a former employee of MMA and a current employee of Alliant.**

26.    Robles is an individual who, upon information and belief, is a citizen and resident of the State of Oregon. Robles is a former employee of MMA and a current employee of Alliant.

**26.    Robles admits the allegations set forth in Paragraph 26 of the Complaint. The remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 26 of the Complaint, except admit that Robles is a former employee of MMA and a current employee of Alliant.**

27.    Gunn is an individual who, upon information and belief, is a citizen and resident of the State of Oregon. Gunn is a former employee of MMA and a current employee of Alliant.

**27.    Gunn admits the allegations set forth in Paragraph 27 of the Complaint. The remaining Individual Defendants deny knowledge or information sufficient to form a belief**

**as to the truth of the allegations set forth in Paragraph 27 of the Complaint, except admit that Gunn is a former employee of MMA and a current employee of Alliant.**

28.     Alliant is a corporation organized and existing under California law, with its principal place of business in Newport Beach, California. [Footnote: Until January 2020, Alliant was a Delaware corporation. But after a privilege waiver in a litigation against Alliant in Delaware laid bare the full depth of Alliant's unlawful conduct and resulted in a scathing rebuke by the Delaware Chancery Court, Alliant fled the jurisdiction, dissolving its incorporation in Delaware and re-incorporating in California.] Alliant does business and maintains offices throughout the United States, including in New York, where it is registered to do business and maintains six offices (including two offices located in New York City). Like MMA, Alliant is in the business of providing insurance brokerage, risk management and employee benefit support services. MMA and Alliant are direct competitors.

**28.     The Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 28 of the Complaint, except admit that Alliant does business and maintains offices in the United States, Alliant is in the business of providing insurance brokerage, risk management and employee benefit support services and MMA and Alliant are competitors.**

## JURISDICTION AND VENUE

29.     This Court has subject matter jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1332 (diversity of citizenship) because there is complete diversity of citizenship among the parties and the amount in controversy exceeds $75,000, exclusive of interests and costs.

**29.     The Individual Defendants assert that the allegations set forth in Paragraph 29 of the Complaint constitute legal conclusions to which no responsive pleading is required. To the extent responsive pleading is required, the Individual Defendants deny the allegations set forth in Paragraph 29 of the Complaint.**

30.     This Court also has subject matter jurisdiction over MMA's claims under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1367 (supplemental jurisdiction) because the Complaint alleges a claim for misappropriation of trade secrets under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1832 *et seq*., and MMA's other claims are so related to its federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

**30.     The Individual Defendants assert that the allegations set forth in Paragraph 30 of the Complaint constitute legal conclusions to which no responsive pleading is required. To the extent responsive pleading is required, the Individual Defendants deny the allegations set forth in Paragraph 30 of the Complaint.**

31.     This Court has personal jurisdiction over Alliant because Alliant conducts business in this District and has committed tortious acts within the State of New York or has directed its tortious conduct toward the State of New York.

**31.     Denied. Pursuant to the Court's October 14, 2025 Order and Opinion, this Court lacks personal jurisdiction over Alliant.**

32.     Personal jurisdiction exists over Davis, Richardson, Coetzee, Robles, and Gunn because in the agreements that they executed with MMA, detailed below, they each agreed to the jurisdiction of this Court in connection with any action arising in connection with those agreements or with their employment with MMA. Davis's, Richardson's, Coetzee's, Robles's, and Gunn's breaches of their obligations under those agreements and their breaches of the duty of loyalty during their employment with MMA are the subject of this Complaint.

**32.     The Individual Defendants assert that the allegations set forth in Paragraph 32 of the Complaint constitute legal conclusions to which no responsive pleading is required. To the extent responsive pleading is required, the Individual Defendants admit that the agreements they executed with MMA included forum selection clauses, which are written documents and respectfully refer the Court to the documents for a full statement of their contents, and deny the remaining allegations set forth in Paragraph 32 of the Complaint.**

33.     Venue is proper in this District pursuant to 28 USC §§ 1391(b)(2) and 1391(b)(3) because the agreements signed by Davis, Richardson, Coetzee, Robles, and Gunn with MMA, which are the subject of the breach of contract claims set forth herein, contain a Governing Law and Choice of Forum provision, designating courts in New York County or the United States District Court for the Southern District of New York as the exclusive venue for resolution of disputes between the parties. Further, MMA maintains its principal place of business in this judicial District.

**33.     The Individual Defendants assert that the allegations set forth in Paragraph 33 of the Complaint constitute legal conclusions to which no responsive pleading is required.**

To the extent responsive pleading is required, the Individual Defendants admit that the agreements they executed with MMA included forum selection clauses, which are written documents and respectfully refer the Court to the documents for a full statement of their contents, and deny the remaining allegations set forth in Paragraph 33 of the Complaint.

## FACTUAL ALLEGATIONS

34.     MMA provides risk management, insurance, and employee benefit support services to its clients. These services include providing advice on insurance needs, negotiating terms and conditions of insurance policies on behalf of clients, and providing employee benefit support and advice. The insurance brokerage and other risk management business areas are highly competitive.

**34.     The Individual Defendants admit the allegations set forth in Paragraph 34 of the Complaint.**

35.     MMA has invested significant time and resources over many years to develop and to grow its client relationships and to compile confidential and proprietary information concerning its clients, their accounts, and their insurance needs and preferences. In addition, MMA has purchased other insurance agencies, which have similarly made such investments. MMA's purchase of those agencies included the purchase of such agencies' goodwill.

**35.     The Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 35 of the Complaint.**

36.     Before working at MMA, Davis worked at PayneWest. Davis was a shareholder and part-owner of PayneWest.

**36.     Davis admits the allegations set forth in Paragraph 36 of the Complaint, except denies that he was a former owner of PayneWest and avers that he had a small amount of equity. The remaining Individual Defendants admit the allegations set forth in Paragraph 36 of the Complaint, except deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 36 of the Complaint concerning Davis's ownership status.**

37.     PayneWest was a Montana-based insurance brokerage agency, which provided business insurance, surety, employee benefits, and personal insurance services to companies and

individuals across the Northwest of the United States through offices across Idaho, Montana, Oregon, and Washington.

**37.    The Individual Defendants admit the allegations set forth in Paragraph 37 of the Complaint.**

38.    Davis worked as a Sales Executive in PayneWest's Bend, Oregon office. As a Sales Executive (colloquially known as a "producer"), Davis's job was to sell PayneWest's brokerage services to clients, both in terms of developing new client relationships and maintaining and expanding PayneWest's relationships with existing clients. Davis also oversaw a client service team, which was responsible for the day-to-day management of the client accounts that he managed. At PayneWest, Davis's client service team was led by Richardson, who serviced Davis's largest client accounts, and included team members Gunn and Robles. Richardson and Robles worked from PayneWest's Bend, Oregon office. Gunn worked in PayneWest's Madras, Oregon office.

**38.    The Individual Defendants deny the allegations set forth in Paragraph 38 of the Complaint, except admit that Davis was a Sales Executive in PayneWest's Bend, Oregon office, that insurance brokerage producers typically develop and maintain client relationships and have client-facing roles, that Davis developed and maintained client relationships and that Richardson, Robles, Coetzee, and Gunn serviced some of Davis's accounts, and that Gunn worked in PayneWest's Madras, Oregon office.**

39.    MMA closed on its acquisition of PayneWest on April 1, 2021 (the "Closing Date").

**39.    The Individual Defendants admit upon information and belief that MMA acquired PayneWest in April 2021.**

40.    Under the purchase agreement, MMA's agreement to purchase 100% of PayneWest's equity was contingent on all the PayneWest shareholders, including Davis, signing and agreeing to the terms of an Acknowledgement and Restrictive Covenant Agreement with MMA.

**40.    Davis denies the allegations set forth in Paragraph 40 of the Complaint, except denies knowledge or information sufficient to form a belief as to the truth of the allegation that MMA required each PayneWest shareholder to enter into an RCA and admits that**

**Davis was required to enter into an RCA as a condition of his continued employment. The remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 40 of the Complaint, except all Individual Defendants aver that the purchase agreement is a written document and respectfully refer the Court to the document for a full statement of its contents.**

41.    MMA paid Davis a substantial sum in exchange for his shares in PayneWest and his personal agreement to the terms of the Acknowledgement and Restrictive Covenant Agreement.

**41.    Davis denies the allegations set forth in Paragraph 41 of the Complaint, except admits that he executed the RCA, which is a written document, and respectfully refers the Court to the document for a full statement of its contents. The remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 41 of the Complaint.**

42.    Accordingly, on April 1, 2021, Davis executed the Acknowledgement and Restrictive Covenant Agreement (the "RCA") with MMA. (A true and correct copy of the RCA is attached hereto as **Exhibit A**.)

**42.    Davis denies the allegations set forth in Paragraph 42 of the Complaint, except admits that he executed the RCA, which is a written document, and respectfully refers the Court to the document for a full statement of its contents. The remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 42 of the Complaint.**

43.    The RCA contains WHEREAS statements at the start of the agreement, including the following:

> WHEREAS, pursuant to the Merger Agreement, among other things, Purchaser shall acquire, directly or indirectly, 100% of the issued and outstanding capital stock of the Company in a reverse subsidiary merger transaction on the terms and subject to the conditions set forth in the Merger Agreement (the "**Contemplated Transactions**");
>
> WHEREAS, as a condition to closing the Contemplated Transactions, the undersigned is required to enter into this Acknowledgement and Restrictive Covenant Agreement in favor of the Purchaser (this "**Agreement**");
>
> WHERAS, pursuant to the Merger Agreement, upon the closing of the Contemplated Transactions the undersigned will be entitled to receive his or her portion of the Base Purchase Price (as such term is defined in the Merger Agreement) to which the undersigned is entitled under the Merger Agreement; and

**43.     Davis avers that Paragraph 43 of the Complaint purports to paraphrase and/or quote portions of a written document, respectfully refers the Court to the document for a full statement of its contents and otherwise denies the allegations set forth in Paragraph 43 of the Complaint.  The remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 43 of the Complaint.**

44.     The RCA includes, among other things, confidentiality, client non-solicitation, non-acceptance of business and non-servicing restrictions, and employee non-solicitation restrictions. These provisions restrict Davis from soliciting, accepting business from, or servicing the accounts of PayneWest's clients or prospective clients or soliciting PayneWest employees who became employed by MMA for a five-year period after the Closing Date of MMA's purchase of PayneWest. The Closing Date of MMA's acquisition of PayneWest was April 1, 2021. Accordingly, the restrictive covenants to which Davis agreed as part of the sale of his shares in PayneWest to MMA do not expire until April 1, 2026.

**44.     Davis avers that Paragraph 44 of the Complaint purports to paraphrase portions of a written document, respectfully refers the Court to the document for a full statement of its contents and otherwise denies the allegations set forth in Paragraph 44 of the Complaint.  The remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 44 of the Complaint.**

45.    The five-year client non-solicitation, non-acceptance of business, and non-servicing restrictions, as well as the five-year employee non-solicitation and non-hire restrictions are set forth in Section 3 of the RCA and state in relevant part as follows:

(a)    <u>Non-Solicitation/Non-Acceptance</u>. As a material inducement to Purchaser's consummation of the Contemplated Transactions, including Purchaser's acquisition of the Goodwill, the undersigned shall not, during the five (5) years following the Closing Date, directly or indirectly, without the prior written consent of Purchaser in each instance in its sole discretion:

(i)    solicit, accept, call on, divert, take away, influence, induce or attempt to do any of the foregoing with respect to the Active Prospective Clients of the Company or its Subsidiaries as of the Closing Date (wherever located) and the Client Accounts of the Company or its Subsidiaries that are part of the Business;

(ii)    service or accept insurance agency brokerage business from any Client Account or Active Prospective Clients of the Company or its Subsidiaries;

(iii)    solicit, direct or influence any of the suppliers, vendors, service providers, insurance carriers, brokers, cooperating brokers, agents, personnel and others having business relations with the Company or its Subsidiaries as of the Closing Date, or attempt to do any of the foregoing, for the purpose or with the intended effect of causing any of the foregoing to adversely modify or terminate any business relationships involving any Client Accounts of the Company or its Subsidiaries; or

(iv)    (A) solicit, call on, divert, influence, induce or attempt to do any of the foregoing with respect to any of the employees, Client Facing Persons or independent contractors of the Company or its Subsidiaries on the Closing Date to leave the employ or engagement of Purchaser or any of its Affiliates; (B) hire or attempt to hire any of the employees, Client Facing Persons, sub-brokers, co-brokers or independent contractors of the Company or its Subsidiaries on the Closing Date subsequently employed or engaged by Purchaser

> or any of its Affiliates or (C) attempt to influence or induce any such employee, Client Facing Person or independent contractor to terminate or modify any Contract, or business arrangement or relationship with Purchaser or any of its Affiliates.

**45.    Davis avers that Paragraph 45 of the Complaint purports to paraphrase and/or quote portions of a written document, respectfully refers the Court to the document for a full statement of its contents and otherwise denies the allegations set forth in Paragraph 45 of the Complaint.  The remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 45 of the Complaint.**

46.    In Section 5 of the RCA, Davis agreed that "[t]he periods of time set forth in this Agreement shall not include, and shall be deemed extended by, any time required for litigation to enforce the relevant covenant periods," and that the "time required for litigation" shall date from his "first breach of the [restrictive covenants in the RCA]."

**46.    Davis avers that Paragraph 46 of the Complaint purports to paraphrase and/or quote portions of a written document, respectfully refers the Court to the document for a full statement of its contents and otherwise denies the allegations set forth in Paragraph 46 of the Complaint.  The remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 46 of the Complaint.**

47.    The RCA defines the "Business" as "the business of [PayneWest] as conducted on the Closing Date" of MMA's acquisition of PayneWest.

**47.    Davis avers that Paragraph 47 of the Complaint purports to paraphrase and/or quote portions of a written document, respectfully refers the Court to the document for a full statement of its contents and otherwise denies the allegations set forth in Paragraph 47 of the Complaint.  The remaining Individual Defendants deny knowledge or information**

sufficient to form a belief as to the truth of the allegations set forth in Paragraph 47 of the

Complaint.

48.    The RCA defines "Client" as "any other Person (including any insured, or any sub-producer or insured to whom or which such sub-producer provides insurances services) to whom or which [PayneWest] (or any of their former or current employees or independent producers on behalf of [PayneWest]) have provided any services (on behalf of [PayneWest]) that [PayneWest] provide[s] in the conduct of the Business."

**48.    Davis avers that Paragraph 48 of the Complaint purports to paraphrase**

**and/or quote portions of a written document, respectfully refers the Court to the document**

**for a full statement of its contents and otherwise denies the allegations set forth in Paragraph**

**48 of the Complaint.  The remaining Individual Defendants deny knowledge or information**

**sufficient to form a belief as to the truth of the allegations set forth in Paragraph 48 of the**

**Complaint.**

49.    The RCA defines "Client Account" as "the business account relationship between [PayneWest], on the one hand, and any Client of [PayneWest], on the other hand, including any Person who or which is provided any services as of the Closing Date by [PayneWest], regardless of whether such services are provided by, or through the licenses of, [PayneWest] or any of its Representatives."

**49.    Davis avers that Paragraph 49 of the Complaint purports to paraphrase**

**and/or quote portions of a written document, respectfully refers the Court to the document**

**for a full statement of its contents and otherwise denies the allegations set forth in Paragraph**

**49 of the Complaint.  The remaining Individual Defendants deny knowledge or information**

**sufficient to form a belief as to the truth of the allegations set forth in Paragraph 49 of the**

**Complaint.**

50.    The RCA defines "Client Facing Person" as:

each officer, employee, independent contractor and other Person employed, engaged, supervised or controlled by [PayneWest], or for whom [PayneWest], or any holder of equity Securities of [PayneWest], has a responsibility to supervise or control under Law or by Contract and any employee or consultant of [PayneWest], or

> any holder of equity Securities of [PayneWest] (i) who is required by reason of the nature of his or her employment or engagement by [PayneWest] to be registered or licensed as an insurance agent, insurance broker or insurance producer or (ii) who has marketed, sold, negotiated, serviced, administered, managed, provided advice with respect to, underwritten, or had substantive contact with, any Client or any Person who is an Active Prospective Client or otherwise transacted business for [PayneWest].

**50.    Davis avers that Paragraph 50 of the Complaint purports to paraphrase and/or quote portions of a written document, respectfully refers the Court to the document for a full statement of its contents and otherwise denies the allegations set forth in Paragraph 50 of the Complaint. The remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 50 of the Complaint.**

51.    In connection with its acquisition of PayneWest, MMA offered employment to all PayneWest employees, contingent upon their execution of a Non-Solicitation and Confidentiality Agreement with MMA.

**51.    The Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 51 of the Complaint except admit that MMA offered employment to them subject to the execution of certain agreements.**

52.    Davis and the members of his client service team at PayneWest (Richardson, Robles, and Gunn) each executed the Non-Solicitation and Confidentiality Agreement (the "NSA") with MMA in connection with MMA's acquisition of PayneWest. (A true and copy of Davis's executed NSA (the "Davis NSA") is attached hereto as **Exhibit B**; a true and correct copy of Richardson's executed NSA (the "Richardson NSA") is attached hereto as **Exhibit C**; a true and correct copy of Robles's executed NSA (the "Robles NSA") is attached hereto as **Exhibit D**; and a true and correct copy of Gunn's executed NSA (the "Gunn NSA") is attached hereto as **Exhibit E**.)

**52.    The Individual Defendants admit that each executed their respective NSA and aver that their execution was a condition of their continued employment. Those agreements are written documents and respectfully refer the Court to the documents for a full statement**

-21-

of their contents and otherwise deny the allegations set forth in Paragraph 52 of the

Complaint.

53.    In consideration for their execution of and agreement to the terms of the NSAs, MMA paid Davis, Richardson, Robles, and Gunn each a cash bonus, and they became employees of MMA upon the closing of MMA's acquisition of PayneWest.

**53.    The Individual Defendants deny knowledge or information sufficient to form**

**a belief as to the truth of the allegations set forth in Paragraph 53 of the Complaint except**

**admit that each of them executed their respective NSAs, was paid a cash bonus by MMA,**

**and became employees of MMA.**

54.    As recited in the NSAs, MMA "acquired, directly or indirectly the issued and outstanding capital stock of PayneWest," and the NSAs were "necessary to protect the goodwill, clients, and prospective clients acquired by [MMA] and the value of the Acquisition."

**54.    The Individual Defendants deny the allegations set forth in Paragraph 54 of**

**the Complaint, except deny knowledge or information sufficient to form a belief as to the**

**truth of the allegations set forth Paragraph 54 of the Complaint regarding MMA's**

**acquisition of outstanding capital stock.  The NSAs are written documents and respectfully**

**refer the Court to the documents for a full statement of their contents.**

55.    The NSAs include a two-year post-employment client non-solicitation and non-servicing covenant. Specifically, in Section 1 of the NSAs, entitled "Non-Solicitation of Clients," Davis, Richardson, Robles, and Gunn agreed that for two years following their separation of employment from MMA, they would not, directly or indirectly:

> (i) solicit clients or prospective clients of [MMA] for the purpose of selling or providing consulting services or projects, or selling products, of the type sold or provided by Employee while employed by [MMA]; (ii) induce clients or prospective clients of [MMA] to terminate, cancel, not renew, or not place business with [MMA], (iii) perform or supervise the provision or performance of services or projects or provision of products of the type sold or provided by Employee while he or she was employed by [MMA] on behalf of any clients or prospective clients of [MMA], or (iv) assist others to do the acts specified in Sections 1(b)(i)-(iii). ... Employee shall not engage in any subterfuge to circumvent this prohibition, including, but not limited to accompanying others on calls to the client, contacting the client with other persons, supervising other persons in soliciting or serving the client, providing Confidential Information and Trade Secrets to others to assist

them in soliciting or serving the client, participating in developing presentations to be made to the client, or other similar activities.

**55.      The Individual Defendants aver that Paragraph 55 of the Complaint purports to paraphrase and/or quote portions of written documents, respectfully refer the Court to the documents for a full statement of their contents and otherwise deny the allegations set forth in Paragraph 55 of the Complaint.**

56.      The NSAs also include a two-year post-employment employee non-solicitation covenant. Specifically, in Section 2 of the NSAs, entitled "Non-Solicitation of Employees," Davis, Richardson, Robles, and Gunn agreed that "both during employment with MMA and for a period of two (2) years thereafter," they would not, "directly or indirectly," whether on their

own account or on behalf of any person, company, corporation, or other entity, ... solicit, or endeavor to cause any employee of [MMA] with whom Employee, during the last two (2) years of his or her employment with the Company, came into contact for the purpose of soliciting or servicing business or about whom Employee obtained Confidential Information and Trade Secrets to leave employment with [MMA].

**56.      The Individual Defendants aver that Paragraph 56 of the Complaint purports to paraphrase and/or quote portions of written documents, respectfully refer the Court to the documents for a full statement of their contents and otherwise deny the allegations set forth in Paragraph 56 of the Complaint.**

57.      In Section 5 of the NSAs, entitled "Nondisclosure of Confidential Information and Trade Secrets," Davis, Richardson, Robles, and Gunn each "acknowledge[d] and agree[d] that [MMA] is engaged in a highly competitive business and that its competitive position depends upon its ability to maintain the confidentiality of the Confidential Information and Trade Secrets which were developed, compiled, and acquired by [MMA] at its great effort and expense," and that "disclosing, divulging, revealing, or using of any of the Confidential Information and Trade Secrets, other than in connection with [MMA's] business..., will be highly detrimental to [MMA] and cause it to suffer serious loss of business and pecuniary damage."

**57.      The Individual Defendants aver that Paragraph 57 of the Complaint purports to paraphrase and/or quote portions of written documents, respectfully refer the Court to**

the documents for a full statement of their contents and otherwise deny the allegations set

forth in Paragraph 57 of the Complaint.

58.     Accordingly, in Section 5 of the NSAs, Davis, Richardson, Robles, and Gunn each agreed that during their employment with MMA and at any time thereafter, they would not, "directly or indirectly, disseminate or disclose to any other person, organization or entity Confidential Information and Trade Secrets," except to the extent required to carry out their duties as MMA employees.

**58.     The Individual Defendants aver that Paragraph 58 of the Complaint purports**

**to paraphrase and/or quote portions of written documents, respectfully refer the Court to**

**the documents for a full statement of their contents and otherwise deny the allegations set**

**forth in Paragraph 58 of the Complaint.**

59.     In Section 9 of the NSAs, Davis, Richardson, Robles, and Gunn each agreed that the restrictions included in the NSAs were "necessary to protect the legitimate business interests of [MMA] and [were] reasonable in view of the benefits and consideration Employee has received or will receive from [MMA]." Davis, Richardson, Robles, and Gunn also expressly acknowledged that the restrictions would not prevent them "from obtaining gainful employment in [their] field of expertise or cause [them] undue hardship."

**59.     The Individual Defendants aver that Paragraph 59 of the Complaint purports**

**to paraphrase and/or quote portions of written documents, respectfully refer the Court to**

**the documents for a full statement of their contents and otherwise deny the allegations set**

**forth in Paragraph 59 of the Complaint.**

60.     Davis, Richardson, Robles, and Gunn also agreed in Section 10 of their respective NSAs that MMA would be entitled to recover its attorneys' fees and other costs "incurred by [it] in investigating or seeking to enforce the provisions of th[e] [NSA]."

**60.     The Individual Defendants aver that Paragraph 60 of the Complaint purports**

**to paraphrase and/or quote portions of written documents, respectfully refer the Court to**

**the documents for a full statement of their contents and otherwise deny the allegations set**

**forth in Paragraph 60 of the Complaint.**

61.     Section 15 of the NSAs provides that the NSAs shall be governed by New York law, and that "any action or proceeding with respect to the [NSAs] and Employee's employment

shall be brought exclusively in the Civil Court of the City of New York, New York County, or in the Supreme Court of the State of New York, New York County, or in the United States District Court for the Southern District of New York, or in any other court of competent jurisdiction in or for the State and County of New York." Davis, Richardson, Robles, and Gunn each consented to "personal jurisdiction" and "irrevocably waive[d] any objection...to the laying of venue of any such action in the said court(s)" or that "any such action brought in said court(s) has been brought in an inconvenient forum."

**61.    The Individual Defendants aver that Paragraph 61 of the Complaint purports to paraphrase and/or quote portions of written documents, respectfully refer the Court to the documents for a full statement of their contents and otherwise deny the allegations set forth in Paragraph 61 of the Complaint.**

62.    On the Closing Date of MMA's acquisition of PayneWest, Davis became an employee of MMA. As at PayneWest, at MMA, Davis occupied the position of Sales Executive (or "producer"), based in Bend, Oregon.

**62.    Davis admits that he became an employed as a producer at MMA after MMA's acquisition of PayneWest and denies knowledge or information sufficient to form a belief as to the truth of the allegation set forth in Paragraph 62 of the Complaint concerning the exact timing of said employment. The remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 62 of the Complaint, except admit upon information and belief that Davis became employed as a producer at MMA after having been employed as a producer at PayneWest.**

63.    On the Closing Date, Richardson, Robles, and Gunn also became MMA employees in the following positions: Richardson (Client Executive, Construction Division), Robles (Client Manager, Business Insurance), and Gunn (Senior Account Manager, Business Insurance).

**63.    Richardson, Robles, and Gunn admit that they became MMA employees in the stated positions and deny knowledge or information sufficient to form a belief as to the truth of the allegation set forth in Paragraph 63 of the Complaint concerning the exact timing of said employment.  Davis denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 63 of the Complaint, except admits upon**

information and belief that Richardson, Robles, and Gunn became employed at MMA in those positions after having been employed at PayneWest.

64.    Shortly after MMA acquired PayneWest, MMA hired Susan Coetzee as Client Manager on Davis's client service team in the Bend, Oregon office.

**64.    Coetzee admits the allegations set forth in Paragraph 64 of the Complaint, except denies knowledge or information sufficient to form a belief as to the truth of the timing of her employment at MMA as it relates to MMA's acquisition of PayneWest. The remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 64 of the Complaint, except admit that Coetzee serviced some of Davis's clients at MMA.**

65.    On July 7, 2021, as a condition of her employment with MMA, Coetzee executed the PayneWest Insurance, a Marsh & McLennan Agency LLC Company Non-Solicitation Agreement (the "Coetzee NSA") with MMA. (A true and correct copy of the Coetzee NSA is attached hereto as **Exhibit F**.)

**65.    Coetzee admits the allegations set forth in Paragraph 65 of the Complaint except avers that the NSAs is a written document and respectfully refers the Court to the documents for a full statement of its contents. The remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 65 of the Complaint except aver that the NSAs is a written document and respectfully refer the Court to the documents for a full statement of its contents.**

66.    Like the NSAs executed by Davis, Richardson, Robles, and Gunn, the Coetzee NSA includes a two-year post-employment client non-solicitation and non-servicing covenant. Specifically, in Section 1 of the Coetzee NSA, entitled "Non-Solicitation of Clients," Coetzee agreed that for two years following her separation of employment from MMA, she would not, directly or indirectly:

> (i) solicit clients or prospective clients of [MMA] for the purpose of selling or providing consulting services or projects, or selling products, of the type sold or provided by Employee while employed by [MMA]; (ii) induce clients or prospective clients of [MMA] to terminate, cancel, not renew, or not place business with [MMA], (iii)

perform or supervise the provision or performance of services or projects or provision of products of the type sold or provided by Employee while he or she was employed by [MMA] on behalf of any clients or prospective clients of [MMA], or (iv) assist others to do the acts specified in Sections 1(b)(i)-(iii). ... Employee shall not engage in any subterfuge to circumvent this prohibition, including, but not limited to accompanying others on calls to the client, contacting the client with other persons, supervising other persons in soliciting or serving the client, providing Confidential Information and Trade Secrets to others to assist them in soliciting or serving the client, participating in developing presentations to be made to the client, or other similar activities.

**66.    Coetzee avers that Paragraph 66 of the Complaint purports to paraphrase and/or quote portions of written documents, respectfully refers the Court to the documents for a full statement of their contents and otherwise denies the allegations set forth in Paragraph 66 of the Complaint.  The remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 66 of the Complaint.**

67.    The Coetzee NSA also includes a two-year post-employment employee non-solicitation covenant. Specifically, in Section 2 of the Coetzee NSA, entitled "Non-Solicitation of Employees," Coetzee agreed that "both during employment with MMA and for a period of two (2) years thereafter," she would not, "directly or indirectly," whether on her

own account or on behalf of any person, company, corporation, or other entity,...solicit, or endeavor to cause any employee of [MMA] with whom Employee, during the last two (2) years of his or her employment with the Company, came into contact for the purpose of soliciting or servicing business or about whom Employee obtained Confidential Information and Trade Secrets to leave employment with [MMA].

**67.    Coetzee avers that Paragraph 67 of the Complaint purports to paraphrase and/or quote portions of written documents, respectfully refers the Court to the documents for a full statement of their contents and otherwise denies the allegations set forth in Paragraph 67 of the Complaint.  The remaining Individual Defendants deny knowledge or**

information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 67 of the Complaint.

68.    In Section 5 of the Coetzee NSA, entitled "Nondisclosure of Confidential Information and Trade Secrets," Coetzee "acknowledge[d] and agree[d] that [MMA] is engaged in a highly competitive business and that its competitive position depends upon its ability to maintain the confidentiality of the Confidential Information and Trade Secrets which were developed, compiled, and acquired by [MMA] at its great effort and expense," and that "disclosing, divulging, revealing, or using of any of the Confidential Information and Trade Secrets, other than in connection with [MMA's] business..., will be highly detrimental to [MMA] and cause it to suffer serious loss of business and pecuniary damage."

**68.    Coetzee avers that Paragraph 68 of the Complaint purports to paraphrase and/or quote portions of written documents, respectfully refers the Court to the documents for a full statement of their contents and otherwise denies the allegations set forth in Paragraph 68 of the Complaint.  The remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 68 of the Complaint.**

69.    Accordingly, in Section 5 of the Coetzee NSA, Coetzee agreed that during her employment with MMA and at any time thereafter, she would not, "directly or indirectly, disseminate or disclose to any other person, organization or entity Confidential Information and Trade Secrets," except to the extent required to carry out her duties as MMA employees.

**69.    Coetzee avers that Paragraph 69 of the Complaint purports to paraphrase and/or quote portions of written documents, respectfully refers the Court to the documents for a full statement of their contents and otherwise denies the allegations set forth in Paragraph 69 of the Complaint.  The remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 69 of the Complaint.**

70.    In Section 9 of the Coetzee NSA, Coetzee agreed that the restrictions included in the Coetzee NSA were "necessary to protect the legitimate business interests of [MMA] and [were] reasonable in view of the benefits and consideration Employee has received or will receive from [MMA]." Coetzee also expressly acknowledged that the restrictions would not prevent her "from obtaining gainful employment in [her] field of expertise or cause [her] undue hardship."

**70.    Coetzee avers that Paragraph 70 of the Complaint purports to paraphrase and/or quote portions of written documents, respectfully refers the Court to the documents for a full statement of their contents and otherwise denies the allegations set forth in Paragraph 70 of the Complaint.  The remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 70 of the Complaint.**

71.    Coetzee also agreed in Section 10 of the Coetzee NSA that MMA would be entitled to recover its attorneys' fees and other costs "incurred by [it] in investigating or seeking to enforce the provisions of th[e] [Coetzee NSA]."

**71.    Coetzee avers that Paragraph 71 of the Complaint purports to paraphrase and/or quote portions of written documents, respectfully refers the Court to the documents for a full statement of their contents and otherwise denies the allegations set forth in Paragraph 71 of the Complaint.  The remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 71 of the Complaint.**

72.    Section 15 of the Coetzee NSA provides that the Coetzee NSA shall be governed by New York law, and that "any action or proceeding with respect to the [NSA] and [Coetzee's] employment shall be brought exclusively in the Civil Court of the City of New York, New York County, or in the Supreme Court of the State of New York, New York County, or in the United States District Court for the Southern District of New York, or in any other court of competent jurisdiction in or for the State and County of New York." Coetzee consented to "personal jurisdiction" and "irrevocably waive[d] any objection...to the laying of venue of any such action in the said court(s)" or that "any such action brought in said court(s) has been brought in an inconvenient forum."

**72.    Coetzee avers that Paragraph 72 of the Complaint purports to paraphrase and/or quote portions of written documents, respectfully refers the Court to the documents for a full statement of their contents and otherwise denies the allegations set forth in Paragraph 72 of the Complaint.  The remaining Individual Defendants deny knowledge or**

information sufficient to form a belief as to the truth of the allegations set forth in Paragraph

72 of the Complaint.

73.     At MMA, Richardson, Robles, Gunn, and Coetzee comprised Davis's client service team. Together, they were responsible for the day-to-day servicing of the clients Davis managed, with Richardson, as Client Executive, generally responsible for servicing Davis's largest client accounts.

**73.     The Individual Defendants deny the allegations set forth in Paragraph 73 of the Complaint, except admit that Richardson, Robles, Gunn, and Coetzee serviced some of Davis's clients at MMA.**

74.     In order to perform their jobs in advising clients, placing them with appropriate insurance programs, and generally servicing their accounts, MMA entrusted Davis and the members of his client service team with highly confidential information, including, without limitation, the identity, contact details of and personal information concerning key representatives from each client; clients' insurance needs and preferences, including their risk appetite and pricing and coverage requirements; all details concerning clients' current insurance programs and submissions, including the expiration and renewal dates of their current insurance programs and policies, present premiums, deductibles, and collateral levels; clients' loss history; details concerning prior bargaining and claims settlement negotiations and experiences that each client has had with historical insurers; each client's level of satisfaction or displeasure with particular individual or groups of carriers; contact information for key personnel at insurance carriers; the specific underwriting risk appetites of various insurance carriers; the fee structure (*i.e.*, fee or commission) used by MMA with each client, and the amount of revenue that MMA derived therefrom; clients' level of satisfaction with MMA; which accounts were considered "at risk" by MMA and may be vulnerable to competition and the reasons therefor; and other information necessary for providing optimal service to MMA's clients according to MMA's tailored client service model.

**74.     The Individual Defendants deny the allegations set forth in Paragraph 74 of the Complaint.**

75.     Such information is the product of years of accumulation and distillation by MMA (and its predecessor, PayneWest), and has required the investment of substantial time, effort, and expense to accumulate. This information has independent economic value. It is not readily available to the public or to competitors and would be greatly beneficial to competitors in soliciting MMA's customers.

**75.     The Individual Defendants deny the allegations set forth in Paragraph 75 of the Complaint.**

76.     Accordingly, MMA maintains this information as confidential and goes to great efforts to maintain its confidentiality, including, but not limited to: limiting the disclosure and use of this information to those who have a specific business need to access it; educating employees who are granted access to it about the requirements and necessity of keeping this information confidential; restricting access to this information by limiting access to computer networks containing this information to employees with a specific business need to know it; and requiring employees authorized to access such information to execute written agreements that protect against the misuse and improper disclosure and post-employment retention of such confidential information.

**76.     The Individual Defendants deny the allegations set forth in Paragraph 76 of**

**the Complaint.**

77.     For nearly a decade, Alliant has grown its business by weaponizing competitors' employees to capture their employers' client relationships for Alliant's benefit. Alliant's growth strategy is to entice producers overseeing substantial books of business at its competitors to join Alliant on the condition that they bring along clients and teams from their former employer—in deliberate breach of their fiduciary and restrictive covenant obligations to their former employer. Alliant euphemistically refers to these targeted hires as "leveraged hires."  [Footnote: *See Mt. W. Series of Lockton Cos., LLC v. Alliant Ins. Servs.*, No. 2019-0226-JTL, Exhibit 1 to Transmittal Affidavit and Corrected Transmittal Affidavit of Jarrett W. Horowitz in Support of Plaintiffs' Opening Brief in Support of Their Motion for a Preliminary Injunction (Del. Ch. July 21, 2022) (internal Alliant email referring to producers with existing books of business whom Alliant was recruiting from a competitor firm as "Leveraged Hires"); Declaration of Ned Sander in Support of Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction, *Armfield Harrison & Thomas, LLC and BRP Colleague Inc. v. Brian King and Alliant Ins. Servs., Inc.*, No. 23-cv-00666, ECF No. 25 at ¶ 18 (W.D. Wash. Sept. 14, 2023).]

**77.     The Individual Defendants deny knowledge or information sufficient to form**

**a belief as to the truth of the allegations set forth in Paragraph 77 of the Complaint.**

78.     This tactic is not merely aggressive; it is knowingly unlawful, calculated on the assumption that the financial return on the pilfered client relationships will exceed any legal costs Alliant may incur. Alliant's President has made the calculus clear: when lawsuits arise, the company simply "strike[s] a deal with the competitor that involves buying the producer's book of business for less than full market value."  [Footnote: *See Mt. W. Series of Lockton Cos., LLC v. Alliant Ins. Servs.*, No. 2019-0226-JTL, Exhibit 1 to Transmittal Affidavit and Corrected Transmittal Affidavit of Jarrett W. Horowitz in Support of Plaintiffs' Opening Brief in Support of Their Motion for a Preliminary Injunction (Del. Ch. July 21, 2022) (internal Alliant email referring to producers with existing books of business whom Alliant was recruiting from a competitor firm as "Leveraged Hires"); Declaration of Ned Sander in Support of Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction, *Armfield Harrison & Thomas, LLC and BRP Colleague Inc. v. Brian King and Alliant Ins. Servs., Inc.*, No. 23-cv-00666, ECF No. 25 at ¶ 18 (W.D. Wash. Sept. 14, 2023).] This way, Alliant secures long-term client relationships at a

discount—keeping exactly what it values most, while skirting fair market principles (and the law) in the process.

**78.    The Individual Defendants deny knowledge or information sufficient to form**

**a belief as to the truth of the allegations set forth in Paragraph 78 of the Complaint.**

79.    In the past decade, this inherently unlawful growth model has led to at least 67 lawsuits against Alliant and/or the producers at competitors it has hired. Through many litigations, Alliant's strategy has been increasingly exposed, revealing a consistent, calculated methodology for raiding competitors, complete with procedures to "mask [Alliant's] activities under a façade of compliance measures" intended to deceive competitors and the courts and thereby minimize Alliant's legal risk. *Lockton*, 2019 WL 2536104, at \*22.  [Footnote: In 2022, in unsealing the internal Alliant documents that had been revealed in discovery in the *Lockton* litigation, the Delaware Chancery Court noted that "Alliant faces at least forty-one lawsuits in at least twenty-five jurisdictions in which competitors have asserted similar claims" related to Alliant's strategy, and documents revealed in that litigation "provide insight into Alliant's *modus operandi.*" *See* Ex. D, at ¶ 20(a).]

**79.    The Individual Defendants deny knowledge or information sufficient to form**

**a belief as to the truth of the allegations set forth in Paragraph 79 of the Complaint.**

80.    The litigations against Alliant for its unlawful raiding strategy include at least the following: *Marsh & McLennan Agency, LLC v. Alliant Ins. Servs., Inc., Johnny Osborne, Margaux Stone, and Rachel Murray*, No. 24-cv-00914 (S.D.N.Y. Dec. 23, 2024); *Willis Towers Watson Midwest, Inc. v. Miller and Alliant Ins. Servs., Inc.*, No. 24-cv-02539 (D. Kan. Nov. 21, 2024); *Willis Towers Watson Northeast, Inc. v. Scott Davis, Erin Schwamb, and Alliant Ins. Servs., Inc.*, No. 24-cv-01816 (D. Conn. Nov. 19, 2024); *Jones v. AssuredPartners NL, LLC*, No. 24-cv-398 (W.D. Ky. July 5, 2024) (including counterclaims *AssuredPartners Cap., Inc. v. Alliant Ins. Servs., Inc., Adamic, and Brewer*); *NFP Corp. Servs. (SE), Inc. v. Starkey*, No. 24-cv-00796 (D. Del. June 25, 2024); *NFP Prop. & Cas. Servs., Inc. v. Alliant Ins. Servs., Inc.*, No. 24-cv-00789 (C.D. Cal. Apr. 10, 2024); *The Tex. Series of Lockton Cos., LLC v. Alliant Ins. Servs., Inc.*, No. 2024-11651 (Tex. Dist. Ct. Feb 23, 2024); *USI Ins. Servs. LLC v. Louis Spina and Alliant Ins. Servs., Inc.*, No. 70777/2023 (N.Y. Sup. Ct. Nov. 14, 2023); *Willis Towers Watson Southeast, Inc. v. Alliant Ins. Servs., Inc.*, No. 23-cv-659 (E.D. Va. Oct. 12, 2023); *Lockton Cos., LLC Pac. Series, and Lockton Partners, LLC v. Alliant Ins. Servs., Inc., Barnes, Racunas, and Roderick*, No. 23-cv-00705 (W.D. Mo. Oct. 3, 2023); *Assured Partners of S.C., LLC v. Alliant Ins. Servs., Inc., Lonneman, Shultz, Peterson, Bugeski, Rushe, and Harris*, No. 23-cv-04751 (D.S.C. Sept. 22, 2023); *Woodruff-Sawyer & Co. v. Pelissier, Alliant Ins. Servs., Inc., and Does 1-5*, No. 30-2023-01336213 (Cal. July 13, 2023); *Aon PLC v. Alliant Ins. Servs., Inc.*, 23-cv-03044 (N.D. Ill. May 15, 2023); *Armfield Harrison & Thomas, LLP and BRP Colleague, Inc. v. King and Alliant Ins. Servs., Inc.*, No. 23-cv-666 (W.D. Wash. May 8, 2023); *USI Ins. Servs. LLC v. Alliant Ins. Servs., Inc.*, No. 23-cv-00192 (D. Ariz. Jan. 30, 2023); *Lockton Cos., LLC - Pac. Series v. Giblin*, No. 22-CV-00791 (W.D. Mo. Nov. 30, 2022); *McGriff Ins. Servs., Inc. v. Suplick, Fox, Cook, Gibson, and Alliant Ins. Servs., Inc.*, No. 2022-CA-008660-O (Fla. Cir. Ct. Sept. 19, 2022); *Arthur J. Gallagher & Co. v. Alliant Ins. Servs., Inc.*, 22-cv-03931 (N.D. Ill. July 28, 2022); *Willis Towers Watson Southeast, Inc. v. Alliant Ins. Servs., Inc., Thomas, Bennett,*

*and Gullet*, No. 22-cv-277 (W.D.N.C. June 21, 2022); *McGriff Ins. Inc. v. Madigan, Gramling, Linde, and Alliant Ins. Servs., Inc.*, No. 22-cv-05080 (W.D. Ark. Apr. 26, 2022); *Aon PLC, Aon Group, Inc., Aon Corp., and Aon Risk Services Companies, Inc. v. Alliant Ins. Servs., Inc., Johnson, Stites, Barlow, Doerfler, Kunstler, and Chan*, No. 21-cv-06871 (N.D. Ill. Dec. 27, 2021); *Arthur J. Gallagher & Co. v. Alliant Ins. Servs., Inc., Bixby, Hinckley, Leavitt, Pester, and Rogers*, No. 2184CV2828 (Mass. Dec. 10, 2021); *Willis Towers Watson Southeast, Inc. v. Alliant Ins. Servs., Inc.*, 21-cv-00417 (W.D.N.C. Aug. 12, 2021); *Willis Towers Watson Southeast, Inc. v. Alliant Ins. Servs., Inc., Andrew Rader, and Nicole Rioux*, No. 202982-1 (Chan. Ct., Tenn., Aug. 3, 2021); *Aitkin v. USI Ins. Servs., LLC*, No 21-cv-00267 (D. Or. Feb. 18, 2021); *Kibble & Prentice Holding Co. v. Anderson, and Alliant Ins. Servs., Inc.*, No. 82-CV-21-619 (Minn. Dist. Ct. Feb. 19, 2021); *Kibble & Prentice Holding Co., v. Tilleman and Alliant Ins. Servs., Inc.*, No. 21-cv-00083 (D. Idaho Feb. 18, 2021); *AssuredPartners Northeast, LLC v. Stone and Alliant Ins. Servs., Inc.*, 20-cv-05564 (E.D.N.Y Nov. 16, 2020); *The Partners Grp., LTD v. Bonville and Alliant Ins. Servs., Inc.,* No. 20CV34115 (Or. Cir. Ct. Oct. 6, 2020); *Arthur J. Gallagher & Co. v. Alliant Ins. Servs., Inc. and Stone Point Capital*, No. 2020-0780 (Del. Ch. Sept. 14, 2020); *Arthur J. Gallagher & Co. v. Pierce, Albrecht, Conway, Lambourne, Ruemke, Veltman, Burke, Thalachelloor, and Alliant Ins. Servs., Inc.*, No. 47103886-2020 (Tex. Dist. Cit. Aug. 13, 2020); *Arthur J. Gallagher & Co. v. Tarantino, Heater, Machette, Brush, and Alliant Ins. Servs., Inc.*, No. 20-cv-05505 (N.D. Cal.) (Aug. 7, 2020); *Huntington Bancshares Inc. v. Burke and Alliant Ins. Servs., Inc.*, 20-cv-01159 (W.D. Pa. Aug. 3, 2020); *Gallagher Benefit Servs., Inc. v. Ghirardi and Alliant Ins. Servs., Inc.*, No. 50-2020-CA-004646-MB (Fl. Cir. Ct. Apr. 24, 2020); *Assured Partners of Washington, LLC v. Acarregui and Alliant Ins. Servs., Inc.*, No. 20-cv-00290 (W.D. Wash. Feb. 24, 2020); *Marsh USA Inc. v. Vaught, Snelgrove, Dowling, Shahidi, Lu, Turney, Nguyen, and Alliant Ins. Servs., Inc.*, No. 651024/2020 (N.Y. Sup. Ct. Feb. 14, 2020); *Aon Risk Servs. Co. v. Alliant Ins. Servs., Inc., Brusek, Janic Lubas, Ross, Taylor, Vick, and Walsh*, No. 19-cv-07312 (N.D. Ill. Nov. 5, 2019); *USI Ins. Servs. LLC and USI Advantage Corp. v. Banahan and Alliant Ins. Servs., Inc.*, No. 68183/2019 (N.Y. Sup. Ct. Nov. 1, 2019); *JLT Specialty Ins. Servs. Inc. v. Riccio, Walsh, Carroll, Decatur, Franzese, Leto, and Alliant Ins. Servs., Inc.*, No. 652659/2019 (N.Y. Sup. Ct. May 6, 2019); *Mt. W. Series of Lockton Cos., LLC and Lockton Partners, LLC v. Alliant Ins. Servs., Inc.*, 2019-0226-JTL (Del. Ch. Mar. 22, 2019); *Arthur J. Gallagher & Co. v. Kuntz and Alliant Ins. Servs., Inc.*, No. GD-19-02440 (Pa. C.P. Allegheny Cnty. Feb. 8, 2019); *NFP Corp. and Maschino, Hudelson & Associates, L.L.C. v. Ayala, Alliant Ins. Services, Inc. and C.L. Scott Corporate Ins. Services, Inc.*, 2018-0688 (Del. Ch. Sept. 18, 2018); *Corp. Synergies Grp., LLC v. Andrews, Ur, Duffy, and Alliant Ins. Servs., Inc.*, No. 18-cv-13381 (D.N.J. Aug. 30, 2018); *Marsh USA, Inc. v. Moody, Young, Beacham, O'Connell, and Alliant Ins. Servs., Inc.*, No. 17-651325 (N.Y. Sup. Ct. Aug. 7, 2018); *Willis Ins. Servs. of Ga. v. Alliant Ins. Servs., Inc.*, No. 18-cv-1826 (M.D. Fla. July 25, 2018); *Willis Ins. Servs. of Ga. v. Alliant Ins. Servs., Inc.*, No. 2018cv308132 (Ga. Super. Ct. July 23, 2018); *Willis of Minn. v. Alliant Ins. Servs., Inc.*, No. 27-cv-18-11684 (Minn. Dist. Ct. July 20, 2018); *Arthur J. Gallagher & Co. v. Long and Alliant Ins. Servs., Inc.*, No. 17-cv-12313 (D. Mass. Dec. 13, 2017); *Wells Fargo Ins. Servs. USA and USI Ins. Servs. LLC v. Blazer*, No. 17-cv-9520 (S.D.N.Y. Dec. 5, 2017); *USI Ins. Servs., LLC. v. Zukus and Alliant Ins. Servs., Inc.*, No. 2018-12953 (Pa. C.P. Montgomery Cnty. May 15, 2018); *Arthur J. Gallagher & Co. v. Long and Alliant Ins. Servs., Inc.*, No. 17-cv-12313 (D. Mass. Dec. 13, 2017); *USI Ins. Servs. Nat., Inc. Inc. v. Grassi and Alliant Ins. Servs., Inc.*, 2017-CA-009742-O (Fla. Cir. Ct. Nov. 3, 2017); *USI, Inc. v. Call v. Alliant Ins. Servs., Inc.*, No. BC678226 (Cal. Super. Ct. Oct. 2, 2017); *Cook Maran & Assocs., Inc. v. Scrocca and Alliant Ins. Servs., Inc.*, No. C-209-17 (N.J. Super. Ct. 2017); *Wells Fargo Ins. Servs. USA, Inc. v. Alliant Ins. Servs., Inc.*, No. 2017-0540 (Del. Ch. July 26, 2017); *Ralph Weiner & Assocs., LLC v. Hancock*, No.

2017-CH-06618 (Ill. Cir. Ct. May 9, 2017); *Wells Fargo Ins. Servs. USA, Inc. v. Laman*, No. 502016CA00904MB (Fla. Cir. Ct. April 10, 2017); *The Graham Co. v. Harper, Algeo, Alliant Ins. Servs., Inc.*, No. 170202712 (Pa. C.P. Philadelphia Cnty. Feb. 9, 2017); *Willis of Mass. v. Feinberg and Alliant Ins. Servs.*, No. 1684CV01497 (Mass. Super. Ct. Oct. 3, 2016); *The Hays Group, Inc. v. Peters and Alliant Ins. Servs., Inc.*, No. 0:16-cv-2352 (D. Minn. Oct. 12, 2016); *Willis of Fla. v. Powell, Bolden, and Alliant Ins. Servs., Inc.*, No. 2016-CA-007824 (Fla. Cir. Ct. Aug. 16, 2016); *Marsh USA Inc. and Marsh & McLennan Cos., Inc. v. Schuhriemen*, No. 16-cv-2998 (S.D.N.Y. Apr. 22, 2016); *Aon PLC v. Heffernen and Alliant Ins. Servs., Inc.*, No. 16-cv-1924 (N.D. Ill. Feb. 2, 2016); *Smith Bros. Ins. LLC v. Ellenberg-Gray*, No. CV-15-6060903-S (Conn. Super. Ct. Dec. 7, 2015); *Aon Corp. v. Alliant Ins. Servs. Inc.*, No. 14-650700 (N.Y. Sup. Ct. June 26, 2014); *Regions Ins., Inc. v. Alliant Ins. Servs., Inc.*, No. 13-cv-00667 (S.D. Miss. Oct. 25, 2013); *Anco Ins. Servs. of Hous. v. Barnard*, No. 2011-29054 (Tex. Dist. Ct. May 13, 2011); *Aon Risk Servs. v. Cusack and Alliant Ins. Servs., Inc.*, No. 651673/2011 (N.Y. Sup. Ct. 2011).

80.    **The allegations set forth in Paragraph 80 of the Complaint have been stricken pursuant to the Court's October 14, 2025 Order and Opinion, and therefore no response is required thereto.**

81.    Courts have enjoined Alliant's unlawful behavior or otherwise ruled against Alliant in at least the following matters: *Marsh & McLennan Agency, LLC v. Alliant Ins. Servs., Inc., Johnny Osborne, Margaux Stone, and Rachel Murray*, No. 24-cv-00914, Op. and Order Granting in Part and Denying in Part Appl. for Prelim. Inj., ECF. No. 31 (S.D.N.Y. Jan. 27, 2025); *Jones v. AssuredPartners NL, LLC*, No. 24-cv-398, TRO, ECF. No. 30 (W.D. Ky. July 12, 2024) (including counterclaims *AssuredPartners Cap., Inc. v. Alliant Ins. Servs., Inc., Adamic, and Brewer*); *Jones v. AssuredPartners NL, LLC*, No. 24-cv-398, Mem. and Op., ECF. No. 92 (W.D. Ky. Sept. 13, 2024) (including counterclaims *AssuredPartners Cap., Inc. v. Alliant Ins. Servs., Inc., Adamic, and Brewer*); *Jones v. AssuredPartners NL, LLC*, No. 24-cv-398, Consent Prelim. Inj. Order, ECF No. 93 (W.D. Ky. Sept. 13, 2024) (including counterclaims *AssuredPartners Cap. v. Alliant Ins. Servs., Inc., Adamic, and Brewer*); *USI Ins. Servs. LLC v. Louis Spina and Alliant Ins. Servs., Inc.*, No. 70777/2023, Order to Show Cause for TRO and Prelim. Inj., NYSCEF Doc. No. 36 (N.Y. Sup. Ct. Nov. 21, 2023); *Willis Towers Watson Southeast, Inc. v. Alliant Ins. Servs., Inc.*, No. 23-cv-659, TRO, ECF. No. 46 (E.D. Va. Nov. 8, 2023); *Assured Partners of S.C., LLC v. Alliant Ins. Servs., Inc., Lonneman, Shultz, Peterson, Bugeski, Rushe, and Harris*, No. 23-cv-04751, Order, ECF No. 47 (D.S.C. Nov. 8, 2023) (temporary restraining order); *Assured Partners of S.C., LLC v. Alliant Ins. Servs., Inc., Lonneman, Shultz, Peterson, Bugeski, Rushe, and Harris*, No. 23-cv-04751, Prelim. Inj. Order, ECF. No. 63 (D.S.C. Dec. 28, 2023); *Assured Partners of S.C., LLC v. Alliant Ins. Servs., Inc., Lonneman, Shultz, Peterson, Bugeski, Rushe, and Harris*, No. 23-cv-04751, Permanent Inj. Order, ECF No. 63 (D.S.C. May 24, 2024); *Willis Towers Watson Southeast, Inc. v. Alliant Ins. Servs., Inc., Andrew Rader, and Nicole Rioux*, No. 202982-1, TRO (Chan. Ct., Tenn., Aug. 3, 2021); *Willis Towers Watson Southeast, Inc. v. Alliant Ins. Servs., Inc., Thomas, Bennett, and Gullet*, No. 22-cv-277, Prelim. Inj. Order, ECF No. 43 (W.D.N.C. July 7, 2022); *Kibble & Prentice Holding Co. v. Anderson and Alliant Ins. Servs., Inc.*, No. 82-CV-21-619, Order Granting Pl.'s Mot. for Partial Summ. J. (Minn. Dist. Ct. Dec. 28, 2022); *Aitkin v. USI Ins. Servs., LLC*, No 21-cv-00267, Op. & Order, ECF. No. 19 (D. Or. Feb. 26, 2021) (granting temporary restraining order); *Aitkin v. USI Ins. Servs., LLC*, No 21-cv-00267, Op. & Order, ECF. No. 19 (D. Or. May 28, 2021) (granting preliminary injunction); *Kibble*

*& Prentice Holding Co., v. Tilleman and Alliant Ins. Servs., Inc*., No. 21-cv-00083, Mem. Dec. & Order, ECF No. 82 (D. Idaho December 2, 2022) (granting in part plaintiff's motion for summary judgment); *AssuredPartners Northeast, LLC v. Stone and Alliant Ins. Servs., Inc.*, 20-cv-05564, Order, ECF No. 30 (E.D.N.Y Nov. 24, 2020) (temporary restraining order); *AssuredPartners Northeast, LLC v. Stone*, 20-cv-05564, Agreed Permanent Injunction and Order of Dismissal, ECF No. 35 (E.D.N.Y December 21, 2020); *Huntington Bancshares Inc. v. Burke and Alliant Ins. Servs., Inc.*, 20-cv-01159, Order, ECF No. 15 (W.D. Pa. Aug. 10, 2020) (temporary restraining order); *Huntington Bancshares Inc. v. Burke and Alliant Ins. Servs., Inc.*, 20-cv-01159, Mem. Op., ECF No 60 (W.D. Pa. Oct. 29, 2020) (granting preliminary injunction); *Huntington Bancshares Inc. v. Burke and Alliant Ins. Servs., Inc.*, 20-cv-01159, Order, ECF No 61 (W.D. Pa. Oct. 29, 2020) (preliminary injunction); *Assured Partners of Wash., LLC v. Acarregui, and Alliant Ins. Servs., Inc.*, No. 20-cv-00290, Temporary Restraining Order, ECF No. 15 (W.D. Wash. Feb. 28, 2020); *Aon Risk Servs. Co. v. Alliant Ins. Servs., Inc. Brusek, Janic Lubas, Ross, Taylor, Vick, and Walsh*, No. 19-cv-07312, Temporary Restraining Order, ECF No. 31 (N.D. Ill. Nov. 25, 2019); *Aon Risk Servs. Co. v. Alliant Ins. Servs., Inc., Brusek, Janic Lubas, Ross, Taylor, Vick, and Walsh*, No. 19-cv-07312, Mem. Op. & Order, ECF No. 32 (N.D. Ill. Nov. 25, 2019); *Mt. W. Series of Lockton Cos., LLC and Lockton Partners, LLC v. Alliant Ins. Servs., Inc.*, No. CV 2019-0226-JTL, 2019 WL 2536104 (Del. Ch. June 20, 2019); *Corp. Synergies Grp., LLC v. Andrews, Ur, Duffy, and Alliant Ins. Servs., Inc.*, No. 18-cv-13381, Order, ECF No. 14 (D.N.J. Sept. 5, 2018) (temporary restraining order); *Corp. Synergies Grp., LLC v. Andrews, Ur, Duffy, and Alliant Ins. Servs., Inc.*, No. 18-cv-13381, Order, ECF No. 14 (D.N.J. Oct. 3, 2018) (preliminary injunction); *Wells Fargo Ins. Servs. USA and USI Ins. Servs. LLC v. Blazer*, No. 17-cv-9520, Order, ECF No. 11 (S.D.N.Y. December 7, 2017) (temporary restraining order); *Wells Fargo Ins. Servs. USA and USI Ins. Servs. LLC v. Blazer*, No. 17-cv-9520, Order to Show Cause for Temporary Restraining Order and Preliminary Injunction, ECF No. 12 (S.D.N.Y. December 7, 2017); *Wells Fargo Ins. Servs. USA and USI Ins. Servs. LLC v. Blazer*, No. 17-cv-9520, Order Granting a Permanent Injunction, ECF No. 32 (S.D.N.Y. February 13, 2018); *USI Ins. Servs. Nat., Inc. Inc. v. Grassi and Alliant Ins. Servs., Inc.*, 2017-CA-009742-O, Order Granting Temporary Injunction (Fla. Cir. Ct. Nov. 28, 2017); *USI Ins. Servs. Nat., Inc. Inc. v. Grassi and Alliant Ins. Servs., Inc.*, 2017-CA-009742-O, Order on Plaintiff's Motion for Summary Judgment on Liability (Fla. Cir. Ct. Aug. 22, 2019); *Cook Maran & Assocs., Inc. v. Scrocca and Alliant Ins. Servs., Inc.*, No. C-209-17 (N.J. Super. Ct., Sept. 12, 2017); *Willis of Fla. v. Powell, Bolden, and Alliant Ins. Servs., Inc.*, No. 2016-CA-007824, Order Partially Granting Motion for Injunction, 2016 WL 8814184 (Fla. Cir. Ct. Aug. 21, 2016); *Marsh USA Inc. and Marsh & McLennan Cos., Inc. v. Robert Schuhriemen*, No. 16-cv-2998, Mem. Order, ECF. No 11 (S.D.N.Y. May 2, 2016) (granting preliminary injunction); *Aon PLC v. Heffernen and Alliant Ins. Servs., Inc.*, No. 16-cv-1924, Order, ECF No. 26 (N.D. Ill. Feb. 5, 2016) (temporary restraining order); *Aon Corp. v. Alliant Ins. Servs. Inc.*, No. 650700/2014, 2014 WL 2990393 (N.Y. Sup. Ct. June 26, 2014) (preliminary injunction); *Anco Ins. Servs. of Hous. v. Barnard*, No. 2011-29054 (Tex. Dist. Ct. May 13, 2011); *Aon Risk Servs. v. Cusack and Alliant Ins. Servs., Inc.*, No. 651673/2011 (N.Y. Sup. Ct. Sept. 28, 2011) (temporary restraining order); *Aon Risk Servs. v. Cusack and Alliant Ins. Servs., Inc.*, No. 651673/2011, 34 Misc. 3d 1205(A) (N.Y. Sup. Ct. Dec. 20, 2011) (preliminary injunction).

**81.      The Individual Defendants deny knowledge or information sufficient to form**

**a belief as to the truth of the allegations set forth in Paragraph 81 of the Complaint.**

82.    Alliant's unlawful conduct remains ongoing and is likely to persist despite numerous lawsuits, injunctions, and even sanctions orders. This is because Alliant has determined that the financial gains it derives from its illegal practices are greater than it could achieve through lawful competition, and outweigh the costs of defending and settling the resulting lawsuits.

**82.    The Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 82 of the Complaint.**

83.    Alliant monitors and reports its economic analysis of the benefits derived from its illegal "leveraged hire strategy," including Alliant's success in improperly transferring its competitors' client relationships to Alliant, up to its Board of Directors, which continues to approve the implementation of these schemes.  [Footnote: *See, e.g.*, *Aon Risk Servs. v. Cusak*, 946 N.Y.S.2d 65, at *5-6 (N.Y. Sup. Ct. 2011).]

**83.    The Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 83 of the Complaint.**

84.    By 2024, Davis was responsible for a book of business that generated approximately over one million dollars in annually recurring revenue.

**84.    The Individual Defendants deny the allegations set forth in Paragraph 84 of the Complaint, except Davis admits, and the remaining Individual Defendants admit upon information and belief, that Davis had a book of business that generated in excess of one million dollars in revenue.**

85.    The substantial book of business overseen by Davis made him a prime target of Alliant. Accordingly, on or about March 14, 2024, a recruiter for Alliant, Anthony Tomasettta of GT Staffing, contacted Davis to recruit him to Alliant in a "Senior Producer" role. Anthony Tomasetta is the same recruiter that Alliant has used in other recent raids, and has been alleged to be a co-conspirator with Alliant in its unlawful and intentionally tortious strategies. *See, e.g.*, *Alan J. Jones v. AssuredPartners NL, LLC* and *AssuredPartners Capital, Inc. v. Alliant Insurance Services, Inc., Mitchell Adamic, Desiree Brewer, Joshua Tucker, and Brittany Evans, GT Staffing, LLC, and Kaye/Bassman International Corp.*, No. 32-cv-00398, Proposed Second Amended Verified Counterclaims and Third-Party Complaint, Doc. No. 135-1 (W.D. Ky. Dec. 20, 2024) (asserting claims against GT Staffing/Tomasetta for tortious interference with contractual and prospective contractual relations and for civil conspiracy); *Alan J. Jones v. AssuredPartners NL, LLC* and *AssuredPartners Capital, Inc. v. Alliant Insurance Services, Inc., Mitchell Adamic, Desiree Brewer, Joshua Tucker, and Brittany Evans, GT Staffing, LLC, and Kaye/Bassman International Corp.*, No. 32-cv-00398, AssuredPartners' Reply in Support of its Motion for Leave to File Second Amended Verified Counterclaims and Third-Party Complaint, Doc. No. 149, at p. 2 (W.D. Ky. Jan. 29, 2025) (alleging that Tomasetta "was instrumental in the scheme to recruit Jones to Alliant and to use Tucker as the strawman to assist Jones in moving AP clients to Alliant,"

and that Alliant attempted to "shield itself from being exposed by using Tomasetta to do its dirty work"); *Assured Partners of South Carolina, LLC v. Alliant Ins. Servs., Inc., Richard H. Lonneman, Jr., Meghan Shultz, Amanda Peterson, Melissa A. Bugeski, Laurence Rushe, and William Harris*, No. 23-cv-04751, Reply in Support of AssuredPartners' Motion to Reopen Case to Pursue Contempt Proceedings for Violation of this Court's Injunction Orders, Doc. No. 106, at p. 8 (D.S.C. Oct. 29, 2024) (in another Alliant raid on AssuredPartners, describing "Alliant['s] use[] [of] Tomasetta" to "deploy [its] unlawful schemes," and specifically "as the go between to avoid documented communications with [a restricted AssuredPartners former employee]").

**85.    Davis denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 85 of the Complaint, except admits that a recruiter contacted him while he was employed at MMA.  The remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 85 of the Complaint.**

86.    Alliant was aware of Davis's post-employment restrictive covenants with MMA when it recruited him. But rather than compete fairly by respecting Davis's contractual obligations to MMA (both as a seller of a business and as an employee), Alliant's goal in recruiting Davis was to exploit the relationships he had developed at MMA to transfer MMA's clients to Alliant immediately.

**86.    Davis denies the allegations set forth in Paragraph 86 of the Complaint. The remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 86 of the Complaint.**

87.    To achieve this goal, Alliant extended Davis an above-market offer of employment premised on his immediate transition of the business he managed at MMA. Much of Davis's book of business had been acquired by MMA at substantial expense when it purchased PayneWest from its shareholders, including Davis, while the remainder had been developed by leveraging MMA's brand, goodwill, investment in business development, and other resources.

**87.    Davis denies the allegations set forth in Paragraph 87 of the Complaint. The remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 87 of the Complaint.**

88.    Leaving no doubt that Alliant intended Davis to immediately transfer his existing book of business to Alliant, Alliant also promised employment to the members of Davis's client service team: Richardson, Robles, Gunn, and Coetzee.

88.     Davis denies the allegations set forth in Paragraph 88 of the Complaint.  The

remaining Individual Defendants deny knowledge or information sufficient to form a belief

as to the truth of the allegations set forth in Paragraph 88 of the Complaint.

89.     Retaining Davis's client service was an important piece of Alliant's and Davis's strategy for persuading MMA clients to move to Alliant. Richardson, Robles, Gunn, and Coetzee had cultivated relationships with Davis's clients and possessed invaluable institutional knowledge about their needs, preferences, and account histories. Assuring MMA clients that if they moved to Alliant, they would continue to be serviced by the same trusted team with historical knowledge of their accounts would make it easier to persuade them to make the move, as it would minimize the clients' concerns about disruptions and errors typically associated with transitioning to a new firm. Moreover, moving Davis's client service team to Alliant was part of Alliant's and Davis's strategy to undermine MMA's ability to rebuild its relationship with clients in the face of Davis's departure, by telling clients that their service teams had left MMA, and if they kept their business with MMA, they would be assigned a new service team with relatively less knowledge of their accounts, risking potential inefficiencies and mistakes in the process.

89.     The Individual Defendants deny the allegations set forth in Paragraph 89 of

the Complaint, except admit that the other Individual Defendants had relationships with

some of Davis's clients.

90.     To ensure that Davis's client service team would join him at Alliant, Alliant extended above-market compensation offers to Richardson, Robles, Gunn, and Coetzee. On information and belief, Davis disclosed confidential information about the compensation MMA paid these individuals—information to which he had access because of his position at MMA—to enable Alliant to craft offers designed to entice them to move to Alliant. Alliant's willingness to extend such offers was based on Davis's assurances that he could transition his book of business to Alliant, securing an immediate revenue stream sufficient to justify these premium salaries for four service employees.

90.     The Individual Defendants deny the allegations set forth in Paragraph 90 of

the Complaint, except admit that Richardson, Robles, Gunn, and Coetzee accepted offers of

employment at Alliant.

91.     Davis accepted Alliant's offer of employment. But rather than inform MMA of his decision immediately, Davis and Alliant conspired to delay his resignation until Monday, June 24, 2024. Until then, Davis and Alliant planned for Davis to conceal his plans from MMA and remain on MMA's payroll, all the while working covertly with Alliant to coordinate a raid on MMA's clients and employees that would be perfectly timed to prevent MMA from having any meaningful time to respond and secure its client relationships without unlawful interference.

**91.** **Davis denies the allegations set forth in Paragraph 91 of the Complaint, except admits he accepted an offer of employment from Alliant and that he resigned from MMA effective immediately on June 24, 2024. The remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 91 of the Complaint.**

92.    In keeping with Alliant's raiding strategy, Davis spent the days leading up to his planned Monday, June 24, 2024 resignation announcement soliciting MMA clients and the members of his client service team to join him at Alliant.

**92.** **Davis denies the allegations set forth in Paragraph 92 of the Complaint, except admits he resigned from MMA effective immediately on June 24, 2024. The remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 92 of the Complaint.**

93.    On information and belief, by Thursday, June 20, 2024, at least Coetzee had committed to joining Davis at Alliant and had further agreed to assist him and Alliant in soliciting MMA clients and servicing them at Alliant in violation of their restrictive covenants with MMA, including by misappropriating confidential, proprietary and trade secret information belonging to MMA to assist in these unlawful endeavors. On that same day, in preparation for the move to Alliant and to facilitate the seamless transition of MMA clients, and, on information and belief at Davis's and Alliant's direction and with their knowledge, Coetzee forwarded from her MMA email account to her personal email a Microsoft Word document aptly titled "CHEAT SHEET." This document spanned *40 pages* and meticulously detailed highly confidential and proprietary information essential for servicing MMA clients, including:

    a.    Details about the relationships and account histories of MMA's clients, including the names and contact details of key representatives, as well as comprehensive insights into individual clients' needs, preferences, and operational nuances developed by MMA through years of dedicated service and trusted relationships.

    b.    Non-public details about the insurance carriers with whom MMA conducts business, including "carrier appetite," *i.e.*, the specific underwriting preferences and guidelines that reflect the carrier's internal risk management policies, essentially, which risks a particular carrier will accept, which risks it excludes, and the specific conditions under which the carrier will write coverage. This knowledge allows brokers to match clients with suitable carriers, streamlining the placement process and increasing the likelihood of favorable terms. The "CHEAT SHEET" also includes direct

contact information for specific underwriters and submission departments, facilitating the efficient submission of new business proposals, instructions for policy endorsements, and specialized coverage details unique to particular underwriters.

c.  Insights into MMA's internal processes for client service, including the specific wording crafted by Davis and Richardson for Certificates of Insurance and insurance proposals.

**93.    Coetzee denies the allegations set forth in Paragraph 93 of the Complaint, except admits she emailed a document titled "CHEAT SHEET" from her MMA email to her personal email. The "CHEAT SHEET" is a written document and Coetzee respectfully refers the Court to the document for a full statement of its contents. The remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 93 of the Complaint.**

94.    In essence, the "CHEAT SHEET" was a roadmap for delivering optimal service to MMA's clients, based on information representing the culmination of years of dedicated effort, relationship-building, and significant investment by MMA in its client service model. Through countless interactions, meetings, and personalized support, MMA has developed deep insights into its clients' unique needs and preferences, as well as the intricacies of the insurance market. This wealth of knowledge was cultivated over time, relying on the expertise of experienced brokers who have forged trusting relationships with clients and carriers alike. Such an investment in understanding the operational nuances of each client is not easily replicated; it requires considerable time and substantial financial resources dedicated to training, client engagement, and data management. Alliant is well aware of the value of such information, as it identifies its "customer lists"—which it describes as "records and files obtained from acquired businesses that contain information on clients and their retirement accounts, insurance policies, and other information that is essential to maintaining and expanding service provided to clients"—as the most valuable "intangible assets" that it acquires when it purchases a rival brokerage firm, allocating nearly $1.7 billion to its "customer lists." [*See Mt. W. Series of Lockton Cos., LLC v. Alliant Ins. Servs.*, No. 2019-0226-JTL, Exhibit 240 (at pp. 64, 78) to Transmittal Affidavit and Corrected Transmittal Affidavit of Jarrett W. Horowitz in Support of Plaintiffs' Opening Brief in Support of Their Motion for a Preliminary Injunction (Del. Ch. July 21, 2022).] The "CHEAT SHEET" enabled Alliant to bypass the lengthy and expensive process of acquiring such information and the typical learning curve associated with onboarding new clients, positioning itself to immediately engage and service MMA's clients with a familiarity and competence that should rightfully belong to MMA. "CHEAT SHEET" in hand, Davis and his team had what they needed to poach MMA's clients and promise them a seamless transition that would replicate MMA's service model.

94.    **Coetzee admits that the "CHEAT SHEET" is a written document and avers that Paragraph 94 purports to paraphrase and/or quote portions of written documents and respectfully refers the Court to the documents for a full statement of their contents and otherwise denies the allegations set forth in Paragraph 94 of the Complaint. The remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 94 of the Complaint.**

95.    Davis spent the weekend leading up to his planned Monday morning resignation soliciting his MMA clients to move with him to Alliant.

95.    **Davis denies the allegations set forth in Paragraph 95 of the Complaint. The remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 95 of the Complaint.**

96.    On Sunday, June 23, 2024, a key principal from one of Davis's largest clients at MMA contacted MMA and asked what MMA's "plan" was in light of Davis's resignation. This inquiry, prompted by Davis's solicitation efforts, was the first MMA heard of Davis's impending departure.

96.    **Davis denies the allegations set forth in Paragraph 96 of the Complaint, except denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 96 of the Complaint regarding any contact MMA received from a client on June 23, 2024. The remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 96 of the Complaint.**

97.    At 8:48 a.m. on Monday, June 24, 2024, following his weekend of client solicitation, Davis submitted his resignation to MMA, "effective immediately."

97.    **Davis denies the allegations set forth in Paragraph 97 of the Complaint, except admits that he resigned effective immediately on June 24, 2024. The remaining Individual**

Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 97 of the Complaint.

98.     Just a few hours later, at 2:43 p.m. on June 24, 2024, an MMA client for whom Davis had been responsible at MMA emailed Richardson that "[w]e just heard the news from Travis/[the President and owner of the client] about the team" leaving MMA. In other words, by no later than the day of his resignation, Davis had contacted the President and owner of this client and informed him that he and "the team" had left MMA (even though, at that time, no "team" members had yet resigned).

98.     Davis avers that Paragraph 98 purports to paraphrase and/or quote portions of written documents, and respectfully refers the Court to the documents for a full statement of their contents and otherwise denies the allegations set forth in Paragraph 98 of the Complaint, except denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 98 of the Complaint regarding any contact MMA received from a client on June 24, 2024.  The remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 98 of the Complaint.

99.     The next day, June 25, 2024, Richardson submitted his resignation to MMA, also "effective immediately."

99.     Richardson admits the allegations set forth in Paragraph 99 of the Complaint and avers that Paragraph 99 purports to paraphrase and/or quote portions of written documents, and respectfully refers the Court to the documents for a full statement of their contents.  The remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 99 of the Complaint.

100.     The same day, June 25, 2024, several MMA clients for whom Davis had been responsible requested a change in their Broker of Record from MMA to Alliant, effective immediately. The timing of these clients' decisions to move their business to Alliant leaves no doubt that Davis solicited them for Alliant while he was still employed by MMA.

**100.    Davis denies the allegations set forth in Paragraph 100 of the Complaint, except denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 100 of the Complaint regarding any contact MMA received from clients on June 25, 2024.    The remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 100 of the Complaint.**

101.    Davis and Richardson commenced employment at Alliant immediately upon their resignations from MMA, performing the same type of insurance brokerage services they had performed at MMA.

**101.    Davis and Richardson deny the allegations set forth in Paragraph 101 of the Complaint, except admit that they commenced employment at Alliant after their respective resignations from MMA and that they perform some of the same type of work as they had previously performed.    The remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 101 of the Complaint.**

102.    Although Davis and Richardson concealed their plans for future employment from MMA, MMA soon learned—again through a client disclosure—that they had both joined Alliant, and that they were actively soliciting MMA clients to transfer their business to Alliant.

**102.    Davis and Richardson deny the allegations set forth in Paragraph 102 of the Complaint, except admit that they commenced employment at Alliant after their respective resignations from MMA and deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 102 of the Complaint regarding any contact MMA received from clients.    The remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 102 of the Complaint.**

103.    On June 27, 2024, three days after Davis's resignation and two days after Richardson's, an MMA client under Davis's responsibility copied an MMA broker on an internal email chain revealing Davis's solicitation efforts. In this email, entitled "Insurance Broker – MOVED TO ALLIAN[T]!," a representative of the client wrote to her colleagues that she had "just learned that Travis [Davis] and Keegan [Richardson] left Payne West / Marsh to go to Allian[t], another broker." The representative questioned whether the company should "move to Allian[t] with Travis and Keegan" or "stay with...Marsh." The email stressed that the priority was ensuring "there are no disruptions in our service during this transition." In this context, the client suggested that moving to Alliant would likely result in minimal disruption since "Travis and Keegan would continue to service the account," whereas staying with Marsh would necessitate "hiring internally to help service our account," and would involve a "learning curve" for the "Keegan replacement" handling the account.

**103.    Davis avers that Paragraph 103 purports to paraphrase and/or quote portions of written documents, and respectfully refers the Court to the documents for a full statement of their contents and otherwise denies the allegations set forth in Paragraph 103 of the Complaint, except denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 103 of the Complaint regarding any contact MMA received from a client on June 27, 2024.    The remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 103 of the Complaint.**

104.    Later, the client confirmed to MMA that Davis had personally solicited the client to move its business to Alliant, assuring the client that he and his "team" from MMA would manage all aspects of account service post-transition, including, specifically, with Richardson providing day-to-day servicing of the client's account at Alliant. In other words, Davis not only solicited an MMA client to move its business to Alliant in violation of his client non-solicitation covenants, but he also pitched the client on the idea that, by moving to Alliant, it would continue receiving service from him and Richardson, even though Davis knew that both he and Richardson were contractually prohibited from providing services to any restricted MMA clients for two years following their resignations from MMA. Davis even went as far as to mislead the client by stating that two other MMA employees, who managed different aspects of the client's insurance program, would also be joining him at Alliant. This was entirely false, as these individuals had no intention of leaving MMA and have remained employed there. This false information was part of Davis's deliberate attempt to induce the client to switch brokers, violating both the spirit and letter of his non-solicitation agreement.

**104.    Davis denies the allegations set forth in Paragraph 104 of the Complaint, except denies knowledge or information sufficient to form a belief as to the truth of the**

**allegations set forth in Paragraph 104 of the Complaint regarding any contact MMA**

**received from a client. The remaining Individual Defendants deny knowledge or information**

**sufficient to form a belief as to the truth of the allegations set forth in Paragraph 104 of the**

**Complaint.**

105.    Davis's pitch to this client illustrates why it was so critical to both Alliant and Davis for Davis to recruit his MMA client service team to Alliant. As the client's June 27, 2024 email underscored, a crucial factor in the client's analysis of whether to stay with MMA or move to Alliant after Davis's departure was ensuring continuity in service. Moving to a new service provider is the option that would typically present the risk of disruptions and a loss in continuity of service. But Davis was able to flip this script by promising clients that moving to Alliant would allow them to retain the same service team they had worked with at MMA, while staying with MMA would allegedly require them to be serviced by a new team relatively unfamiliar with their account. Of course, Davis himself had brought about this "learning curve" and risk of inefficiencies at MMA by soliciting away his MMA client service team in breach of his fiduciary and contractual duties. Brazenly, Davis then used the results of his misconduct, along with promises of future misconduct (that he and his MMA client service team would service the MMA clients at Alliant when they were contractually prohibited from doing so), to entice clients to Alliant.

**105.    Davis denies the allegations set forth in Paragraph 105 of the Complaint,**

**except denies knowledge or information sufficient to form a belief as to the truth of the**

**allegations set forth in Paragraph 105 of the Complaint regarding any contact MMA**

**received from a client. The remaining Individual Defendants deny knowledge or information**

**sufficient to form a belief as to the truth of the allegations set forth in Paragraph 105 of the**

**Complaint.**

106.    Davis and Alliant knew of Davis's fiduciary obligations to MMA during his employment, as well as his post-employment contractual obligations under the RCA and the NSA, and that his conduct in soliciting MMA employees and clients and servicing those clients' accounts at Alliant, breached those obligations.

**106.    Davis denies the allegations set forth in Paragraph 106 of the Complaint. The**

**remaining Individual Defendants deny knowledge or information sufficient to form a belief**

**as to the truth of the allegations set forth in Paragraph 106 of the Complaint.**

107.    Demonstrating Davis's and Alliant's awareness of Davis's breaches, on June 28, 2024, Davis granted a program called "Forensic Email Collector" access to his personal Gmail account. Forensic Email Collector is a specialized software tool designed for use in digital forensic investigations and electronic discovery to accomplish the forensic preservation of email evidence. *See https://www.metaspike.com/shop/forensic-email-collector/* (lasted visited February 12, 2025) (explaining that Forensic Email Collector "connects to email servers such as Exchange servers, Gmail, and other IMAP-compatible email serves and forensically preserves email evidence"). The program is marketed as a tool to "[e]xpertly preserve email evidence...for digital forensic investigations and eDiscovery," and boasts that it is "[b]attle-[t]ested [s]oftware" used by "the world's most prestigious organizations...to secure email evidence in mission-critical projects" and was "created...with the final act in mind—the courtroom." *See https://www.metaspike.com/forensic-email-collector/#intro*.

**107.    Davis denies knowledge or information sufficient to form a belief as to the truth of the allegations the allegations set forth in Paragraph 107 of the Complaint, except denies the allegation that anything contained in Paragraph 107 is "[d]emonstrating Davis's and Alliant's awareness of Davis's breaches."  The remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 107 of the Complaint.**

108.    The fact that Davis used such a sophisticated tool for collecting emails, widely used by e-discovery professionals, strongly suggests that Alliant arranged for the forensic preservation of Davis's personal emails, knowing full well that Davis had breached his fiduciary and contractual obligations to MMA and in preparation for the inevitable litigation.

**108.    Davis denies the allegations set forth in Paragraph 108 of the Complaint.  The remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 108 of the Complaint.**

109.    Indeed, the use of "Forensic Email Collector" appears to have been another element of Alliant's standard playbook for corporate raiding and misconduct. Alliant's so-called "remediation program," pursuant to which Alliant insists that a computer forensics expert has identified and destroyed all misappropriated documents (when in fact those documents have already been stolen and used to solicit clients), is a now well-known feature of "the façade of compliance measures" designed by Alliant's regular outside counsel to deceive competitors and the courts and facilitate the concealment of evidence of intentional misconduct. *Lockton*, 2019 WL 2536104, at *22. Moreover, under Section 6 of his NSA, Davis was explicitly required to "return" all MMA property, including documents, upon termination of his employment. By failing to do so, Davis not only violated this provision of the NSA, but Alliant also facilitated and encouraged this breach. The "remediation program" orchestrated by Alliant is in direct conflict with Davis's

contractual obligation to return MMA's property. Worse still, it raises serious concerns that Alliant and Davis may have tampered with or even destroyed potentially relevant evidence that could demonstrate their wrongful conduct.

**109.    Davis avers that Paragraph 109 purports to paraphrase and/or quote portions of written documents, and respectfully refers the Court to the documents for a full statement of their contents and otherwise denies the allegations set forth in Paragraph 109 of the Complaint.  The remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 109 of the Complaint.**

110.    Davis's and Alliant's demonstrated knowledge that Davis's conduct was unlawful did not cause them to stop. To the contrary, on July 1, 2024, the next business day after Davis granted Forensic Email Collector access to his Gmail account, Coetzee, who was still employed at MMA, was messaging with an MMA colleague to whom MMA had assigned three of Davis's former accounts following Davis's resignation. By that time, two of those clients had already moved their business to Alliant with Davis, causing the colleague to miss out on the opportunity to earn commissions from those accounts. Expressing her condolences for his missed commissions, Coetzee reassured him that MMA would "get to keep" the third client, implying that while he had lost the first two accounts, he would be able to earn commissions on the third:



Coetzee explained how she knew this: Davis had personally told her "at softball he's not going after this one." In other words, Coetzee admitted that Davis expressly told her that he planned to solicit MMA clients to move their business to Alliant, and even shared specific details about which clients he would target and which ones he did not wish to move to Alliant with him.

**110.    Davis and Coetzee aver that Paragraph 110 purports to paraphrase and/or quote portions of written documents, and respectfully refer the Court to the documents for a full statement of their contents and otherwise deny the allegations in Paragraph 110 of the Complaint.  The remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 110 of the Complaint.**

111.    On July 3, 2024, MMA sent Davis a letter, with a copy to Alliant, reminding Davis of his obligations as a selling shareholder of PayneWest under the RCA, as well as under the Davis NSA, which he executed as an employee of MMA, copies of both of which MMA attached to its letter. MMA's letter further stated that it had

> good reason to believe that you have violated your duty of loyalty to MMA, and your contractual obligations by soliciting restricted MMA employees, including but not limited to Keegan Richardson, and by soliciting and servicing restricted MMA clients....We also understand you have been soliciting restricted MMA clients by making false representations about MMA and its employees.

**111.    Davis avers that Paragraph 111 of the Complaint purports to paraphrase and/or quote portions of written documents, respectfully refers the Court to the documents for a full statement of their contents and otherwise denies the allegations set forth in Paragraph 111 of the Complaint.  The remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 111 of the Complaint.**

112.    In its letter, MMA demanded that by no later than July 10, 2024, Davis and/or Alliant "confirm in writing" that Davis:

a.    would "immediately cease and desist from violating [his] non-solicitation and non-servicing obligations to MMA, which mean[t] that [he] must stop soliciting and/or providing services to (directly or indirectly) restricted MMA clients...;

b.    would "immediately cease and desist from violating [his] non-solicitation of employee obligations to MMA, which mean[t] that [he] must stop soliciting and/or recruiting (directly or indirectly) restricted MMA employees;"

c.    had "returned and/or not retained any and all property of MMA, including any such property that [he] may have disclosed to Alliant, and that [he] agree[d] to abide by the Agreement during the restrictive period set forth in the Agreement; and"

d.    would "preserve, and refrain from destroying, damaging, transferring, or otherwise rendering unavailable, any and all documents, materials, and other tangible things that may relate in any way to any of the materials set forth in this letter."

**112.    Davis avers that Paragraph 112 of the Complaint purports to paraphrase and/or quote portions of written documents, respectfully refers the Court to the documents for a full statement of their contents and otherwise denies the allegations set forth in Paragraph 112 of the Complaint.  The remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 112 of the Complaint.**

113.    Neither Davis nor Alliant responded to MMA's July 3, 2024 letter.

**113.    Davis admits the allegations set forth in Paragraph 113 of the Complaint.  The remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 113 of the Complaint.**

114.    Notwithstanding MMA's July 3, 2024 letter to Davis and Alliant, Davis continued breaching his contractual obligations to MMA – with Alliant's knowledge, assistance, and encouragement.

**114.    Davis denies the allegations set forth in Paragraph 114 of the Complaint.  The remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 114 of the Complaint**

115.    On July 3, 2024, approximately one week after Davis's resignation, Robles resigned from MMA, "effective immediately." On information and belief, Davis solicited, directly or indirectly, Robles to leave MMA and join Alliant. Shortly after Robles's resignation, MMA sent Robles a letter reminding her of her obligations under her NSA (a copy of which MMA attached to the letter), including her obligation not to "directly or indirectly solicit or service business from certain Company clients and prospective clients."

**115.    Robles avers that Paragraph 115 of the Complaint purports to paraphrase and/or quote portions of written documents, respectfully refers the Court to the documents for a full statement of their contents and otherwise denies the allegations set forth in Paragraph 115 of the Complaint, except admits that she resigned from MMA on July 3, 2024. Davis denies the allegations set forth in the second sentence of Paragraph 115 of the**

Complaint and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in Paragraph 115 of the Complaint regarding MMA's post-employment communication to Robles. The remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 115 of the Complaint.

116.    Although Coetzee had agreed to join Davis at Alliant while he was still employed at MMA, she did not announce her resignation until two weeks after Davis's departure. During the two weeks between Davis's resignation and Coetzee's own announcement, she remained at MMA, deliberately deceiving the firm into believing she was a loyal employee while working in the interests of Alliant and Davis, to MMA's detriment. For instance, on June 28, 2024, an insurer notified a Senior Client Manager at MMA that on June 25, 2024, a significant client previously managed by Davis had requested a change in its Broker of Record from MMA to Alliant. The Senior Client Manager forwarded this information to Coetzee and others, highlighting that Davis and Richardson were subject to restrictive covenants and that "this may be a breach of contract." Nevertheless, just hours later, Coetzee emailed a representative from that client, instructing her to "give Keegan [Richardson] and Travis [Davis] a call" at Alliant, adding that "Travis [Davis] will send you the paperwork to sign to have him and Alliant be the new agent." Coetzee took this action despite knowing that both Davis and Richardson were bound by client non-solicitation and non-servicing covenants. Her awareness stemmed not only from her close working relationship with Davis and Richardson over the past three years but also from her own obligations under the Coetzee NSA, as all client-facing personnel at MMA were required to execute the same agreement.

116.    Coetzee avers that Paragraph 116 of the Complaint purports to paraphrase and/or quote portions of written documents, respectfully refers the Court to the documents for a full statement of their contents and otherwise denies the allegations set forth in Paragraph 116 of the Complaint, except admits that she resigned from MMA on July 8, 2024. The remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 116 of the Complaint.

117.    On July 8, 2024, Coetzee informed MMA that she was resigning, "effective immediately." On that day, MMA sent Coetzee a letter reminding her of her obligations under the Coetzee NSA (a copy of which MMA attached to the letter), including her obligation not to "directly or indirectly solicit or service business from certain Company clients and prospective clients."

**117.    Coetzee admits that she resigned from MMA on July 8, 2024, avers that Paragraph 117 of the Complaint purports to paraphrase and/or quote portions of written documents, respectfully refers the Court to the documents for a full statement of their contents and otherwise denies the allegations set forth in Paragraph 117 of the Complaint, . The remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 117 of the Complaint.**

118.    One week later, three weeks after Davis's resignation, on July 19, 2024, Gunn resigned from MMA, also "effective immediately." That day, Gunn messaged an MMA colleague to say her farewells and mentioned that "Travis [Davis] said [that she] prob [sic] wont [sic] have a computer until wednesday [sic]." This suggests that Davis was charged with managing Gunn's onboarding at Alliant, including communicating directly with her about even minute logistical details, such as when she would be issued an Alliant computer. Gunn's message leaves little doubt that Davis also solicited Gunn to join Alliant.

**118.    Gunn admits that she resigned from MMA on July 19, 2024, avers that Paragraph 118 of the Complaint purports to paraphrase and/or quote portions of written documents, respectfully refers the Court to the documents for a full statement of their contents and otherwise denies the allegations of Paragraph 118 of the Complaint.  Davis denies the allegations set forth in the third and fourth sentences of Paragraph 118 of the Complaint and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in Paragraph 118 of the Complaint.  The remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 118 of the Complaint.**

119.    Davis's pitch to his MMA clients that if they moved to Alliant, he and their former MMA client service team would personally service the client's account, was not empty words. Davis, Richardson, Robles, Gunn, and Coetzee have serviced (and are continuing to service) the MMA clients that have agreed to move their business to Alliant, notwithstanding that they are each contractually prohibited from doing so for two years.

**119.    The Individual Defendants deny the allegations set forth in Paragraph 119 of the Complaint.**

120.    Email correspondence from Richardson (on which MMA was inadvertently copied) confirms this. For example, on July 22, 2024, Richardson sent an email from his Alliant email address to an insurer requesting "a copy of this policy" with respect to one of Davis's former MMA clients whose account Richardson had serviced at MMA, which had moved to Alliant.

**120.    After reasonable and diligent investigation Richardson denies knowledge or information sufficient to form a belief as to the truth of the allegations about an email allegedly sent on July 22, 2024, and otherwise denies the allegations set forth in Paragraph 120 of the Complaint.  The remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 120 of the Complaint.**

121.    Similarly, on September 4, 2024, Richardson sent an email from his Alliant email account to an insurer regarding another one of Davis's former MMA clients whose account Richardson had serviced at MMA which had moved to Alliant, requesting a copy of the client's "current term policy for our records," and inquiring about the process for obtaining a renewal quote for the client:



**121.    Richardson admits that he sent an email on September 4, 2024, avers that Paragraph 121 of the Complaint purports to paraphrase and/or quote portions of written documents, respectfully refers the Court to the documents for a full statement of their contents, states that the image of the email set forth in Paragraph 121 was altered and/or redacted by Plaintiff and otherwise denies the allegations of Paragraph 121. The remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 121 of the Complaint.**

122.    In either scenario, Richardson would have had no reason to request a copy of the client's current insurance policy or to inquire about what "we [should] expect to see" with respect to obtaining a renewal quote for the client unless Richardson were servicing the client's account.

**122.    Richardson avers that Paragraph 122 of the Complaint purports to paraphrase and/or quote portions of written documents, respectfully refers the Court to the documents for a full statement of their contents, and otherwise denies the allegations set forth in Paragraph 122 of the Complaint.  The remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 122 of the Complaint.**

123.    Leaving no doubt that both Richardson and Davis were servicing the client's account at Alliant, the next day, September 5, 2024, Richardson emailed a representative of the client, copying Davis, and stating that the client's account "ha[d] been successfully moved over from MMA to us at Alliant" and analyzing "the renewal policy" terms that had been received on two of the client's properties:



**123.**    **Richardson and Davis admit that Richardson sent an email on September 5, 2024 copying Davis, avers that Paragraph 123 of the Complaint purports to paraphrase and/or quote portions of written documents, respectfully refers the Court to the documents for a full statement of their contents, state that the image of the email set forth in Paragraph 123 was altered and/or redacted by Plaintiff and otherwise deny the allegations of Paragraph 123. The remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 123 of the Complaint.**

124.    Since that time, Davis has continued his client solicitation efforts, including by falsely informing MMA clients that he was free to solicit and service their business

notwithstanding his contractual restrictions because MMA had not commenced litigation against him.

**124.    Davis denies the allegations set forth in Paragraph 124 of the Complaint. The remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 124 of the Complaint.**

125.    Davis's solicitation efforts have resulted in further client defections to Alliant, including of another MMA client that Davis had managed on September 27, 2024.

**125.    Davis admits that his book of business has increased since he joined Alliant in June 2024, including with clients who chose to work with Alliant in September 2024, and otherwise denies the allegations set forth in Paragraph 125 of the Complaint. The remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 125 of the Complaint.**

126.    That same day, MMA's outside counsel emailed Alliant's outside counsel concerning Davis's conduct at Alliant. This email noted that MMA had sent Davis (with a copy to Alliant) a cease-and-desist letter on July 3, 2024, but that Davis "is still continuing to solicit MMA clients," including by Davis stating that "he is free to solicit and service their business notwithstanding his contractual restrictions because MMA has not commenced litigation against him." The email stated that Davis's conduct was "extremely concerning to MMA," and "demand[ed] that [Davis] (and the other former MMA employees listed above) immediately cease and desist from all conduct in contravention of his ongoing contractual obligations to MMA."

**126.    The Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 126 of the Complaint. The Individual Defendants further aver that Paragraph 121 of the Complaint purports to paraphrase and/or quote portions of written documents, and respectfully refers the Court to the documents for a full statement of their contents.**

127.    To date, more than 30 MMA clients for which Davis had been responsible at MMA (including former PayneWest clients) have moved their business to Alliant, representing substantial lost annual revenue for MMA.

**127.    The Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 127 of the Complaint, except admit that approximately the identified number of former MMA clients have transitioned their business to Alliant since June 24, 2024.**

## COUNT I
### Breach of the Acknowledgement and Restrictive Covenant Agreement –
### Client Non-Solicitation, Non-Acceptance of Business, Non-Servicing
### (Against Davis)

128.    MMA realleges and incorporates by reference herein the allegations set forth in Paragraphs 1 through 127 above.

**128.    The Individual Defendants repeat and reallege their responses to Paragraphs 1 through 127 of the Complaint as though fully set forth herein.**

129.    Davis, as a shareholder and part-owner of PayneWest, voluntarily entered into the RCA with MMA in connection with MMA's acquisition of PayneWest, including his shares in PayneWest.

**129.    Davis denies the allegations set forth in Paragraph 129 of the Complaint. The remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 129 of the Complaint.**

130.    The RCA is a valid and binding contract between Davis and MMA, in consideration for which Davis received good and valuable consideration.

**130.    The Individual Defendants assert that the allegations set forth in Paragraph 130 of the Complaint constitute legal conclusions to which no responsive pleading is required. To the extent responsive pleading is required, Davis denies the allegations set forth in Paragraph 130 of the Complaint and the remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 130 of the Complaint.**

131.    Several of the clients whom Davis managed at MMA who moved their business from MMA to Alliant were "Client Accounts" (as defined in the RCA) of PayneWest as of the Closing Date of MMA's acquisition of PayneWest.

**131.    The Individual Defendants assert that the allegations set forth in Paragraph 131 of the Complaint constitute legal conclusions to which no responsive pleading is required. To the extent responsive pleading is required, Davis denies the allegations set forth in Paragraph 131 of the Complaint, except admits that some clients were clients at PayneWest, and the remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 131 of the Complaint.**

132.    Davis breached the RCA by, within five years of the Closing Date of MMA's acquisition of PayneWest, "directly and or indirectly":

a.    "solict[ing], accept[ing], call[ing] on, divert[ing], tak[ing] away, influenc[ing], induc[ing] or attempt[ing] to do any of the foregoing" with respect to Client Accounts (as defined in the RCA) of PayneWest as of the Closing Date of MMA's acquisition of PayneWest; and

b.    "servic[ing] or accept[ing] insurance agency brokerage business from Client Accounts" (as defined in the RCA) of PayneWest as of the Closing Date of MMA's acquisition of PayneWest.

**132.    The Individual Defendants assert that the allegations set forth in Paragraph 132 of the Complaint constitute legal conclusions to which no responsive pleading is required. To the extent responsive pleading is required, Davis denies the allegations set forth in Paragraph 132 of the Complaint and the remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 132 of the Complaint.**

133.    MMA fully performed its obligations under the RCA.

**133.    Davis denies the allegations set forth in Paragraph 133 of the Complaint and the remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 133 of the Complaint.**

134.    As a direct and proximate result of Davis's breaches of the RCA, MMA has suffered and will continue to suffer extensive, irreparable injury, loss of goodwill, harm to its business, and other injury and damages for which there is no adequate remedy at law. MMA will continue to suffer further harm unless and until Davis is restrained from his current conduct and compelled to abide by the terms of the RCA.

**134.    The Individual Defendants deny the allegations set forth in Paragraph 134 of the Complaint.**

135.    As a direct and proximate result of Davis's breaches of the RCA, MMA has suffered and will continue to suffer additional damages in an amount that is not presently ascertainable, including but not limited to in the form of attorneys' fees and costs related to this litigation, and lost business, lost profits, and damages to its goodwill, in an amount to be proven at trial.

**135.    The Individual Defendants deny the allegations set forth in Paragraph 135 of the Complaint.**

## COUNT II
### Breach of the Acknowledgement and Restrictive Covenant Agreement – Employee Non-Solicitation
### (Against Davis)

136.    MMA realleges and incorporates by reference herein the allegations set forth in Paragraphs 1 through 135 above.

**136.    The Individual Defendants repeat and reallege their responses to Paragraphs 1 through 135 of the Complaint as though fully set forth herein.**

137.    Davis, as a shareholder and part-owner of PayneWest, voluntarily entered into the RCA with MMA in connection with MMA's acquisition of PayneWest, including his shares in PayneWest.

**137.    Davis denies the allegations set forth in Paragraph 137 of the Complaint. The remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 137 of the Complaint.**

138.    The RCA is a valid and binding contract between Davis and MMA, in consideration for which Davis received good and valuable consideration.

**138.    The Individual Defendants assert that the allegations set forth in Paragraph 138 of the Complaint constitute legal conclusions to which no responsive pleading is required. To the extent responsive pleading is required, Davis denies the allegations set forth in Paragraph 138 of the Complaint. The remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 138 of the Complaint.**

139.    The RCA prohibited Davis from, within five years of the Closing Date of MMA's acquisition of PayneWest, "directly or indirectly":

a.    "solicit[ing], call[ing] on, divert[ing], influenc[ing], [or] induc[ing]" employees of PayneWest who became employed by MMA "to leave the employ or engagement of [MMA]";

b.    "hir[ing]" employees of PayneWest who became employees of MMA; or

c.    "attempt[ing] to influence or induce" employees of PayneWest who became employees of MMA to end their employment with MMA.

**139.    The Individual Defendants aver that the allegations set forth in Paragraph 139 of the Complaint constitute legal conclusions to which no responsive pleading is required. To the extent responsive pleading is required, Davis denies the allegations set forth in Paragraph 139 of the Complaint.  The remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 139 of the Complaint.**

140.    Richardson, Robles, and Gunn were employed by PayneWest, and became employees of MMA upon the closing of MMA's acquisition of PayneWest.

**140.    The Individual Defendants admit the allegations set forth in Paragraph 140 of the Complaint, except deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 140 of the Complaint regarding the timing of Richardson's, Robles's, and Gunn's employment at MMA.**

141.    Davis breached the RCA by, within five years of the Closing Date of MMA's acquisition of PayneWest, "directly or indirectly,"

a.    "solicit[ing], call[ing] on, divert[ing], influenc[ing], [or] induc[ing]" Richardson, Robles, and Gunn "to leave the employ or engagement of [MMA]";

b.    "hir[ing]" Richardson, Robles, and Gunn; or

c.    "attempt[ing] to influence or induce" Richardson, Robles, and Gunn to end their employment with MMA.

**141.    The Individual Defendants aver that the allegations set forth in Paragraph 141 of the Complaint constitute legal conclusions to which no responsive pleading is required. To the extent responsive pleading is required, Davis denies the allegations set forth in Paragraph 141 of the Complaint. The remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 141 of the Complaint.**

142.    MMA fully performed its obligations under the RCA.

**142.    Davis denies the allegations set forth in Paragraph 142 of the Complaint and the remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 142 of the Complaint.**

143.    As a direct and proximate result of Davis's breaches of the RCA, MMA has suffered and will continue to suffer extensive, irreparable injury, loss of goodwill, harm to its business, and other injury and damages for which there is no adequate remedy at law. MMA will continue to suffer further harm unless and until Davis is restrained from his current conduct and compelled to abide by the terms of the RCA.

**143.    The Individual Defendants deny the allegations set forth in Paragraph 143 of the Complaint.**

144.    As a direct and proximate result of Davis's breaches of the RCA, MMA has suffered and will continue to suffer additional damages in an amount that is not presently ascertainable, including but not limited to in the form of attorneys' fees and costs related to this litigation, and lost business, lost profits, and damages to its goodwill, in an amount to be proven at trial.

144.    The Individual Defendants deny the allegations set forth in Paragraph 144 of the Complaint.

**COUNT III**
**Breach of the Non-Solicitation and Confidentiality Agreement –**
**Client Non-Solicitation and Non-Servicing**
**(Against Davis)**

145.    MMA realleges and incorporates by reference herein the allegations set forth in Paragraphs 1 through 144 above.

145.    **The Individual Defendants repeat and reallege their responses to Paragraphs 1 through 144 of the Complaint as though fully set forth herein.**

146.    Davis voluntarily executed the Davis NSA with MMA in connection with MMA's acquisition of PayneWest.

146.    **Davis denies the allegations set forth in Paragraph 146 of the Complaint. The remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 146 of the Complaint.**

147.    The Davis NSA is a valid and binding contract, in consideration for which Davis received good and valuable consideration, including a cash bonus and employment with MMA.

147.    **The Individual Defendants assert that the allegations set forth in Paragraph 147 of the Complaint constitute legal conclusions to which no responsive pleading is required. To the extent responsive pleading is required, Davis denies the allegations set forth in Paragraph 147 of the Complaint. The remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 147 of the Complaint.**

148.    Davis breached the terms of the Davis NSAs by, among other things, directly and/or indirectly:

    a.    soliciting clients of MMA for the purpose of selling or providing products or services of the type sold or provided by Davis while employed by MMA;

        b.      inducing clients and/or prospective clients of MMA to terminate, cancel, not renew, or not place business with MMA;

        c.      performing or supervising the performance of services or the provision of products, of the type sold or provided by Davis while he was employed by MMA, on behalf of clients and/or prospective clients of MMA; and/or

        d.      assisting others to the acts specified above.

**148.    The Individual Defendants aver that the allegations set forth in Paragraph 148 of the Complaint constitute legal conclusions to which no responsive pleading is required. To the extent responsive pleading is required, Davis denies the allegations set forth in Paragraph 148 of the Complaint. The remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 148 of the Complaint.**

149.    MMA fully performed its obligations under the Davis NSA.

**149.    Davis denies the allegations set forth in Paragraph 149 of the Complaint and the remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 149 of the Complaint.**

150.    As a direct and proximate result of Davis's breaches of the Davis NSA, MMA has suffered and will continue to suffer extensive, irreparable injury, loss of goodwill, harm to its business, and other injury and damages for which there is no adequate remedy at law. MMA will continue to suffer further harm unless and until Davis is restrained from his current conduct and compelled to abide by the terms of the Davis NSA.

**150.    The Individual Defendants deny the allegations set forth in Paragraph 150 of the Complaint.**

151.    As a direct and proximate result of Davis's breaches of the Davis NSA, MMA already has suffered and will continue to suffer additional damages in an amount that is not presently ascertainable, including but not limited to in the form of attorneys' fees and costs related to this litigation, and lost business, lost profits, and damages to its goodwill, in an amount to be proven at trial.

151.    The Individual Defendants deny the allegations set forth in Paragraph 151 of the Complaint.

<b><u>COUNT IV</u></b><br><b>Breach of the Non-Solicitation and Confidentiality Agreement –<br>Client Non-Solicitation and Non-Servicing<br>(Against Richardson, Robles, Gunn, and Coetzee)</b>

152.    MMA realleges and incorporates by reference herein the allegations set forth in Paragraphs 1 through 151 above.

**152.    The Individual Defendants repeat and reallege their responses to Paragraphs 1 through 151 of the Complaint as though fully set forth herein.**

153.    Richardson, Robles, Gunn, and Coetzee each voluntarily executed an NSA with MMA in connection with their employment at MMA.

**153.    Davis denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 153 of the Complaint. The remaining Individual Defendants deny the allegations set forth in Paragraph 153 of the Complaint.**

154.    The NSAs are valid and binding contracts, in consideration for which Richardson, Robles, Gunn, and Coetzee received good and valuable consideration, including employment with MMA.

**154.    The Individual Defendants aver that the allegations set forth in Paragraph 154 of the Complaint constitute legal conclusions to which no responsive pleading is required. To the extent responsive pleading is required, Davis denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 154 of the Complaint and the remaining Individual Defendants deny the allegations set forth in Paragraph 154 of the Complaint.**

155.    Richardson, Robles, Gunn, and Coetzee each breached the terms of their NSAs by, among other things, directly and/or indirectly, performing or supervising the performance of services or the provision of products, of the type sold or provided by Richardson, Robles, Gunn, and Coetzee while they were employed by MMA, on behalf of clients and/or prospective clients of MMA, and/or assisting others in doing so.

**155.** The Individual Defendants aver that the allegations set forth in Paragraph 155 of the Complaint constitute legal conclusions to which no responsive pleading is required. To the extent responsive pleading is required, Davis denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 155 of the Complaint and the remaining Individual Defendants deny the allegations set forth in Paragraph 155 of the Complaint.

156. MMA fully performed its obligations under the NSAs.

**156.** The Individual Defendants deny the allegations set forth in Paragraph 156 of the Complaint.

157. As a direct and proximate result of Richardson's, Robles's, Gunn's, and Coetzee's breaches of their NSAs, MMA has suffered and will continue to suffer extensive, irreparable injury, loss of goodwill, harm to its business, and other injury and damages for which there is no adequate remedy at law. MMA will continue to suffer further harm unless and until Richardson, Robles, Gunn, and Coetzee are restrained from their current conduct and compelled to abide by the terms of their NSAs.

**157.** The Individual Defendants deny the allegations set forth in Paragraph 157 of the Complaint.

158. As a direct and proximate result of Richardson's, Robles's, Gunn's, and Coetzee's, breaches of their NSAs, MMA already has suffered and will continue to suffer additional damages in an amount that is not presently ascertainable, including but not limited to in the form of attorneys' fees and costs related to this litigation, and lost business, lost profits, and damages to its goodwill, in an amount to be proven at trial.

**158.** The Individual Defendants deny the allegations set forth in Paragraph 158 of the Complaint.

<u>**COUNT V**</u>
**Breach of the Non-Solicitation and Confidentiality Agreement –**
**Non-Solicitation of Employees**
**(Against Davis)**

159. MMA realleges and incorporates by reference herein the allegations set forth in Paragraphs 1 through 158 above.

159.    The Individual Defendants repeat and reallege their responses to Paragraphs 1 through 158 of the Complaint as though fully set forth herein.

160.    Davis voluntarily executed the Davis NSA with MMA in connection with MMA's acquisition of PayneWest.

**160.    Davis denies the allegations set forth in Paragraph 160 of the Complaint.  The remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 160 of the Complaint.**

161.    The NSA is a valid and binding contract, in consideration for which Davis received good and valuable consideration, including a cash bonus and employment with MMA.

**161.    The Individual Defendants aver that the allegations set forth in Paragraph 161 of the Complaint constitute legal conclusions to which no responsive pleading is required.  To the extent responsive pleading is required, Davis denies the allegations set forth in Paragraph 161 of the Complaint.  The remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 161 of the Complaint.**

162.    Davis breached the terms of the Davis NSA by, among other things, directly or indirectly, soliciting or otherwise endeavoring to cause employees of MMA with whom Davis, during his final two years at MMA, had come into contact for the purpose of soliciting or servicing business or about whom Davis had obtained Confidential Information and Trade Secrets (as defined in the Davis NSA) to leave employment with MMA.

**162.    The Individual Defendants aver that the allegations set forth in Paragraph 162 of the Complaint constitute legal conclusions to which no responsive pleading is required.  To the extent responsive pleading is required, Davis denies the allegations set forth in Paragraph 162 of the Complaint.  The remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 162 of the Complaint.**

163.    Specifically, Davis breached the Davis NSA by soliciting or otherwise endeavoring to cause Richardson, Robles, Gunn, and Coetzee to leave employment with MMA. During his last two years of employment at MMA, Davis repeatedly came into contact with Richardson, Robles, Gunn, and Coetzee for the purpose of soliciting or servicing business, and also repeatedly obtained confidential information about Richardson, Robles, Gunn, and Coetzee.

**163.    The Individual Defendants deny the allegations set forth in Paragraph 163 of the Complaint, except admit that in his last two years of employment at MMA, Davis came into contact with Richardson, Robles, Gunn, and Coetzee in connection with servicing business.**

164.    MMA fully performed its obligations under the Davis NSA.

**164.    Davis denies the allegations set forth in Paragraph 164 of the Complaint and the remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 164 of the Complaint.**

165.    As a direct and proximate result of Davis's breaches of the Davis NSA, MMA has suffered and will continue to suffer extensive, irreparable injury, loss of goodwill, harm to its business, and other injury and damages for which there is no adequate remedy at law. MMA will continue to suffer further harm unless and until Davis is restrained from his current conduct and compelled to abide by the terms of the Davis NSA.

**165.    The Individual Defendants deny the allegations set forth in Paragraph 165 of the Complaint.**

166.    As a direct and proximate result of Davis's breaches of the Davis NSA, MMA already has suffered and will continue to suffer additional damages in an amount that is not presently ascertainable, including but not limited to in the form of attorneys' fees and costs related to this litigation, and lost business, lost profits, and damages to its goodwill, in an amount to be proven at trial.

**166.    The Individual Defendants deny the allegations set forth in Paragraph 166 of the Complaint.**

<u>**COUNT VI**</u>
**Breach of the Non-Solicitation and Confidentiality Agreement – Confidentiality**
**(Against Davis)**

167.    MMA realleges and incorporates by reference herein the allegations set forth in Paragraphs 1 through 166 above.

**167.    The Individual Defendants repeat and reallege their responses to Paragraphs 1 through 166 of the Complaint as though fully set forth herein.**

168.    Davis voluntarily executed the Davis NSA with MMA in connection with MMA's acquisition of PayneWest.

**168.    Davis denies the allegations set forth in Paragraph 168 of the Complaint. The remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 168 of the Complaint.**

169.    The Davis NSA is a valid and binding contract, in consideration for which Davis received good and valuable consideration, including a cash bonus and employment with MMA.

**169.    The Individual Defendants assert that the allegations set forth in Paragraph 169 of the Complaint constitute legal conclusions to which no responsive pleading is required. To the extent responsive pleading is required, Davis denies the allegations set forth in Paragraph 169 of the Complaint.  The remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 169 of the Complaint.**

170.    By committing the above-described acts, Davis violated the Davis NSA, including by violating his confidentiality covenant by using and disclosing MMA's confidential information to and for the benefit of a third party.

**170.    The Individual Defendants aver that the allegations set forth in Paragraph 170 of the Complaint constitute legal conclusions to which no responsive pleading is required. To the extent responsive pleading is required, Davis denies the allegations set forth in Paragraph 170 of the Complaint.  The remaining Individual Defendants deny knowledge or**

information sufficient to form a belief as to the truth of the allegations set forth in Paragraph

170 of the Complaint.

171.    MMA has performed all of its obligations under the Davis NSA.

**171.    Davis denies the allegations set forth in Paragraph 171 of the Complaint and**

**the remaining Individual Defendants deny knowledge or information sufficient to form a**

**belief as to the truth of the allegations set forth in Paragraph 171 of the Complaint.**

172.    As a direct and proximate result of Davis's breaches of the Davis NSA, MMA has
suffered and will continue to suffer extensive, irreparable injury, loss of goodwill, harm to its
business, and other injury and damages for which there is no adequate remedy at law. MMA will
continue to suffer further harm unless and until Davis is restrained from his current conduct and
compelled to abide by the terms of the Davis NSA.

**172.    The Individual Defendants deny the allegations set forth in Paragraph 172 of**

**the Complaint.**

173.    As a direct and proximate result of Davis's breaches of the Davis NSA, MMA
already has suffered and will continue to suffer additional damages in an amount that is not
presently ascertainable, including but not limited to in the form of attorneys' fees and costs related
to this litigation, and lost business, lost profits, and damages to its goodwill, in an amount to be
proven at trial.

**173.    The Individual Defendants deny the allegations set forth in Paragraph 173 of**

**the Complaint.**

**COUNT VII**
**Breach of the PayneWest Insurance, A Marsh & McLennan Agency LLC Company**
**Non-Solicitation and Confidentiality Agreement – Confidentiality**
**(Against Coetzee)**

174.    MMA realleges and incorporates by reference herein the allegations set forth in
Paragraphs 1 through 173 above.

**174.    The Individual Defendants repeat and reallege their responses to Paragraphs**

**1 through 173 of the Complaint as though fully set forth herein.**

175.    Coetzee voluntarily executed the Coetzee NSA on July 7, 2021.

**175.    Coetzee denies the allegations set forth in Paragraph 175 of the Complaint. The remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 175 of the Complaint.**

176.    The NSA is a valid and binding contract, in consideration for which Coetzee received good and valuable consideration, including employment with MMA.

**176.    The Individual Defendants assert that the allegations set forth in Paragraph 176 of the Complaint constitute legal conclusions to which no responsive pleading is required. To the extent responsive pleading is required, Coetzee denies the allegations set forth in Paragraph 176 of the Complaint. The remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 176 of the Complaint.**

177.    By committing the above-described acts, Coetzee violated the Coetzee NSA, including by violating her confidentiality covenant by using and disclosing MMA's confidential information to and for the benefit of a third party.

**177.    The Individual Defendants aver that the allegations set forth in Paragraph 177 of the Complaint constitute legal conclusions to which no responsive pleading is required. To the extent responsive pleading is required, Coetzee denies the allegations set forth in Paragraph 177 of the Complaint. The remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 177 of the Complaint.**

178.    MMA has performed all of its obligations under the Coetzee NSA.

**178.    Coetzee denies the allegations set forth in Paragraph 178 of the Complaint and the remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 178 of the Complaint.**

179.    As a direct and proximate result of Coetzee's breaches of the Coetzee NSA, MMA has suffered and will continue to suffer extensive, irreparable injury, loss of goodwill, harm to its

business, and other injury and damages for which there is no adequate remedy at law. MMA will continue to suffer further harm unless and until Coetzee is restrained from her current conduct and compelled to abide by the terms of the Coetzee NSA.

**179.    The Individual Defendants deny the allegations set forth in Paragraph 179 of the Complaint.**

180.    As a direct and proximate result of Coetzee's breaches of the Coetzee NSA, MMA already has suffered and will continue to suffer additional damages in an amount that is not presently ascertainable, including but not limited to in the form of attorneys' fees and costs related to this litigation, and lost business, lost profits, and damages to its goodwill, in an amount to be proven at trial.

**180.    The Individual Defendants deny the allegations set forth in Paragraph 180 of the Complaint.**

## <u>COUNT VIII</u>
**Trade Secret Misappropriation Under the Defend Trade Secrets Act, 18 U.S.C. § 1836 (Against Davis, Coetzee and Alliant)**

181.    MMA realleges and incorporates by reference herein the allegations set forth in Paragraphs 1 through 180 above.

**181.    The Individual Defendants repeat and reallege their responses to Paragraphs 1 through 180 of the Complaint as though fully set forth herein.**

182.    Davis, Coetzee and Alliant violated the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836, *et seq.* (the "DTSA") by misappropriating trade secrets from MMA for services used in, or intended for use in, interstate or foreign commerce.

**182.    The Individual Defendants aver that the allegations set forth in Paragraph 182 of the Complaint constitute legal conclusions to which no responsive pleading is required. To the extent responsive pleading is required, Davis and Coetzee deny the allegations set forth in Paragraph 182 of the Complaint.  The remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 182 of the Complaint.**

183.    Davis, Coetzee and Alliant possess MMA's trade secrets under the Defend Trade Secrets Act in the form of, among other things: client contact information, client pricing

information, information about client needs and preferences, insurance policy renewal information, direct contact information for key representatives of insurance carriers, and carrier appetite information.

**183.    The Individual Defendants aver that the allegations set forth in Paragraph 183 of the Complaint constitute legal conclusions to which no responsive pleading is required. To the extent responsive pleading is required, Davis and Coetzee deny the allegations set forth in Paragraph 183 of the Complaint.   The remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 183 of the Complaint.**

184.    MMA's confidential and trade secret information relates to services used in, or intended to be used in, conducting business throughout the United States.

**184.    The Individual Defendants aver that the allegations set forth in Paragraph 184 of the Complaint constitute legal conclusions to which no responsive pleading is required. To the extent responsive pleading is required, the Individual Defendants deny the allegations set forth in Paragraph 184 of the Complaint.**

185.    Upon information and belief, Davis, Coetzee and Alliant are using and will continue to use MMA's trade secrets to conduct business.

**185.    Davis and Coetzee deny the allegations set forth in Paragraph 185 of the Complaint.  The remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 185 of the Complaint.**

186.    MMA invested substantial time and resources to generate such information that Davis and Coetzee misappropriated in concert with Alliant. The information contained in these materials derives independent economic value by virtue of not being known or available to the public. MMA has kept this information sufficiently secret to give it a competitive advantage. It has taken affirmative measures to prevent others from acquiring it or using it by means including, but not limited to, requiring those who have access to it (including Davis and Coetzee) to sign agreements restricting their use of MMA's confidential information. Access to MMA's systems, including employee computers, phones and other devices, is password protected.

186.    The Individual Defendants deny the allegations set forth in Paragraph 186 of the Complaint.

187.    MMA communicated its trade secrets to Davis and Coetzee in confidence and they knew that MMA intended its trade secrets to remain confidential. As such, Davis and Coetzee promised to keep MMA's trade secrets confidential, to use MMA's trade secrets only on behalf of MMA, and to return and discontinue use of MMA's trade secrets when their employment with MMA ended.

187.    Davis and Coetzee deny the allegations set forth in Paragraph 187 of the Complaint. The remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 187 of the Complaint.

188.    At Alliant's direction and for its benefit, Davis and Coetzee misappropriated the trade secrets by improper acquisition, unauthorized disclosure, or unauthorized use.

188.    Davis and Coetzee deny the allegations set forth in Paragraph 188 of the Complaint. The remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 188 of the Complaint.

189.    Due to their position working for a direct competitor of MMA, and their possession of MMA's trade secrets and confidential and proprietary information, there is a substantial likelihood that Davis and Coetzee have disclosed or used, and will continue to use, MMA's trade secrets.

189.    Davis and Coetzee deny the allegations set forth in Paragraph 189 of the Complaint. The remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 189 of the Complaint.

190.    As a direct and proximate result of Davis's and Coetzee's unlawful conduct, MMA has been irreparably damaged, and Davis, Coetzee and Alliant have been unjustly enriched. This unjust enrichment includes value attributable to the misappropriated information, amounts that Davis, Coetzee and Alliant saved in costs and development by using the misappropriated information, and increased productivity resulting from the use of the misappropriated information and increased market share. The exact amount of these damages and unjust enrichment is not presently ascertainable but is believed to be more than several hundreds of thousands of dollars and increasing each month.

190.     The Individual Defendants deny the allegations set forth in Paragraph 190 of the Complaint.

191.     The acts described above constituted willful and malicious misappropriation in that Davis and Coetzee, at Alliant's direction, stole an alarming amount of proprietary information and did so with the deliberate intent to injure MMA's business and improve their and Alliant's own. Accordingly, MMA is entitled to an award of reasonable attorneys' fees under 18 U.S.C. § 1836 and exemplary damages under 18 U.S.C. § 1836.

191.     The Individual Defendants deny the allegations set forth in Paragraph 191 of the Complaint.

192.     As a direct and proximate result of Davis's and Coetzee's conduct, at Alliant's direction, and continued use of Marsh's misappropriated trade secrets, MMA has suffered and will continue to suffer extensive injury and harm to its business.

192.     The Individual Defendants deny the allegations set forth in Paragraph 192 of the Complaint.

193.     As a direct and proximate result of Davis's and Coetzee's conduct, at Alliant's direction, MMA already has suffered and will continue to suffer additional damages in an amount that is not presently ascertainable, including but not limited to in the form of attorneys' fees and costs related to this litigation, and lost business, in an amount to be proven at trial.

193.     The Individual Defendants deny the allegations set forth in Paragraph 193 of the Complaint.

## COUNT IX
### Breach of Fiduciary Duty
### (Against Davis)

194.     MMA realleges and incorporates by reference herein the allegations set forth in Paragraphs 1 through 193 above.

194.     The Individual Defendants repeat and reallege their responses to Paragraphs 1 through 193 of the Complaint as though fully set forth herein.

195.     By virtue of Davis's position at MMA, the special relationship of trust and confidence reposed by MMA in him, and the permission afforded him by MMA to its confidential, proprietary and trade secret information, Davis was required to act solely in MMA's interest. Davis also had duties of loyalty and utmost good faith to MMA, and was obligated not to subvert or misappropriate MMA's confidential and trade secret information or business opportunities.

**195.    The Individual Defendants assert that the allegations set forth in Paragraph 195 of the Complaint constitute legal conclusions to which no responsive pleading is required. To the extent responsive pleading is required, Davis denies the allegations set forth in Paragraph 195 of the Complaint and the remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 195 of the Complaint.**

196.    Davis breached his fiduciary duties owed to MMA by, among other things:

      a.  concealing from MMA that he had accepted an offer to join Alliant and deceiving MMA into believing that it had his undivided loyalty, including deceiving MMA into permitting him to continue to have access to its confidential, proprietary and trade secret information and to communicate with its clients after he had accepted an offer of employment from Alliant;

      b.  while still employed by MMA, soliciting MMA's clients to move their business from MMA to Alliant; and

      c.  while still employed by MMA, soliciting MMA employees to leave their employment with MMA and join Alliant.

**196.    The Individual Defendants aver that the allegations set forth in Paragraph 196 of the Complaint constitute legal conclusions to which no responsive pleading is required. To the extent responsive pleading is required, Davis denies the allegations set forth in Paragraph 196 of the Complaint and the remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 196 of the Complaint.**

197.    As a direct and proximate result of Davis's breaches of his fiduciary duties, MMA has suffered extensive injury, loss of goodwill, harm to its business, and other damages.

**197.    The Individual Defendants deny the allegations set forth in Paragraph 197 of the Complaint.**

198.     As a direct and proximate result of Davis's breach of his fiduciary duties, MMA already has suffered and will continue to suffer additional damages in an amount that is presently unascertainable, including but not limited to attorneys' fees and costs related to this litigation, as well as lost business, in an amount to be proven at trial.

**198.     The Individual Defendants deny the allegations set forth in Paragraph 198 of**

**the Complaint.**

199.     Davis committed these acts knowingly, willfully and in conscious disregard of MMA's rights. Accordingly, MMA is entitled to recover actual and exemplary damages in an amount to be proven at trial.

**199.     The Individual Defendants deny the allegations set forth in Paragraph 199 of**

**the Complaint.**

## COUNT X
### Aiding and Abetting Breach of Fiduciary Duty
### (Against Alliant)

200.     MMA realleges and incorporates by reference herein the allegations set forth in Paragraphs 1 through 199 above.

**200.     The Individual Defendants repeat and reallege their responses to Paragraphs**

**1 through 199 of the Complaint as though fully set forth herein.**

201.     Davis owed a fiduciary duty of loyalty to MMA during his employment with MMA.

**201.     The Individual Defendants assert that the allegations set forth in Paragraph**

**201 of the Complaint constitute legal conclusions to which no responsive pleading is required.**

**To the extent responsive pleading is required, Davis denies the allegations set forth in**

**Paragraph 201 of the Complaint and the remaining Individual Defendants deny knowledge**

**or information sufficient to form a belief as to the truth of the allegations set forth in**

**Paragraph 201 of the Complaint.**

202.     Davis's fiduciary duty of loyalty prohibited him from, among other things, competing with MMA by soliciting MMA clients and employees away to do business with a competitor.

202.    The Individual Defendants assert that the allegations set forth in Paragraph 202 of the Complaint constitute legal conclusions to which no responsive pleading is required. To the extent responsive pleading is required, Davis denies the allegations set forth in Paragraph 202 of the Complaint and the remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 202 of the Complaint.

203.    Davis violated his fiduciary duty of loyalty by soliciting MMA's clients away from MMA to do business with Alliant while Davis was still employed with MMA.

203.    The Individual Defendants aver that the allegations set forth in Paragraph 203 of the Complaint constitute legal conclusions to which no responsive pleading is required. To the extent responsive pleading is required, Davis denies the allegations set forth in Paragraph 203 of the Complaint and the remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 203 of the Complaint.

204.    Davis violated his fiduciary duty of loyalty by soliciting MMA's employees away from MMA to join Alliant while Davis was still employed with MMA.

204.    The Individual Defendants aver that the allegations set forth in Paragraph 204 of the Complaint constitute legal conclusions to which no responsive pleading is required. To the extent responsive pleading is required, Davis denies the allegations set forth in Paragraph 204 of the Complaint and the remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 204 of the Complaint.

205.    Alliant knowingly participated in Davis's breaches of his duty of loyalty by encouraging and substantially assisting Davis's breaches of his duty of loyalty.

**205.    Davis denies the allegations set forth in Paragraph 205 of the Complaint and the remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 205 of the Complaint.**

206.    As a direct and proximate result of Alliant's wrongful conduct, MMA has suffered and will continue to suffer extensive injury and harm to its business.

**206.    The Individual Defendants deny the allegations set forth in Paragraph 206 of the Complaint.**

207.    As a direct and proximate result of Alliant's wrongful conduct, MMA already has suffered and will continue to suffer additional damages in an amount that is not presently ascertainable, including but not limited to in the form of attorneys' fees and costs related to this litigation, and lost business, in an amount to be proven at trial.

**207.    The Individual Defendants deny the allegations set forth in Paragraph 207 of the Complaint.**

## COUNT XI
### Tortious Interference with Contract
### (Against Alliant)

208.    MMA realleges and incorporates by reference herein the allegations set forth in Paragraphs 1 through 207 above.

**208.    The Individual Defendants repeat and reallege their responses to Paragraphs 1 through 207 of the Complaint as though fully set forth herein.**

209.    Alliant was aware of the employment relationship between Davis and MMA, and his contractual obligations to MMA refrain from soliciting or servicing MMA clients and from soliciting employees after the termination of his employment and to refrain from using or disclosing MMA's confidential information for the benefit of any third party.

**209.    Davis denies the allegations set forth in Paragraph 209 of the Complaint and the remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 209 of the Complaint.**

210.    Alliant, improperly and without privilege, interfered in MMA's contracts with Davis by inducing, enticing and directing him to breach his contractual obligations to MMA, including, without limitation, by encouraging and assisting him in the solicitation of MMA's

clients to move their business to Alliant, the servicing of MMA clients at Alliant, the solicitation of MMA employees to leave their employment at MMA and join Alliant, and the misappropriation of MMA's confidential information.

**210.    Davis denies the allegations set forth in Paragraph 210 of the Complaint and the remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 210 of the Complaint.**

211.    As alleged above, Davis, at Alliant's inducement and direction, violated the RCA and NSA by, without limitation, violating his client non-solicitation covenants by soliciting MMA clients to move their business from MMA to Alliant and servicing MMA clients at Alliant. Alliant was aware of Davis's contractual obligations but directed him to violate them for Alliant's benefit.

**211.    Davis denies the allegations set forth in Paragraph 211 of the Complaint and the remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 211 of the Complaint.**

212.    As alleged above, Davis, at Alliant's inducement and direction, violated the RCA and NSA by, without limitation, violating his employee non-solicitation covenants by soliciting MMA employees to leave their employment at MMA and join Alliant. Alliant was aware of Davis's contractual obligations but directed him to violate them for Alliant's benefit.

**212.    Davis denies the allegations set forth in Paragraph 212 of the Complaint and the remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 212 of the Complaint.**

213.    As alleged above, Davis, at Alliant's inducement and direction, violated the RCA and NSA by, without limitation, violating his confidentiality covenant by using and disclosing MMA's confidential information for Alliant's benefit. Alliant was aware of Davis's contractual obligations but directed him to violate them for Alliant's benefit.

**213.    Davis denies the allegations set forth in Paragraph 213 of the Complaint and the remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 213 of the Complaint.**

214.    The foregoing conduct was willful and intentional and has already caused and will continue to cause damage to MMA with respect to its relationships with its clients.

214.    The Individual Defendants deny the allegations set forth in Paragraph 214 of the Complaint.

215.    As a direct and proximate result of Alliant's wrongful conduct, MMA has suffered and will continue to suffer extensive injury and harm to its business.

215.    The Individual Defendants deny the allegations set forth in Paragraph 215 of the Complaint.

216.    As a direct and proximate result of Alliant's wrongful conduct, MMA already has suffered and will continue to suffer additional damages in an amount that is not presently ascertainable, including but not limited to in the form of attorneys' fees and costs related to this litigation, and lost business, in an amount to be proven at trial.

216.    The Individual Defendants deny the allegations set forth in Paragraph 216 of the Complaint.

## COUNT XII
### Tortious Interference with Contract
### (Against Alliant and Davis)

217.    MMA realleges and incorporates by reference herein the allegations set forth in Paragraphs 1 through 216 above.

217.    The Individual Defendants repeat and reallege their responses to Paragraphs 1 through 216 of the Complaint as though fully set forth herein.

218.    Alliant was aware of the employment relationship between Richardson, Robles, Gunn, and Coetzee, on the one hand, and MMA, on the other hand, and their contractual obligations to MMA refrain from soliciting or servicing MMA clients and to refrain from using or disclosing MMA's confidential information for the benefit of any third party.

218.    The Individual Defendants deny the allegations set forth in Paragraph 218 of the Complaint.

219.    Alliant and Davis, improperly and without privilege, interfered in MMA's contracts with Richardson, Robles, Gunn, and Coetzee by inducing, enticing and directing them to breach their contractual obligations to MMA, including, without limitation, by encouraging and assisting them in servicing MMA's clients at Alliant, the servicing of MMA clients at Alliant. Davis further, improperly and without privilege, interfered with MMA's contact with Coetzee by encouraging and assisting her in the misappropriation of MMA's confidential information.

219.    The Individual Defendants deny the allegations set forth in Paragraph 219 of the Complaint.

220.    As alleged above, Richardson, Robles, Gunn, and Coetzee, at Alliant's and Davis's inducement and direction, violated their NSAs with MMA by, without limitation, violating their client non-servicing covenants by servicing MMA clients at Alliant. Alliant and Davis were aware of Richardson's, Robles's, Gunn's, and Coetzee's contractual obligations, but directed them to violate them for Alliant's benefit.

220.    The Individual Defendants deny the allegations set forth in Paragraph 220 of the Complaint.

221.    As alleged above, Davis, at Alliant's inducement and direction, violated the RCA and the Davis NSA by, without limitation, violating his employee non-solicitation covenants by soliciting MMA employees to leave their employment at MMA and join Alliant and violating his client non-solicitation covenants by soliciting MMA clients to transfer their business to Alliant. Alliant was aware of Davis's contractual obligations but directed him to violate them for Alliant's benefit.

221.    Davis denies the allegations set forth in Paragraph 221 of the Complaint and the remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 221 of the Complaint.

222.    As alleged above, Coetzee, at Davis's inducement and direction, violated the Coetzee NSA by, without limitation, violating her confidentiality covenant by using and disclosing MMA's confidential information for Alliant's benefit. Davis was aware of Coetzee's contractual obligations but directed her to violate them for Alliant's benefit.

222.    Davis and Coetzee deny the allegations set forth in Paragraph 222 of the Complaint and the remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 222 of the Complaint.

223.    The foregoing conduct was willful and intentional and has already caused and will continue to cause damage to MMA with respect to its relationships with its clients.

223.    The Individual Defendants deny the allegations set forth in Paragraph 223 of the Complaint.

224.    As a direct and proximate result of Alliant's wrongful conduct, MMA has suffered and will continue to suffer extensive injury and harm to its business.

**224.    The Individual Defendants deny the allegations set forth in Paragraph 224 of the Complaint.**

225.    As a direct and proximate result of Alliant's wrongful conduct, MMA has suffered and will continue to suffer additional damages in an amount that is not presently ascertainable, including but not limited to in the form of attorneys' fees and costs related to this litigation, and lost business, in an amount to be proven at trial.

**225.    The Individual Defendants deny the allegations set forth in Paragraph 225 of the Complaint.**

### COUNT XIII
### Tortious Interference with Business Relations
### (Against Alliant and Davis)

226.    MMA realleges and incorporates by reference herein the allegations set forth in Paragraphs 1 through 225 above.

**226.    The Individual Defendants repeat and reallege their responses to Paragraphs 1 through 225 of the Complaint as though fully set forth herein.**

227.    MMA had ongoing relationships with its clients.

**227.    The Individual Defendants deny the allegations set forth in Paragraph 227 of the Complaint, except admit that sometimes clients continue their relationship with their current broker.**

228.    As a Sales Executive at MMA, Davis had influential relationships with MMA clients, which were developed and strengthened over the years by virtue of his access to and knowledge of MMA's confidential and trade secret information, which Davis used to form successful relationships with MMA's clients.

**228.    Davis denies the allegations set forth in Paragraph 228 of the Complaint and the remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 228 of the Complaint.**

229.    Davis and Alliant have knowledge about MMA's relationships with its clients. Indeed, Davis and Alliant had knowledge of MMA's relationships with the clients for which Davis was responsible at MMA, which Davis, at Alliant's direction and with its assistance and encouragement, improperly solicited away from MMA.

**229.    Davis denies the allegations set forth in Paragraph 229 of the Complaint and the remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 229 of the Complaint.**

230.    Despite this knowledge, Davis and Alliant have intentionally and improperly interfered with the relationships between MMA and its clients by soliciting MMA's clients to cease their business with MMA and move their business to Alliant.

**230.    Davis denies the allegations set forth in Paragraph 230 of the Complaint and the remaining Individual Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 230 of the Complaint.**

231.    Davis and Alliant engaged in wrongful conduct in doing so, by (among other things) Davis breaching his contractual and fiduciary duties to MMA, with Alliant's knowledge, assistance, and encouragement. Davis and Alliant further accomplished their wrongful solicitation of the MMA clients for which Davis had been responsible at MMA by assuring the clients that Davis and the same client service team that serviced the client at MMA (Richardson, Robles, Gunn, and/or Coetzee) would personally service their account at Alliant, despite Davis's and Alliant's knowledge that Davis, Richardson, Robles, Gunn, and Coetzee were prohibited from doing so per their contracts with MMA.

**231.    The Individual Defendants deny the allegations set forth in Paragraph 231 of the Complaint.**

232.    Davis's and Alliant's conduct extends beyond the boundaries fair competition and has been tortious, in bad faith, dishonest, and designed to harm MMA.

**232.    The Individual Defendants deny the allegations set forth in Paragraph 232 of the Complaint.**

233.    Davis and Alliant were aware that this conduct would disrupt MMA's business relationships and intended this disruption to occur for the benefit of themselves.

**233.    The Individual Defendants deny the allegations set forth in Paragraph 233 of the Complaint.**

234.    As a direct and proximate result of Davis's and Alliant's conduct, MMA has suffered and will continue to suffer additional damages in an amount that is not presently ascertainable, including but not limited to in the form of attorneys' fees and costs related to this litigation, and lost business, in an amount to be proven at trial.

**234.    The Individual Defendants deny the allegations set forth in Paragraph 234 of the Complaint.**

## AFFIRMATIVE DEFENSES

The Individual Defendants assert the following affirmative and other defenses without conceding that they bear the burden of proof as to any of them. The Individual Defendants reserve the right to amend their answer to add any additional affirmative defenses or other defenses as additional information is obtained in this litigation.

### First Affirmative Defense

Plaintiff fails to state a claim upon which relief may be granted.

### Second Affirmative Defense

Plaintiff's claims are barred in whole or in part by the doctrines of waiver, ratification, and estoppel.

### Third Affirmative Defense

Plaintiff's claims are barred in whole or in part by the doctrine of unclean hands.

### Fourth Affirmative Defense

Plaintiff has failed to mitigate its damages, if any.

### Fifth Affirmative Defense

The restrictive covenant agreements at issue in this litigation are illegal, overbroad, invalid, unreasonable, and/or unenforceable in whole or in part.

### Sixth Affirmative Defense

The restrictive covenant agreements at issue in this action are illegal, overbroad, invalid, unreasonable, and/or unenforceable in whole or in part because, *inter alia*, they were imposed by Plaintiff by overreaching, coercive use of dominant bargaining power or other anti-competitive misconduct.

### Seventh Affirmative Defense

Plaintiff would be unjustly enriched by receipt of the recovery sought.

### Eighth Affirmative Defense

An award of exemplary or punitive damages under the circumstances of this case would be in violation of Individual Defendants' due process and other rights under the United States Constitution and applicable state laws.

### Ninth Affirmative Defense

Plaintiff's claims are against public policy, unconscionable, and anti-competitive.

### Tenth Affirmative Defense

Plaintiff's common law claims are preempted by applicable federal and state laws.

### Eleventh Affirmative Defense

Plaintiff's claims are barred in whole or in part by the competitor's privilege.

### Twelfth Affirmative Defense

Any alleged conduct or omission by Individual Defendants was not the proximate cause of any alleged injury to Plaintiff.

### Thirteenth Affirmative Defense

To the extent Plaintiff is alleging fraud, fraudulent concealment, aiding-and-abetting, conspiracy, or similar conduct, Plaintiffs have failed to plead with sufficient particularity.

### Fourteenth Affirmative Defense

Plaintiff's claim for misappropriation of trade secrets under the Defend Trade Secrets Act ("DTSA") is barred in its entirety because the DTSA does not provide for a private right of action for civil conspiracy.

### Fifteenth Affirmative Defense

Plaintiff's claims are barred, in whole or in part, on the grounds that the purported trade secret information was readily ascertainable by proper means at the time of the alleged misappropriation.

### Sixteenth Affirmative Defense

Plaintiff's claims are barred, in whole or in part, on the grounds that Plaintiff failed to take reasonable measures to protect their alleged trade secrets, and has therefore waived and/or is not entitled to the purported trade secret protection.

### Seventeenth Affirmative Defense

Plaintiff's claims are barred, in whole or in part, on the grounds that no information of Plaintiffs was confidential or trade secret because Plaintiff failed to treat it as confidential or secret or such information was in the public domain or otherwise readily ascertainable by proper means.

### Eighteenth Affirmative Defense

The restrictive covenants at issue in this action are illegal and unenforceable restrictions on competition under Oregon's applicable statute governing noncompetition agreements (ORS 653.295 (2020)) and are void because MMA did not comply with the notice requirements of ORS 653.295(1)(b) (2020).

## **JURY TRIAL DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Individual Defendants hereby demand a jury trial as to all claims and issues so triable.

## **REQUEST FOR RELIEF**

WHEREFORE, the Individual Defendants demand judgment against Plaintiff as follows:

(i)    dismissing the Complaint and each and every claim and count therein;

(ii)    awarding Individual Defendants their costs, attorneys' fees and disbursements incurred in defending this action; and

(iii)    awarding Individual Defendants such other and further relief as the Court deems just and proper.

Dated: October 28, 2025         MORGAN, LEWIS & BOCKIUS LLP
       New York, New York

                                By:    */s/Timothy J. Stephens*
                                       Timothy J. Stephens

                                Timothy J. Stephens
                                101 Park Avenue
                                New York, NY  10178-0060
                                212.309.6000
                                timothy.stephens@morganlewis.com

                                Laura Hughes McNally
                                Cassidy Duckett Britt
                                1201 N. Market Street, Suite 2201
                                Wilmington, DE 19801
                                215.963.5000
                                laura.mcnally@morganlewis.com
                                cassidy.britt@morganlewis.com

                                *Attorneys for Defendants Travis Davis, Keegan Richardson, Raiza Robles, Susan Coetzee, and Amanda Gunn*